Laura Kabler Oswell (SBN 241281)
(oswelll@sullcrom.com)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Tel.: (650) 461-5600
Fax: (650) 461-5700

Ann-Elizabeth Ostrager (*pro hac vice* forthcoming)
(ostragerae@sullcrom.com)
James M. McDonald (*pro hac vice* forthcoming)
(mcdonaldj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10014
Tel.: (212) 558-4000
Fax: (212) 558-3588

Daniel J. Richardson (*pro hac vice* forthcoming)
(richardsond@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Ave. NW, Suite 700
Washington, DC 20006
Tel.: (202) 956-7500
Fax: (202) 293-6330

*Attorneys for Amicus Curiae DeFi Education Fund*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *Commodity Futures Trading Commission*, <br><br> Plaintiff, <br><br> vs. <br><br> *Ooki DAO (formerly d/b/a bZx DAO), an unincorporated association,* <br><br> Defendant. | Case No. 3:22-cv-5416-WHO <br><br> **MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF OF DEFI EDUCATION FUND REGARDING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE** <br><br> Date: November 9, 2022 <br> Time: 2:00 p.m. <br> Courtroom: 2 <br><br> Honorable William H. Orrick |

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT the DeFi Education Fund, through their undersigned counsel, moves this Court for leave to file a brief as *Amicus Curiae* in this litigation. This Motion is supported by the accompanying proposed order granting the Motion and the Amicus brief, marked Exhibit A.

Through this Motion, the DeFi Education Fund respectfully requests that the Court grant permission to file a Brief as *Amicus Curiae* Regarding the Plaintiff's Motion for Alternative Service.

**INTEREST OF AMICUS CURIAE**

The DeFi Education Fund ("DEF") respectfully moves this Court for leave to file the attached *Amicus Curiae* Brief, which asks the Court to reconsider its Order approving the Commodity Futures Trading Commission's Motion for Alternative Service. (ECF No. 17.)

The DEF is a nonpartisan advocacy group based in the United States with a mission to educate policymakers about the benefits of decentralized finance ("DeFi") and to achieve regulatory clarity for the DeFi ecosystem. The DEF represents the interests of DeFi users and participants, as well as software developers working to create new DeFi products via the use of blockchain technology that are open and transparent to all users.

DEF's interest in this case concerns the Commission's enforcement action against Ooki DAO and its individual token holders, and in particular the Commission's attempt to serve process on Ooki DAO, and its individual token holders, through a website and internet forum. On September 27, 2022, the Commission filed its Motion for Alternative Service, asking the Court to permit service according to "California's alternative service provision permitting service in a manner reasonably calculated to give actual notice to the defendant." (ECF No. 11, at 8 (citing Cal. Civ. Proc. Code § 413.30.).) Specifically, the Motion explained that the Commission had attempted to effectuate service against Ooki DAO in this case by posting notice to both a chat box[1] on the Ooki DAO website and a web-based forum dedicated to discussion of Ooki DAO governance issues. On October 3, 2022, the day any Response to the

---

[1] The "Help Chat Box" to which the Commission's Motion refers consists of a pop-up messenger box that a visitor to Ooki.com accesses by clicking on an icon located in the bottom left-hand corner of the homepage. After clicking on the icon, a small chat-box appears with text inviting visitors to the page to "Ask us anything, or share your feedback." The box does not indicate to whom submitted messages are directed.

Commission's Motion was due, a proposed amicus filed a motion raising concerns about the Commission's proposed method of service. (ECF No. 16.) The Court granted the Commission's Motion for Alternative Service the same day. (ECF No. 17.)

The DEF has substantial concerns regarding the Commission's Motion for Alternative Service. Like other decentralized autonomous organizations ("DAOs"), Ooki DAO is an open-source technology similar to the technology that comprises bitcoin. The Commission's proposed method of service rests on a premise that Ooki DAO is analogous to an ordinary business entity. But DAOs are not ordinary business entities, and the Commission has not adequately pled that its proposed method of service on Ooki DAO is likely to notify the parties potentially liable for the claims of this lawsuit. The issues that the Commission's actions raise are significant, and allowing the Commission to proceed in the manner it has proposed could chill novel and innovative forms of software development in the United States.

