Rodrigo Seira
  (*pro hac vice* forthcoming)
PARADIGM OPERATIONS LP
548 Market Street
San Francisco, CA 94104
Phone: (415) 986-9283
rodrigo@paradigm.xyz

Eric Tung (SBN 275063)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Phone: (213) 489-3939
Facsimile: (213) 243-2539
etung@jonesday.com

James Burnham (*pro hac vice* forthcoming)
Josh Sterling (*pro hac vice* forthcoming)
Isabelle Hanna (*pro hac vice* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Facsimile: (202) 626-1700
jburnham@jonesday.com
jsterling@jonesday.com
ihanna@jonesday.com

*Counsel for* Amicus Curiae *Paradigm Operations LP*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>Plaintiff,<br><br>v.<br><br>Ooki DAO (formerly d/b/a/ bZx DAO), an unincorporated association,<br><br>Defendant. | Case No. 3:22-cv-5416-WHO<br><br>**MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF OF PARADIGM OPERATIONS LP AND FOR LEAVE TO PARTICIPATE IN UPCOMING HEARING**<br><br>Date:  November 30, 2022<br>Time:  2:00 p.m.<br>Courtroom:  2<br><br>Honorable William H. Orrick |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Paradigm Operations LP ("Paradigm"), through its undersigned counsel, moves this Court for leave to file as *amicus curiae* the attached brief.[1] Paradigm joins the other *amici* in supporting this Court's reconsideration of its approval of alternative service—the request for which is indicative of deeper problems in the legal theory of the Commodity Futures Trading Commission (the "Commission") in this case.  Paradigm also requests leave to file a reply brief in support of its views on the same date as the other *amici* (November 14) and to participate in the Court's hearing scheduled for November 30, 2022, so that it can discuss these issues with the Court as a further basis for reconsidering its approval of alternative service in this proceeding, as well as an eventual basis for declining to enter any sort of judgment in the Commission's favor.  This motion is supported by a proposed order granting the motion and the proposed *amicus* brief, marked as Exhibit A.

## INTEREST OF AMICUS CURIAE

Paradigm is an investment firm that backs innovative crypto/web3 companies and protocols.  To help these projects achieve their full potential, Paradigm offers them a range of services, from the technical (mechanism design, smart contract security, engineering) to the operational (recruiting and regulatory strategy).  In doing so, Paradigm has developed a deep understanding of DAO technology and governance.

A DAO is a technological structure for social coordination that people can use to make collective decisions online.  *See* David Gogel et al., World Econ. F., *Decentralized Autonomous Organizations: Beyond the Hype* 4 (2022), https://tinyurl.com/3fk7bevz.  These programs have been used for a variety of projects: among other things, to run online financial protocols, to allocate grant funding, to collect items, and to decentralize social networking.  *See id.* at 6–7, 13; *see also, e.g.*, Big Green DAO (last viewed Oct. 12, 2022), https://tinyurl.com/442fejd9; Francesca Maglione & Lindsey Rupp, *With More Than $40 Million, Could This Crypto Group Buy a Copy of the U.S. Constitution?*, Bloomberg (Nov. 18, 2021), https://tinyurl.com/mtsms2m2; *What You Need*

---

[1] No party or counsel for a party authored the proposed brief in whole or in part, and no party, counsel for a party, or person other than the proposed *amicus curiae* or its counsel has made any monetary contribution intended to fund the preparation or submission of the proposed brief.

Motion for Leave to File *Amicus Curiae* Brief
No. 3:22-cv-5416-WHO

*to Know About Decentralized Social Networks*, Tul. Univ. Sch. of Prof. Mgmt. (last viewed Oct. 12, 2022), https://tinyurl.com/ywnp8wb6.  Paradigm believes that, with time, DAOs will develop into crucial tools for empowering the communities of the future.

Paradigm seeks leave to participate in this case because it is concerned that the Commission's theory of liability would stifle that development.  Here, the Commission has sued the "Ooki DAO," alleging that the DAO controlled a protocol that "purports to offer users the ability to engage" in leveraged margins trading.  *See* ECF No. 1, ¶ 4.  But the Commission does not seek to hold responsible only those people who directly contributed to that activity—activity that, it says, triggered registration requirements under the Commodity Exchange Act ("CEA") and obligations to implement certain anti-money-laundering and customer-information programs.  *Id.* ¶¶ 4, 51–72.  Rather, the Commission alleges that anyone who voted their "tokens to govern (e.g., to modify, operate, market, and take other actions with respect to) the Ooki Protocol (formerly named the bZx Protocol) during the DAO Relevant Period," *id.* ¶ 11, is responsible as a "member" of an "unincorporated association" that committed those violations, *id.* ¶¶ 56, 64, 65, 70, 72; *see also id.* at 23.