## ARGUMENT

The Court has broad discretion regarding whether to grant permission to file an amicus brief, and "generally courts have exercised great liberality" in permitting such briefs. *Woodfin Suite Hotels, LLC* v. *City of Emeryville*, No. 06-CV-1254, 2007 WL 81911, at *3 (N.D. Cal. Jan. 9, 2007) (internal quotations omitted). "There are no strict prerequisites that must be established prior to qualifying for amicus status; an individual seeking to appear as amicus must merely make a showing that his participation is useful or otherwise desirable to the court." *California* v. *U.S. Dep't of the Interior*, 281 F. Supp. 3d 1153, 1164 (N.D. Cal. 2019). Amicus appointment is particularly appropriate here because, as explained in the accompanying brief, the Commission's proposed method of service may result in no potential defendant receiving notice of, or appearing in, this action. Indeed, no party appeared even for the limited purpose of contesting the Commission's motion, meaning that without amicus participation the Commission's motion would stand unopposed. *See Miller-Wohl Co.* v. *Montana Comm'r of Labor & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982) (explaining that the "classic role of amicus curiae" is "drawing the court's attention to law that escaped consideration").

The Court may also, in its discretion, reconsider its prior decision to grant the Commission's Motion. *See City of L.A., Harbor Div.* v. *Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power

to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."). The DEF respectfully submits that, with the benefit of briefing on both sides, the Court would be warranted in reconsidering its Order granting the Commission's Motion for Alternative Service, and that the Court should hear argument on the Motion at the hearing scheduled for November 9, 2022.

## CONCLUSION

For the foregoing reasons, *Amicus Curiae* respectfully requests an order granting leave to file the brief attached hereto as Exhibit A.

Dated: October 4, 2022

Respectfully submitted,

SULLIVAN & CROMWELL LLP

*/s/ Laura Kabler Oswell*
Laura Kabler Oswell (SBN 241281)
(oswelll@sullcrom.com)
1870 Embarcadero Road
Palo Alto, CA 94303
Tel.: (650) 461-5600
Fax: (650) 461-5700

Ann-Elizabeth Ostrager (*pro hac vice* forthcoming)
(ostragerae@sullcrom.com)
James M. McDonald (*pro hac vice* forthcoming)
(mcdonaldj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10014
Tel.: (212) 558-4000
Fax: (212) 558-3588

Daniel J. Richardson (*pro hac vice* forthcoming)
(richardsond@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Ave. NW, Suite 700
Washington, DC 20006
Tel.: (202) 956-7500
Fax: (202) 293-6330

*Counsel for Amicus Curiae DeFi Education Fund*

# Exhibit A

Laura Kabler Oswell (SBN 241281)
(oswelll@sullcrom.com)
SULLIVAN & CROMWELL LLP
1870 Embarcadero Road
Palo Alto, CA 94303
Tel.: (650) 461-5600
Fax: (650) 461-5700

Ann-Elizabeth Ostrager (*pro hac vice* forthcoming)
(ostragerae@sullcrom.com)
James M. McDonald (*pro hac vice* forthcoming)
(mcdonaldj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10014
Tel.: (212) 558-4000
Fax: (212) 558-3588

Daniel J. Richardson (*pro hac vice* forthcoming)
(richardsond@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Ave. NW, Suite 700
Washington, DC 20006
Tel.: (202) 956-7500
Fax: (202) 293-6330

*Attorneys for Amicus Curiae DeFi Education Fund*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| *Commodity Futures Trading Commission*,<br><br>                    Plaintiff,<br><br>    vs.<br><br>*Ooki DAO (formerly d/b/a bZx DAO), an unincorporated association*,<br><br>                    Defendant. | Case No. 3:22-cv-5416-WHO<br><br>**BRIEF OF *AMICUS CURIAE* DEFI EDUCATION FUND REGARDING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**<br><br>Date:   November 9, 2022<br>Time:  2:00 p.m.<br>Courtroom: 2<br><br>Honorable William H. Orrick |

## INTEREST OF *AMICUS CURIAE*

The DeFi Education Fund (the "DEF") is a nonpartisan advocacy group based in the United States with a mission to educate policymakers about the benefits of decentralized finance ("DeFi") and to achieve regulatory clarity for the DeFi ecosystem. The DEF represents the interests of DeFi users and participants, as well as software developers working to create new DeFi protocols via the use of blockchain technology that are open and transparent to all users.