A key characteristic of DAOs is that unrelated, anonymous people come together to decide whether to adopt ad hoc proposals about how to run the underlying protocol.  A person might choose to participate once or many times, but the community of people making decisions on the DAO is fluid, ever-changing, and different for each proposal on which they vote.

The Commission's characterization of all voting token holders as "members" of the same broad "association" threatens to seriously distort the law.  The CEA premises individual liability on committing a violation, aiding and abetting a violation, controlling the person who committed the violation, or being that person's principal.  7 U.S.C. §§ 2(a)(1)(B), 13c(a)–(b).  Each predicate for liability requires a close connection between the illegal activity and the persons ultimately held responsible for it.  The Commission's theory would look past any lack of connection, however, to ensnare in liability everyone tenuously related to a DAO that was used to make occasional decisions about an underlying protocol through which alleged violations occurred.  That expansive theory would dismantle the specific paths to liability in the CEA.

1       Moreover, extending liability to any person who ever voted would disincentivize

2  participation in governance decisions, because a person might vote for a decision completely

3  unrelated to the action that gives rise to liability and nonetheless face legal consequences.  That

4  allocation of responsibility would especially discourage good governance.  A person might refuse

5  to oppose a decision that he or she believes creates legal risk out of fear that losing the vote would

6  mean being held liable for what other voters decided.  Given the uncertainty about whether any

7  vote could later lead to liability, many people might be deterred from participating in governance

8  decisions.

9                       **ARGUMENT**

10       Trial courts have the discretion to allow the filing of an *amicus curiae* brief.  *California v.*

11  *Bureau of Land Mgmt.*, -- F. Supp. 3d --, Nos. 18-cv-00521, 18-cv-00524, 2020 WL 1492708, at

12  \*17 n.15 (N.D. Cal. Mar. 27, 2020).  Courts generally exercise "great liberality in permitting amicus

13  briefs."  *California ex rel. Becerra v. U.S. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1164 (N.D.

14  Cal. 2019) (internal quotation marks omitted).  All an individual seeking to appear as an *amicus*

15  must show is "that his participation is useful or otherwise desirable to the court."  *Id.*

16       "[T]he 'classic role' of amicus curiae is 'assisting in a case of general public interest,

17  supplementing the efforts of counsel, and drawing the court's attention to law that escaped

18  consideration.'"  *Stanley v. Ayers*, No. 07-cv-04727, 2021 WL 121191, at \*2 (N.D. Cal. Jan. 13,

19  2021) (quoting *Miller-Wohl Co. v. Comm'r of Labor & Indus., State of Mont.*, 694 F.2d 203, 204

20  (9th Cir. 1982)).  That is the exact role Paradigm seeks to play.  The potential liability of participants

21  in a DAO is of significant public interest, given the opportunity these organizational structures

22  present to reshape online decision-making.  More importantly, Paradigm can play a critical part in

23  drawing the Court's attention to issues that it should consider when deciding whether to enter

24  judgment against the Ooki DAO and its alleged members.  No counsel for the DAO or any

25  individual has yet appeared to oppose the Commission's complaint.  Without the participation of

26  Paradigm, the Court might not hear, as the attached brief details, arguments that the substantive

27  merits of the Commission's claim counsel against entering any eventual judgment in its favor.

28

Finally, the Court has scheduled a hearing for November 30, 2022, on the potential reconsideration of its approval of alternative service and has directed the other *amici* to file reply briefs in support of their views by November 14, 2022.  Paradigm seeks leave to participate in the Court's briefing schedule and the November 30 hearing.  The serious defects in the Commission's legal theory underscore the problems in its proposed method of service and provide an additional basis for the Court to reconsider its approval of that method.  Paradigm thus respectfully requests an opportunity to discuss these issues with the Court alongside the other *amici* in this proceeding.

**CONCLUSION**

For the foregoing reasons, Paradigm respectfully requests leave from the Court to file the attached brief as an *amicus curiae*, to participate in the Court's briefing schedule for the *amici*, and to participate in the hearing scheduled for November 30, 2022.