The DEF asks this Court to grant its Motion for leave to file an Amicus Brief Regarding the Plaintiffs' Motion for Alternative Service. "Whether to allow [a]mici to file a brief is solely within the Court's discretion." *Woodfin Suite Hotels, LLC* v. *City of Emeryville*, 2007 WL 81911, at *3 (N.D. Cal. Jan. 9, 2007). Amicus appointment is particularly appropriate here because, as explained below, the Commission's proposed method of service may result in no potential defendant receiving notice of, or appearing in, this action. Indeed, no party appeared even for the limited purpose of contesting the Commission's motion, meaning that without amicus participation the Commission's Motion would stand unopposed. *See Miller-Wohl Co.* v. *Montana Comm'r of Labor & Indus.*, 694 F.2d 203, 204 (9th Cir. 1982) (explaining that the "classic role of amicus curiae" is "drawing the court's attention to law that escaped consideration").

The Court may also, in its discretion, reconsider its prior decision to grant the Commission's Motion to ensure consideration of the issues based on full briefing and argument. *See City of L.A., Harbor Div.* v. *Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."). The DEF respectfully submits that, with the benefit of briefing on both sides, the Court would be warranted in reconsidering its order granting the Commission's motion for alternative service, and that, at a minimum, the Court should hear argument on the motion at the hearing scheduled for November 9, 2022.

The DEF has substantial concerns regarding the Commodity Futures Trading Commission's enforcement action against Ooki DAO—and, in particular at this stage, the Commission's attempt to serve

process on Ooki DAO through a website and internet chat forum.[1]  Like other decentralized autonomous organizations ("DAOs"), Ooki DAO is an open-source technology similar to the technology that comprises Bitcoin and Ethereum.  The Commission's proposed method of service rests on a premise that Ooki DAO is analogous to an ordinary business entity.  But DAOs are not ordinary business entities, and the Commission has not adequately pled that its proposed method of service on Ooki DAO is likely to notify the parties potentially liable for the claims in this lawsuit.

*First*, the Commission has named Ooki DAO as a defendant in this action, asserting that Ooki DAO is an "unincorporated association comprised of Ooki Token holders." (Compl. ¶ 47.)  But nothing about the structure of a DAO inherently dictates that result.  In many cases, DAOs lack any central organization or management, and many DAO token holders often lack coordination or common objectives.  As a result, DAOs will often not be "associations" of any kind, and therefore will not be proper defendants in an enforcement action brought under the Commodity Exchange Act ("CEA"), which requires that a defendant be a "person" (defined to include "associations").  The Commission has not yet alleged facts sufficient to establish that Ooki DAO is an association, so its attempt to serve Ooki DAO here is premature.

*Second*, the Commission's Complaint alleges that certain individual Ooki token holders are liable for violations of the CEA.  (Compl. 7(B) (seeking an order that Ooki DAO's "members" violated 7 U.S.C. § 6(a)).)  The Complaint does not precisely define which token holders could be held liable.  But however the group of alleged violators is defined, the Commission's proposed method of service does not meet the standards set forth in the Federal Rules of Civil Procedure.  If the Commission is permitted to proceed in this action based on its proposed method of service, the Ooki token holders that the action purportedly implicates will not be afforded the due process that the service requirement of Rule 4 provides, nor will they be given a fair opportunity to litigate issues that affect them.  Moreover, the Commission and other agencies and litigants may be encouraged to follow this infirm practice in the future, casting doubt on *any* token holder's ability to participate in *any* DAO process without risking individual, joint and several liability.

---

[1] The DEF has offered to assist in the defense of any individual token holder that this action implicates.

Put simply, the Commission's proposed method of service attempts to serve Ooki DAO without first demonstrating that the DAO is a proper defendant (or even a legal entity at all) and fails to effectively serve the group of Ooki token holders that the Commission believes are actually liable for violations of federal law.

The issues that the Commission's action raise are significant. The Commission's Complaint takes the position that token holders who participate in the modification process (*i.e.*, voting on how to use, change, or interact with software code) for an open-source technology protocol can be held liable for violations of the CEA or accompanying regulations that are based on transactions made by other parties using that technology. (Compl. ¶¶ 56, 65, 70 (claiming that Ooki DAO violated the law "by and through its members").) Yet the Commission has offered no rules or guidance on how conduct of token holders could contribute to violations of the CEA's registration requirements. Nor has the Commission addressed how a DAO could even register at all. Against that backdrop, this action has called into question whether or how any DAO-based process for interacting with open-source software or similar technology can legally operate with the involvement of anyone in the United States—which will have a chilling effect on innovation and speech in this country.