Dated: October 17, 2022

Rodrigo Seira (*pro hac vice* forthcoming)
PARADIGM OPERATIONS LP
548 Market Street
San Francisco, CA 94104
Phone: (415) 986-9283
rodrigo@paradigm.xyz

By:  */s/ Eric Tung*
Eric Tung (SBN 275063)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Phone: (213) 489-3939
Facsimile: (213) 243-2539
etung@jonesday.com

James Burnham
  (*pro hac vice* forthcoming)
Josh Sterling
  (*pro hac vice* forthcoming)
Isabelle Hanna
  (*pro hac vice* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Facsimile: (202) 626-1700
jburnham@jonesday.com

*Counsel for* Amicus Curiae
*Paradigm Operations LP*

# EXHIBIT A

Rodrigo Seira
  (*pro hac vice* forthcoming)
PARADIGM OPERATIONS LP
548 Market Street
San Francisco, CA 94104
Phone: (415) 986-9283
rodrigo@paradigm.xyz

Eric Tung (SBN 275063)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
Phone: (213) 489-3939
Facsimile: (213) 243-2539
etung@jonesday.com

James Burnham (*pro hac vice* forthcoming)
Josh Sterling (*pro hac vice* forthcoming)
Isabelle Hanna (*pro hac vice* forthcoming)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Facsimile: (202) 626-1700
jburnham@jonesday.com
jsterling@jonesday.com
ihanna@jonesday.com

*Counsel for* Amicus Curiae *Paradigm Operations LP*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>            Plaintiff,<br>    v.<br><br>Ooki DAO (formerly d/b/a/ bZx DAO), an<br>unincorporated association,<br><br>            Defendant. | Case No. 3:22-cv-5416-WHO<br><br>**BRIEF OF *AMICUS CURIAE*<br>PARADIGM OPERATIONS LP**<br><br>Date:  November 30, 2022<br>Time:  2:00 p.m.<br>Courtroom:  2<br><br>Honorable William H. Orrick |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTEREST OF *AMICUS CURIAE* AND INTRODUCTION ........................................... 1

BACKGROUND ..................................................................................................... 2

    A.    DAOs Are a Significant and Useful Technological Innovation ................................... 2

    B.    The Commission's Theory Has Created Procedural Problems from the Outset........... 4

ARGUMENT ......................................................................................................... 5

    A.    The "Ooki DAO" Cannot Be Held Liable as an "Unincorporated Association".......... 5

    B.    The Commission Cannot Hold Individual DAO Participants Liable
        Without Proving That They Violated the CEA............................................................ 9

CONCLUSION ...................................................................................................... 11

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*Bowers v. Raymond J. Lucia Cos.*,
  142 Cal. Rptr. 3d 64 (Ct. App. 2012) ...................................................................... 7

5

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,
  816 F.3d 1208 (9th Cir. 2016) ............................................................................... 6

6

*Commodity Futures Trading Comm'n v. Baragosh*,
  278 F.3d 319 (4th Cir. 2002) ................................................................................. 10

7

8

*Gonzalez v. Google LLC*,
  2 F.4th 871 (9th Cir. 2021) .............................................................................. 9, 10

9

*In re bZeroX, LLC*,
  Commission No. 22-31, 2022 WL 4597664 (Sept. 22, 2022) ................. 4, 6, 7, 8

10

11

*Monieson v. Commodity Futures Trading Comm'n*,
  996 F.2d 852 (7th Cir. 1993) ................................................................................. 10

12

*S. Cal. Darts Ass'n v. Zaffina*,
  762 F.3d 921 (9th Cir. 2014) .............................................................................. 6, 8

13

**STATUTES**

14

7 U.S.C. § 1a .................................................................................................................... 6

15

7 U.S.C. § 2 ................................................................................................................... 6, 9

16

7 U.S.C. § 13c .............................................................................................................. 6, 9

17

Cal. Civ. Code § 1580 ..................................................................................................... 6

18

Cal. Corp. Code § 18035 ................................................................................................ 6

19

**OTHER AUTHORITIES**

Chris Brummer & Rodrigo Seira, *Legal Wrappers and DAOs* (2022) ........................... 2

20

Kelly Crow & Omar Abdel-Baqui, *Copy of U.S. Constitution Sells for $43.2
  Million as Crypto Group DAO Is Outbid*, Wall St. J. (Nov. 18, 2021) .................. 3

21

22

*Dissenting Statement of Commissioner Summer K. Mersinger Regarding
  Enforcement Actions Against: 1) bZeroX, LLC, Tom Bean, and Kyle Kistner;
  and 2) Ooki DAO*, Commodity Futures Trading Comm'n (Sept. 22, 2022) .............. 9

23

David Gogel et al., World Econ. F., *Decentralized Autonomous Organizations:
  Beyond the Hype* (2022) ......................................................................................... 2

24

25

Taylor Locke, *Ethereum's Russian-Born Cofounder Has Been Quietly Supporting
  a DAO That Raised $8 Million in Crypto for Ukraine. His Dad Is Even More
  Involved*, Fortune (Mar. 31, 2022) ........................................................................ 3

26

27

*MakerDAO Has Come Full Circle*, MakerDao Blog (July 20, 2021) ........................... 3

28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Press Release, Commodity Futures Trading Comm'n, *CFTC Imposes $250,000 Penalty Against bZeroX, LLC and Its Founders and Charges Successor Ooki DAO for Offering Illegal, Off-Exchange Digital-Asset Trading, Registration Violations, and Failing to Comply with Bank Secrecy Act* (Sept. 22, 2022) ........................... 4