The Supreme Court has cautioned agencies against reading their existing authorities to permit novel applications of law with broad "economic and political significance." *West Virginia* v. *EPA*, 142 S. Ct. 2587, 2608 (2022). It has also rejected attempts by agencies to avoid their obligation to submit major policy questions for public comment through the rulemaking process contemplated by the Administrative Procedure Act. *See Azar* v. *Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019). Those principles counsel against allowing the Commission to decide emerging and important issues through actions that may not provide the parties a full and fair opportunity to be heard.

**BACKGROUND**

In its simplest form, a DAO is technology designed to allow unrelated parties to utilize software code (called "smart contracts") deployed on a blockchain, to take actions without the need for a centralized

coordinating authority.[2]  A common action those parties take is to modify a particular smart-contract based protocol separate from the DAO ("Protocol") in accordance with permissions in the Protocol.  Such action may be taken in a number of ways, most commonly though the use of DAO members' tokens to indicate their agreement or disagreement with a proposed action relating to a Protocol—*i.e.* by "voting" their tokens.  Once a vote has occurred, an immutable record of that vote exists in the public domain on the blockchain, and that record includes the public blockchain addresses of all token holders that participated in the vote, including those who voted contrary to the ultimate outcome.

These tokens are generally freely transferrable.  A token holder can participate in changing the software in the morning and then sell his or her token that evening.  Those taking such action may, in fact, not even own the tokens, having borrowed them to vote or for some other purpose.

Although not required, token holders may communicate via an internet chat forum.  The forum, however, is not a DAO, and its existence is not necessary for a DAO to function.  The forum is more akin to other message boards or other websites where people discuss topics of interest (*e.g.* Reddit).

As alleged in the Complaint, Ooki DAO is technology like other DAOs, not an association or other business entity.   The Complaint explains that the "holders of Ooki DAO Tokens . . . vote those tokens to . . . modify, operate, market, and take other actions with respect to . . .the 'Ooki Protocol.'" (Compl. ¶ 2).[3]  The Complaint also explains that the bZx Protocol (predecessor to the Ooki protocol) continued to automatically facilitate various actions, such as "enabl[ing] any person with a compatible digital asset wallet to contribute margin (collateral) to open leveraged positions," without the consent or participation of any token holders. (*Id.* ¶ 41.)  Taken together, those allegations indicate that Ooki DAO is acting as a technology, and not as a business entity or other association..

## ARGUMENT

On September 27, 2022, the Commission filed its Motion for Alternative Service. (ECF Nos. 11 & 13.)  The Motion explained that the Commission had attempted to effectuate service against Ooki DAO

---

[2] *See* David Kerr & Miles Jennings, *A Legal Framework for Decentralized Autonomous Organizations* 2 (October 26, 2021), https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-1.pdf.

[3] According to the Commission, the "procedures for voting on Ooki DAO governance proposals [are] consistent with the procedures utilized when the Ooki DAO was doing business as bZx Dao." (*Id.* ¶ 48.)

in this case by posting notice to both a chat box[4] on the website purported to be Ooki DAO's website and an internet chat forum where unknown third parties could discuss Ooki DAO governance issues. (*Id.*) Recognizing that its method of service is not permitted under "traditional California state law service provisions" (ECF No. 11, at 7), the Commission asked the Court to permit service according to "California's alternative service provision permitting service in a manner reasonably calculated to give actual notice to the defendant." (*Id.* at 8 (citing Cal. Civ. Proc. Code § 413.30).) To support that request, the Commission points to various decisions permitting alternative means of service where difficult-to-reach business organizations were involved. (*Id.* at 8-9.) On October 3, the day any Response to the Commission's Motion was due, a proposed amicus filed a motion raising concerns about the Commission's proposed method of service. (ECF No. 16.) The Court granted the Commission's Motion for Alternative Service the same day. (ECF No. 17.)