Restatement (Second) of Contracts § 3 (1981) ................................................................. 7

Restatement (Third) of Agency § 1.01 (2006) ................................................................. 10

1 Williston on Contracts (4th ed. 2022) ...................................................................... 6, 7

**INTEREST OF *AMICUS CURIAE* AND INTRODUCTION**

Paradigm Operations LP ("Paradigm") is an investment firm that backs disruptive crypto/web3 companies and protocols. Paradigm takes a deeply hands-on approach to help projects reach their full potential, supporting these projects through services that range from the technical (mechanism design, smart contract security, engineering) to the operational (recruiting and regulatory strategy). As part of this effort, Paradigm has developed a deep understanding of the technological and governance issues related to decentralized autonomous organizations—popularly referred to as "DAOs."

DAOs are a new technologically-enabled form of social coordination that could revolutionize the way people organize themselves and enable communities of the future. DAOs allow human collaboration through verifiable governance mechanisms at a scale never before seen, across geographic and cultural boundaries. Despite this promise, the Commodity Futures Trading Commission (the "Commission") is pursuing a theory of liability that would ensnare countless unwary technology users and seriously threaten the viability of DAOs in the United States—pushing the development of this promising technology and its attendant benefits overseas. And the Commission is doing so through an action seemingly designed to go uncontested.

Holding individuals liable under the Commodity Exchange Act ("CEA") requires proof of personal culpability. Yet, the Commission seeks to pursue every token holder in the so-called "Ooki DAO" without making any such showing—apparently seeking to impose CEA liability on every token holder who voted on any proposal related to the DAO's governance regardless of that individual's culpability in the substantive conduct underlying the Commission's Complaint. The CEA does not support this unbounded theory of liability. To the contrary, the Act furnishes four bases for individual liability: (i) individuals commit the violation themselves, (ii) they control the person who committed the violation, (iii) they are the principal of an agent who committed the violation, or (iv) they aid and abet the violation. The Commission forgoes these established paths.

The Commission's unprecedented theory of liability is intertwined with its request to serve process by unprecedented means. Just as the Commission cannot bring suit against the "Ooki DAO" as though it were a legal entity, it cannot serve process on the DAO itself. And if the

Commission really means to serve process on the Ooki DAO's past and current token holders, then it must proceed as it would against any other person—by serving process through means that satisfy the standards set forth in the Federal Rules of Civil Procedure.  The Court should not allow the Commission to circumvent these established rules.  And that is particularly so in this case, where the Commission's opening procedural gambit foreshadows the serious substantive problems with its Complaint and the serious risks that its sweeping theory presents.

BACKGROUND

The Commission has purported to sue the "Ooki DAO," which it describes as "an unincorporated association comprised of holders of Ooki Tokens . . . who have voted those tokens to govern . . . the Ooki Protocol."  ECF No. 1, ¶ 11.  The Commission asserts throughout its Complaint that every person who owned Ooki Tokens and used them to vote at any point on any proposal thereby joined an "unincorporated association."  *See, e.g.*, *id.* ¶¶ 2, 11, 47.  That is an extraordinary and unprecedented assertion that would, if accepted, have substantial consequences for the scope of CEA liability and the ability of DAOs to develop and function in the United States.

### A.    DAOs Are a Significant and Useful Technological Innovation.

Fundamentally, DAOs are a way to organize people, a social-coordination technology that relies on blockchain-based smart contracts and incentives to facilitate individuals collaborating and taking actions with collective impact.  Despite problematic language from the bZeroX founders quoted in the Commission's Complaint, the benefit of this technology is not—as the Commission claims—to "insulate" activity "from regulatory oversight and accountability for compliance with U.S. law." *Id.* ¶ 40.  (DAOs can in fact leverage traditional corporate entities that can be held liable. *See* Chris Brummer & Rodrigo Seira, *Legal Wrappers and DAOs* 6–19 (2022), https://tinyurl.com/mryeyzfp.)  Rather, DAOs enable new communities to form and collaborate on shared goals by providing increased "transparency, trust, adaptability and speed" in making decisions as compared to traditional decision-making approaches.  David Gogel et al., World Econ. F., *Decentralized Autonomous Organizations: Beyond the Hype* 4–5 (2022), https://tinyurl.com/3fk7bevz.  And even where one or more people might participate in a project for purposes of regulatory arbitrage, that motive remains an individual one—reflecting the views

1    of only specific people, not the views of everyone who participates in a DAO, nor those of every

2    DAO that will be affected by the Commission's novel theories.

3         While this technology is still in its early stages, it has already been fertile ground for

4    experimentation.  For example, a DAO was used to make a collective bid on a copy of the United

5    States Constitution that went on auction, Kelly Crow & Omar Abdel-Baqui, *Copy of U.S.*

6    *Constitution Sells for $43.2 Million as Crypto Group DAO Is Outbid*, Wall St. J. (Nov. 18, 2021),

7    https://tinyurl.com/539hnjm9, and more recently a DAO was used to coordinate donations to

8    Ukraine, Taylor Locke, *Ethereum's Russian-Born Cofounder Has Been Quietly Supporting a DAO*

9    *That Raised $8 Million in Crypto for Ukraine. His Dad Is Even More Involved*, Fortune (Mar. 31,

10   2022), https://tinyurl.com/3apmt83t.