Although the Court was not presented with argument on behalf of potential defendants before issuing its Order, the DEF believes that the Commission's approach raises significant questions that would benefit from briefing on both sides: a DAO is not comparable to a business organization or association, so the Commission cannot rely on the mere existence of a DAO to allege that it is a proper defendant under the CEA. Therefore, in order to pursue an enforcement action based on trading facilitated through a DAO, the Commission needs to either (1) plead facts demonstrating that the DAO is a "person" within the meaning of the CEA (which, we submit, it cannot), or (2) identify an individual person or separate organization that allegedly violated federal law.

The Commission's Complaint rests on the premise that individual token holders who participated in voting on matters relating to the bZx Protocol violated the law. But the Commission cannot prove a violation of the CEA based solely on owning a DAO token. Even if the Commission could make such a case (and it cannot), its chosen method of service is not reasonably calculated to reach those potential

---

[4] The "Help Chat Box" to which the Commission's Motion refers consists of a pop-up messenger box that a visitor to Ooki.com accesses by clicking on an icon located in the bottom left-hand corner of the homepage. After clicking on the icon, a small chat-box appears with text inviting visitors to the page to "Ask us anything, or share your feedback." The box does not indicate to whom submitted messages are directed.

defendants because it has not demonstrated that any token holder who voted is on the forum or has access to the chat box where the Commission posted notice.

Service of process must conform to both the Federal Rules of Civil Procedure and the Due Process Clause of the U.S. Constitution.  Under the Federal Rules, a plaintiff may serve a defendant according to the laws of the "state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).  Here, the applicable state law allows a court to authorize "alternative service" through "a manner which is reasonably calculated to give *actual notice* to the party to be served."  Cal. Civ. Proc. Code § 413.30 (emphasis added).  Regardless of the service procedures allowed by state law, however, service on a defendant must also "comport with constitutional notions of due process." *Rio Props., Inc.* v. *Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).  "The fundamental requisite of due process of law is the opportunity to be heard." *Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  For service of process to ensure that opportunity, "the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Props.*, 284 F.3d at 1016 (citing *Mullane*, 339 U.S. at 314).

The DEF submits that the Commission's proposed method of service is not reasonably calculated to provide the parties potentially liable for the claims in this lawsuit with actual notice of the Commission's action, and therefore may run afoul of the limits imposed by the Federal Rules and constitutional due process.  At a minimum, we respectfully submit that this Court would benefit from further argument on the novel issues raised by the Commission's request to serve process on a DAO. *See Miller-Wohl Co.*, 694 F.3d at 204 (explaining that amicus participation is warranted "in a case of general public interest").

**I.   THE COMMISSION HAS NOT YET ALLEGED THAT IT IS PROPER TO SERVE OOKI DAO AS A DEFENDANT**

In its Motion, the Commission asserts that it "took extensive steps to attempt to identify an individual authorized to accept service of process on Ooki DAO's behalf" by, for instance, "search[ing] law enforcement databases for any contact information associated with the Ooki DAO" and "search[ing] business registration websites for all 50 states for any registration information and associated identification of authorized agents for service of process." (ECF No. 11, at 5.)  It asserts that those efforts were

unavailing. (*Id.* at 5.)[5]  As a result, the Commission served the summons against Ooki DAO via the chat box and internet chat forum because those are "the sole mechanisms the Ooki DAO has chosen for the public to contact it directly." (*Id.* at 2.)  The Commission analogizes its service through the chat box and internet chat forum to serving process through a business's email address. (*Id.*)

That argument does not account for the many differences between ordinary businesses or associations, which are and hold themselves out as centralized entities or associations, and DAOs, which are not necessarily distinct entities.  A DAO reflects code that enables unrelated parties to take actions to edit open-source software.  Given those features, it is unsurprising that government databases would not identify anyone authorized to accept service on behalf of a DAO.  By focusing exclusively on what is required to effectuate service on Ooki DAO itself, the Commission is leaping over an important question.  Before deciding how to serve a DAO, the Commission must first ask whether the DAO is even the sort of entity that could serve as a plausible defendant in its suit.  Based on the facts alleged in the Complaint, the Commission has not yet made that showing.