11        The Ooki DAO was another experiment with this technology.  As the Complaint alleges,

12   during the "DAO Relevant Period" any holder of Ooki Tokens could vote to modify certain

13   parameters of the Ooki Protocol, in accordance with the protocol's pre-existing rules.  ECF No. 1,

14   ¶¶ 2, 42–43, 48.  The ability of token holders to collectively modify code deployed on blockchain

15   is one promising application of DAOs.  This technological innovation has had great success

16   elsewhere.  For example, holders of "MKR tokens" vote on certain parameters of the code

17   governing one of the most popular digital assets, a "stablecoin" called DAI.  *See MakerDAO Has*

18   *Come Full Circle*, MakerDao Blog (July 20, 2021), https://tinyurl.com/3k4ns37b.  Token holders

19   in a particular DAO do not, however, "operate" or "control" the underlying protocols.  Their voting

20   rights are typically limited according to the specific parameters of each protocol, and do not involve

21   the type of activities that the Commission would deem objectionable in its Complaint, such as

22   allowing users to open orders or enter positions.

23        Nor do token holders have any obligation to vote or otherwise participate in a DAO's

24   governance.  A person can purchase tokens and never choose to vote on anything.  A person can

25   also participate in one vote, then sell his or her tokens and never interact with the DAO again.  Or

26   a person can purchase tokens, then delegate his or her voting rights to others.

27

28

**B.**      **The Commission's Theory Has Created Procedural Problems from the Outset.**

The Commission filed this suit after reaching a settlement with bZeroX, LLC ("bZeroX") and its two founders for illegally offering leveraged and margined retail commodity transactions and failing to comply with related obligations under the Bank Secrecy Act.  Press Release, Commodity Futures Trading Comm'n, *CFTC Imposes $250,000 Penalty Against bZeroX, LLC and Its Founders and Charges Successor Ooki DAO for Offering Illegal, Off-Exchange Digital-Asset Trading, Registration Violations, and Failing to Comply with Bank Secrecy Act* (Sept. 22, 2022), https://tinyurl.com/4t2x3f5y.  That settlement reflects a novel application of the CEA, since the Commission found that the violations occurred through the respondents' alleged control and operation of a blockchain protocol (the "Ooki Protocol"), and that the founders remained liable for the operation of the Ooki Protocol after they transferred certain controls over it to a DAO.  *See In re bZeroX, LLC*, Commission No. 22-31, 2022 WL 4597664, at *5–7, 9–10 (Sept. 22, 2022).

The Commission was not content, however, to stop with its already-novel settlement.  It instead took the additional, unprecedented step of suing the so-called "Ooki DAO" in an attempt to impose personal liability on every Ooki Token holder who voted at any point on any "Ooki DAO" governance proposal.  *See* ECF No. 1, at 23; *see also In re bZeroX*, 2022 WL 4597664, at *9–10 (describing theory that "[i]ndividual members of an unincorporated association organized for profit are personally liable for the debts of the association").

Despite the just days-old settlement with the bZeroX founders, and despite the existence of an ongoing lawsuit related to the Ooki Protocol in the Southern District of California that names other participants in the DAO, *see* Compl. ¶¶ 68–70, *Sarcuni v. bZx DAO*, No. 22-cv-00618 (filed S.D. Cal. May 2, 2022), the Commission told the Court that it was unable to serve process on the supposed "members" of the "Ooki DAO" individually, since the group was "decentralized" and "anonymous."  ECF No. 11, at 5.  So, rather than use an established method of service, the Commission sought leave to serve this loose connection of Ooki Token holders under California's "alternative service provision," by submitting its Complaint and summons to a Help Chat Box on a website supposedly affiliated with the DAO and simultaneously posting on the website's forum that it had filed the suit.  *Id.* at 8.  This Court initially approved that method of service, ECF No.

17, though it is now entertaining requests from two *amici* to reconsider that approval and has scheduled a hearing on the issue for November 30, ECF No. 27.