The CEA makes it unlawful for any "person" to engage in activities that do not conform to the Act's requirements.  7 U.S.C. § 6(a).  The Act defines "person" to include "individuals, associations, partnerships, corporations, and trusts."  7 U.S.C. § 1(38).[6]  Because the Act does not define those terms, federal courts would typically look to the applicable state law to determine their meaning—in this case, the law of California.  *See, e.g.*, *De Sylva* v. *Ballentine*, 351 U.S. 570, 580 (1956); *PM Grp. Life Ins.* v. *W. Growers Assur. Tr.*, 953 F.2d 543, 546 (9th Cir. 1992).

The Commission has not attempted to show that its characterization of Ooki DAO as a purported "unincorporated association" comports with state law.  The Commission's only attempt to explain how a DAO could be an unincorporated association appeared in its enforcement settlement involving the founders of the bZx Protocol, who also developed the Ooki DAO smart contracts.  *See In re bZeroX, LLC*, CFTC Docket No. 22-31, at 9 (CFTC Sept. 22, 2022) (Settlement Order).  That Order, however, relied on

---

[5] Despite the Commission's assertion that it could not identify any individuals to serve, the Complaint alleges that "multiple Ooki DAO members have resided in the United States." (Compl. ¶ 49.)

[6] Similarly, the CEA defines a "futures commission merchant" as an "individual, association, partnership, corporation, or trust" that solicits or accepts orders or acts as a counterparty for certain transactions and collects margin therewith, or is registered with the Commission as a futures commission merchant.  7 U.S.C. § 1(a)(28).

cases raising the very different question of whether an unincorporated association is permitted to sue in its own name under *federal* law pursuant to Federal Rule of Civil Procedure 17. *See, e.g.*, *Seattle Affiliate of Coal. to Stop Police Brutality* v. *Seattle*, No. CV 04-0860Z, 2005 WL 3418415 (W.D. Wash. 2005) (finding that a group that sought a permit to demonstrate in a public place could bring suit under the First Amendment as an unincorporated association). The Commission has not explained why those cases would shed light on the relevant question here: The meaning of "person" (defined to include "association") as those terms are used in the CEA. *See* Statement of Summer K. Mersinger, Commissioner, Commodity Futures Trading Commission, Dissenting from Enforcement Action Against Ooki DAO (Sept. 22, 2022) (explaining that the Commission's determination that the Ooki DAO is an unincorporated association does not "rely on any legal authority in the CEA" or "any case relevant to this type of action"), https://www.cftc.gov/PressRoom/SpeechesTestimony/mersingerstatement092222.

Even if the Commission had relied on state law standards, it is far from clear that Ooki DAO would constitute an "association" as defined in the CEA. Under California law, an "unincorporated association" requires "two or more persons *joined by mutual consent* for a *common lawful purpose*, whether organized for profit or not." Cal. Corp. Code § 18035; *see also Vosburg* v. *Cty. of Fresno*, 268 Cal. Rptr. 3d 591 (Cal. Ct. App. 2020). Because DAOs operate through smart contracts on a blockchain, and without any governing document or other means to bind token holders to participation or membership in the DAO, applying that state law definition of unincorporated association to them would raise a number of difficult problems. As to Ooki DAO specifically, the Commission has not alleged that it comprises persons joined by mutual consent for a common lawful purpose.

*First*, as alleged, token holders do not "consent" to any duties owed to Ooki DAO—individuals or entities can hold tokens for any number of reasons and do not owe any duties to anyone else in the DAO. Indeed, as the Commission's theory of this case recognizes, token holders need not participate in Ooki DAO at all, and may simply abstain from voting altogether. *Second*, even when token holders do vote, that action does not necessarily reflect any common purpose with respect to Ooki DAO; different token holders can have entirely different purposes with respect to how the Protocol should be changed, which may be reflected in the outcome of votes. Nor does the Commission distinguish between the groups of

-8-

token holders that voted for different outcomes, or explain how these different groups of token holders would be bound by a common purpose. These features make Ooki DAO very different from the organizations discussed in the cases relied on by the Commission, such as a group of darts enthusiasts or the local branch of a national political advocacy group. *See So. Cal. Darts Ass'n* v. *Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014); *Seattle Affiliate*, 2005 WL 3418415, at *1.[7]

## II. THE COMMISSION'S CHOSEN METHOD OF SERVICE IS NOT REASONABLY CALCULATED TO REACH OOKI DAO'S TOKEN HOLDERS

Because the Commission believes Ooki DAO to be an unincorporated association, its Motion assumes that the applicable rule for this action is Rule 4(h)(1), which relates to service on a "corporation, partnership, or association." Based on that assumption, it argues that the ordinary means of effectuating service for business organizations posed "significant obstacles" in this case because "Ooki DAO has no headquarters[,] mailing address[,] or agent appointed to accept service." (ECF No. 11, at 8.)