The Commission's action appears designed to produce a default judgment.  By admitting that it has not located any individual token holders in the "Ooki DAO" while threatening to hold token holders jointly and severally liable, the Commission has created a strong disincentive for anyone to appear and defend this action.  And indeed, no defendant has yet appeared.

## ARGUMENT

Paradigm urges the Court to reconsider its initial approval of an alternative method of service.  As two other *amici* have explained, the Commission could have identified at least some token holders who voted on the Ooki DAO.  ECF No. 16, at 9; ECF No. 22, at 16.  Nor is the form of service that the Commission has deployed thus far reasonably designed to apprise the broad, dissociated set of people who have voted Ooki Tokens of the suit against them.  *See* ECF No. 16, at 8, 10–11; ECF No. 22, at 11–12, 15–16.

The Commission's attempt to circumvent the established rules for serving process provides a preview of the serious problems with its Complaint.  The Commission's suggestion that the Ooki DAO is an "unincorporated association" comprised of every token holder who has ever voted on a governance proposal would, if accepted, upend the law of associations and expand the CEA to an extraordinary degree.  And its effort to hold individual token holders liable for anything accomplished through a DAO would eradicate well-established limits on CEA liability while putting countless innocent technology users at risk.  These are serious claims and the Court should consider them with tremendous care—beginning with a requirement of constitutionally sufficient process before the Commission's enforcement action may proceed.

### A.    The "Ooki DAO" Cannot Be Held Liable as an "Unincorporated Association."

The Commission's sole named defendant is the "Ooki DAO," which the Commission claims is "an unincorporated association comprised of holders of Ooki Tokens . . . who have voted those tokens to govern . . . the Ooki Protocol."  ECF No. 1, ¶ 11.  The Commission presumably makes this claim to fit its suit into CEA, which allows the Commission to hold liable only a "person" who violates the Act and defines "persons" to include individuals, partnerships,

Paradigm *Amicus Curiae* Brief
No. 3:22-cv-5416-WHO

corporations, trusts, and—as most relevant here—"associations."  7 U.S.C. §§ 1a(38), 2(a)(1)(B), 13c(a)–(b).   While the Commission asserts that the "Ooki DAO" is an "unincorporated association," it does not plead any facts that show as much.

The Commission is incorrect that every token holder in the "Ooki DAO" who uses his or her tokens to vote on a governance proposal thereby joins a sprawling unincorporated association.  The CEA does not define the term "association," but, in the related settlement order, the Commission cites what it calls the "federal definition."  *In re bZeroX*, 2022 WL 4597664, at *8.  That definition comes from *Southern California Darts Ass'n v. Zaffina*, where the Ninth Circuit explained that an "unincorporated association" is a "voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common objective."  762 F.3d 921, 927 (9th Cir. 2014).   California law similarly defines an unincorporated association as "an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not."  Cal. Corp. Code § 18035.

Under these formulations, three features are necessary to form an "association."  There must be (1) a group of persons who (2) join through mutual consent to (3) pursue a common objective.  Each of those features is missing here.

**1.**   To start, a DAO is not *itself* a "group of persons"—it is a technological tool for social coordination through which people can make decisions.  Holding a technological tool liable for the actions of some of its users makes no more sense than holding "the internet" liable for misconduct it facilitates.  That is presumably why the Commission characterizes the "Ooki DAO" as an association of *people*—specifically all people who own and vote tokens on the DAO to make certain governance decisions.  But while that theory may describe a "group of persons," it fails on the next two requirements for an association.

**2.**   Mutual consent to form an association is not established by different people casting different votes on a DAO at different times.  The concept of mutual consent comes from contract law and, at bottom, entails "agreement"—agreement that must be on "the same thing in the same sense."  1 Williston on Contracts § 1:3 (4th ed. 2022); Cal. Civ. Code § 1580; *see also Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1211 (9th Cir. 2016) (adopting

Paradigm *Amicus Curiae* Brief
No. 3:22-cv-5416-WHO

as federal law "general principles" of contract law).  That mutual consent is present only when the parties show it outwardly through their words or conduct.  *See* Restatement (Second) of Contracts § 3 (1981); 1 Williston on Contracts § 3:4 (4th ed. 2022); *Bowers v. Raymond J. Lucia Cos.*, 142 Cal. Rptr. 3d 64, 70 (Ct. App. 2012).