Notwithstanding the Commission's decision to name Ooki DAO as the defendant in this action, the Commission appears to believe that the token holders themselves are liable (jointly and severally) for any violations of the CEA alleged in the Complaint. *Supra*, at 1. But the Commission has not shown that the ordinary means of serving *individual* token holders are impractical under either Rule 4 or California law. *See* Cal. Civ. Proc. Code § 413.30 (authorizing alternative means of service only "[w]here no provision is made in this chapter or other law for the service of summons"). And even if the Commission could avail itself of alternative means of service, its service via a chat box and internet chat forum was not reasonably calculated to reach individual token holders involved in the conduct alleged in the Complaint, including those who participated in token holder votes.

Although courts sometimes allow service via posting a notice in a public forum, that option is only available when individuals cannot be identified. *See Mullane* v. *Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 317 (1950). In this case, the Commission has not explained why the individuals who allegedly violated federal law could not be identified and served through ordinary channels. *See Romagnano* v.

---

[7] The Commission's third case, *Heinold Hog Market, Inc.* v. *McCoy*, 700 F.2d 611, 613 (10th Cir. 1983), involved the question of when an entity was distinct from a "natural person" for purposes of the Fifth Amendment right against self-incrimination.

-9-

*Town of Colchester*, 354 F. Supp. 2d 129, 133-34 (August 13, 2004) (dismissing unidentified defendants due to improper service of process under Fed. R. Civ. P. 4).

Federal agencies like the Commission have considerable resources at their disposal to investigate possible wrongdoing. The Commission should not be permitted to avoid the ordinary burdens of an enforcement investigation by naming and seeking to serve a DAO as a defendant—and reaching the individual token holders only through service on the DAO—particularly when it believes that the DAO's token holders are actually liable for the violation. (*See* ECF No. 16 (LeXpunK Motion), at 5.)

The Commission has already reached a settlement with two individual Ooki token holders, establishing their joint and several liability and ensuring full recovery. *Supra*, at 8. It is not clear why the Commission has pursued this further enforcement action even though it asserts it cannot identify a defendant. But if the Commission's aim is to bring Ooki token holders into this litigation at some later point (perhaps in collection efforts after a default judgment), that would only highlight the importance of ensuring that their rights are fully protected now.

## CONCLUSION

Based on the allegations in the Complaint, Ooki DAO is open source software that cannot be named as a defendant in this action and has not been appropriately served. As for the individual token holders who allegedly committed the violations, the Commission has made no meaningful attempt to serve them, other than through purported service on the DAO, which is insufficient given the alternatives available to identify and serve the token holders responsible for the violations. If the Commission is nonetheless allowed to proceed, token holders could be held liable for conduct committed by other parties, in a matter they had no meaningful opportunity to defend. That would yield an inequitable result, and would also chill novel and innovative forms of software development in the United States.

Dated: October 4, 2022

Respectfully submitted,

SULLIVAN & CROMWELL LLP

*/s/ Laura Kabler Oswell*
Laura Kabler Oswell (SBN 241281)
(oswelll@sullcrom.com)
1870 Embarcadero Road
Palo Alto, CA 94303
Tel.: (650) 461-5600
Fax: (650) 461-5700

Ann-Elizabeth Ostrager (*pro hac vice* forthcoming)
(ostragerae@sullcrom.com)
James M. McDonald (*pro hac vice* forthcoming)
(mcdonaldj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10014
Tel.: (212) 558-4000
Fax: (212) 558-3588

Daniel J. Richardson (*pro hac vice* forthcoming)
(richardsond@sullcrom.com)
SULLIVAN & CROMWELL LLP
1700 New York Ave. NW, Suite 700
Washington, DC 20006
Tel.: (202) 956-7500
Fax: (202) 293-6330

*Counsel for Amicus Curiae DeFi Education Fund*

**Attestation Pursuant to Local Rule 5-1(i)(3)**

Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: October 4, 2022                             SULLIVAN & CROMWELL LLP

*/s/ Laura Kabler Oswell*
Laura Kabler Oswell