Here, the Commission has offered nothing to show mutual consent among everyone who voted on the Ooki DAO to form a broad association.  The only conduct the Commission invokes— the act of voting at various times on assorted topics—does not evince agreement on any same, single thing and certainly does not show an intent to join together in a single unit.  ECF No. 1, ¶ 11; *see also In re bZeroX*, 2022 WL 4597664, at *8.  DAO governance proposals are ad hoc, and participation in a proposal is fully within the discretion of the token holders at the time that proposal is made.  At time *A*, one set of persons might participate in a vote about how to brand the DAO (for example, whether to produce custom art and merchandise associated with the DAO).  Later at time *B*, though, a separate set of persons might vote on making changes to the DAO's operations or structure (for example, whether to authorize specific groups of token holders to take particular actions on behalf of the collective).  Some of the people who voted at time *A* might no longer be involved in the DAO.  They might have decided to stop participating, or even sold their tokens, or never owned tokens in the first place, having borrowed them instead.  That set of people surely does not agree to the same thing as the people at time *B*—individuals who have come together to make an altogether different decision.  Nor does this account for people who vote against an action; those who vote *against* a particular course cannot be deemed to have bound themselves to *taking* that course by mutual consent.  Yet under the Commission's simplistic view, all of these people from all of those votes are joined together in one enormous unincorporated association.  That is incorrect.

**3.**     Moreover, even if mutual consent were somehow present, the Commission has not shown that everyone who voted their tokens on the Ooki DAO joined together to pursue a common objective.  Different voters on a DAO come together for different purposes at different times—to decide whether and how to "modify, operate, market, and take other actions with respect to" the DAO or its underlying protocol.  *See* ECF No. 1, ¶ 11.  Even in a single vote, the participants

Paradigm *Amicus Curiae* Brief
No. 3:22-cv-5416-WHO

often have conflicting purposes, as each participant is generally acting in his or her own self-interest.  The mere fact of voting—on some topic at some point in time—falls short of showing the sort of common purpose required to establish an unincorporated association.

The Commission tries to get around this problem by framing the "common objective" of the voting token holders as "governing the Ooki Protocol."  *In re bZeroX*, 2022 WL 4597664, at *8; *see also* ECF No. 1, ¶ 11 (alleging that the votes are "to govern" the Ooki Protocol).  But that broad framing would make everyone potentially liable for the actions of others with whom they share some broad common purpose.

This theory far exceeds the law of unincorporated associations.  If all Ooki DAO voters shared the "common objective" of "governing the Ooki Protocol," then so too did those who voted in the 2020 federal elections share the "common objective" of "governing" the United States.  Or what about those who participate in an online or telephone poll—are they likewise joined by the "common objective" of governing or influencing the topic of the poll?  Under the Commission's capacious view, the answer appears to be "yes."

Underscoring the absurdity of this theory, the Commission seems to further suggest that casting a single vote on the Ooki DAO ties that voter to all of the Ooki DAO's other current and future participants for *all time and all purposes*.  The Commission's Complaint is not targeted at a particular vote or discrete action whereby it claims *some* holders of Ooki Tokens joined together at a single point or for a discrete purpose.  It seeks to instead impose liability much more broadly than that—apparently seeking to impose liability for alleged illegal activity accomplished through the Ooki DAO's underlying protocol on *every* token holder who has voted on the DAO's governance in *any* fashion at *any* point during the "DAO Relevant Period," defined as "approximately August 23, 2021 to the present."  ECF No. 1, ¶ 4.  By that rationale, the 2020 voters are stuck together for all times and all purposes, an outlandish prospect that no authority supports.  If an "unincorporated association" is truly a "*voluntary* group of persons," then it cannot bind the group together forever or for purposes a person has not voluntarily joined to support.  *S. Cal. Darts Ass'n*, 762 F.3d at 927 (emphasis added).

**B.    The Commission Cannot Hold Individual DAO Participants Liable Without Proving That They Violated the CEA.**

The Commission's Complaint does not purport to name individual participants in the Ooki DAO, and accordingly provides no basis for entering any eventual judgment against these individuals directly.  Should the Commission wish to hold an individual participating in the Ooki DAO liable—as it did via settlement with the DAO's two founders—then it must show that the individual did something to incur liability under the CEA.  The Commission's Complaint does not do that.

The Complaint also does not plead any theory for holding individuals secondarily liable.  It does not allege, for example, that any Ooki DAO participant aided and abetted the underlying violations, controlled the violators, or was the principal of some agent who broke the law.  *See* 7 U.S.C. §§ 2(a)(1)(B), 13c(a)–(b); *see Dissenting Statement of Commissioner Summer K. Mersinger Regarding Enforcement Actions Against: 1) bZeroX, LLC, Tom Bean, and Kyle Kistner; and 2) Ooki DAO*, Commodity Futures Trading Comm'n (Sept. 22, 2022), https://tinyurl.com/56zpa9z8.  Nor is merely voting on some Ooki DAO governance proposal sufficient to incur secondary liability under the CEA.  This is clear on each potential basis.

1.    To show that someone aided and abetted a civil wrong, the Commission must show that (1) another person performed a wrongful act, (2) the defendant "knowingly and substantially" assisted that principal violation, and (3) he did so while "generally aware of his role" in an illegal activity.  *Gonzalez v. Google LLC*, 2 F.4th 871, 902 (9th Cir. 2021).  Voting alone would not "knowingly and substantially" assist in the principal's violation.  The voter might participate in a decision that is entirely unrelated to the violation.  Or the voter might even be trying to prevent that violation from happening.  Such conduct does not "knowingly and substantially" assist in whatever violation the principal ultimately commits.

That is particularly true in this novel and emergent space.  Those who purchased tokens on a DAO and voted on particular governance proposals could not anticipate that the Commission would later accuse them of "knowingly and substantially" assisting in wrongdoing.  Absent much clearer regulatory guidance than exists today, the average DAO token holder who votes on a

Paradigm *Amicus Curiae* Brief
No. 3:22-cv-5416-WHO

governance proposal cannot be deemed "generally aware of his role" in whatever illegal activity a related protocol might at some point facilitate.  *Id.*

   **2.**   Nor could any individual token holder be understood to "control" whatever violations might be effectuated through a DAO.  To be a controlling person, a token holder must have "actually exercised general control over the operation of the entity principally liable," and "possess[] the power or ability to control the specific transaction or activity upon which the primary violation was predicated."  *Monieson v. Commodity Futures Trading Comm'n*, 996 F.2d 852, 859–60 (7th Cir. 1993); *accord Commodity Futures Trading Comm'n v. Baragosh*, 278 F.3d 319, 330 (4th Cir. 2002).  In a DAO, participants vote through tokens, and nothing in the Complaint suggests that any one person had enough tokens to generally control the Ooki DAO's operation. *See* ECF No. 1.  Nor does the Complaint attempt to impose liability on only that sort of person.  It instead adopts a blunderbuss approach that targets *all* token holders who have voted on *anything* without differentiating among them.

   **3.**   Finally, those voters cannot be held liable as the principal of some undefined agent.  Generally, an agency relationship exists when "one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."  Restatement (Third) of Agency § 1.01 cmt. c (2006).  The Ooki DAO is not a "person" and has no power to act on voters' behalf. It is just a technological tool that groups of people use to do things.  It is not an "agent" any more than a hammer is an "agent" of a carpenter.

   \*     \*     \*

   For all these reasons, the Commission's broad theory of liability fails as a matter of law. Treating every token holder who voted on the Ooki DAO as a single, sprawling, and shifting "unincorporated association" would expand that concept beyond any sensible bounds and ensnare everyone who engages in loosely coordinated activity together in an interminable parade of "unincorporated associations."  It would also circumvent the CEA's clear limitation of personal liability to just those who are personally culpable for violating the Act's requirements.  The

1    Commission makes no personal allegations against any token holder in the Ooki DAO and has

2    accordingly offered no basis to impose liability on any of them.

3                                         **CONCLUSION**

4            When actions occur through pre-set computer code—with occasional input from shifting

5    sets of anonymous voters—assigning responsibility for any particular action may pose practical

6    difficulties.  But those difficulties do not warrant dispensing with settled legal concepts in favor of

7    a shotgun approach to liability.  Before the courts wade into these complex issues, unambiguously

8    sufficient service should be a minimum prerequisite.  Paradigm thus encourages the Court to

9    reconsider its approval of an alternative method of service.

10

11   Dated: October 17, 2022

12

13                                                              By:  */s/ Eric Tung*

14   Rodrigo Seira (*pro hac vice* forthcoming)          Eric Tung (SBN 275063)
     PARADIGM OPERATIONS LP                              JONES DAY
15   548 Market Street                                   555 South Flower Street
     San Francisco, CA 94104                             Fiftieth Floor
16   Phone: (415) 986-9283                               Los Angeles, CA 90071
     rodrigo@paradigm.xyz                                Phone: (213) 489-3939
17                                                       Facsimile: (213) 243-2539
                                                         etung@jonesday.com
18

19                                                       James Burnham
                                                            (*pro hac vice* forthcoming)
20                                                       Josh Sterling
                                                            (*pro hac vice* forthcoming)
21                                                       Isabelle Hanna
                                                            (*pro hac vice* forthcoming)
22                                                       JONES DAY
                                                         51 Louisiana Avenue, N.W.
23                                                       Washington, D.C. 20001
                                                         Phone: (202) 879-3939
24                                                       Facsimile: (202) 626-1700
                                                         jburnham@jonesday.com
25                                                       jsterling@jonesday.com
                                                         ihanna@jonesday.com
26

27                                     *Counsel for* Amicus Curiae

28                                     *Paradigm Operations LP*

**ATTESTATION PURSUANT TO LOCAL RULE 5-1(h)(3)**

Pursuant to Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: October 17, 2022                    JONES DAY


By:   */s/ Eric Tung*
Eric Tung