BROWN RUDNICK LLP
STEPHEN D. PALLEY (*pro hac vice*)
601 Thirteenth Street NW Suite 600
Washington, D.C. 20005
Telephone: (202) 536-1766
Facsimile: (617) 289-0466
Email: spalley@brownrudnick.com

BROWN RUDNICK LLP
SAMUEL A. MONIZ (State Bar No. 313274)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: smoniz@brownrudnick.com

ALEX GOLUBITSKY, PLLC
ALEX GOLUBITSKY (State Bar No. 289236)
3013 Libby Ter
Richmond, Virginia 23223
Telephone: (206) 271-7417
Facsimile: (866) 301-2038
Email: ag@agolubitsky.com

*Counsel for Amici Curiai,*
*LEXPUNK*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>OOKI DAO (formerly d/b/a bZx DAO), an unincorporated association,<br><br>Defendant. | CASE NO. 3:22-cv-05416<br><br>**AMICUS CURIAE BRIEF OF LEXPUNK REGARDING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**<br><br>Date:   November 30, 2022<br>Time:  2:00 pm<br>Place:  Courtroom 2 |

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST ................................................................................................. 2

BACKGROUND................................................................................................................... 3

ARGUMENT .................................................................................................................... 7

I.    BECAUSE A "DAO" IS NOT A LEGAL PERSON UNDER THE CEA OR OTHER
      APPLICABLE U.S. FEDERAL LAW, THE CFTC MUST PURSUE ITS CLAIMS
      AGAINST INDIVIDUAL DAO PARTICIPANTS, AGAINST WHOM ALTERNATIVE
      SERVICE IS IMPROPER................................................................................................ 8

      A.    A "DAO" is Not a Person Under the Statute's Plain Language............................... 8

      B.    Alternative Service is Inappropriate for Individual  Ooki DAO Token Users........ 11

II.   TREATING OOKI DAO AS A "PERSON" FOR PURPOSES OF SERVICE OF
      PROCESS EXCEEDS THE CFTC'S AUTHORITY UNDER THE CEA ....................... 15

      A.    The CFTC's Rules with Respect to DAO Personhood, Token Holder Liability and
            DAO Membership are Arbitrary and Capricious. ................................................. 16

      B.    Any Determination that DAOs are Futures Commodities Merchants or Otherwise
            have Liability for DeFi Systems is a Legislative Rule Required to go through an
            APA Required Notice and Comment period Before it can Bind Anyone.............. 18

CONCLUSION ................................................................................................................. 20

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

**Federal Cases**

4

*Abbott Labs. v. Gardner,*
5     387 U.S. 136, 87 S. Ct. 1507 (1967) ...................................................................... 16

6

*Dep't of Com. v. New York,*
    139 S. Ct. 2551 (2019) ............................................................................... 16, 17

7

*F.C.C. v. Fox Television Stations, Inc.,*
8     556 U.S. 502 (2009) ...................................................................................... 16

9

*Fifty Assocs. v. Prudential Ins. Co.,*
10     446 F.2d 1187 (9th Cir. 1970) ......................................................................... 15

11

*Gillespie v. Civiletti,*
    629 F.2d 637 (9th Cir. 1980) .......................................................................... 13

12

*Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee,*
13     456 U.S. 694, 102 S. Ct. 2099 (1982) .................................................................. 14

14

*Kisor v. Wilkie,*
15     139 S. Ct. 2400 (2019) .................................................................................. 18

16

*Mendoza v. Perez,*
    754 F.3d 1002 (D.C. Cir. 2014) ....................................................................... 19

17

*Mennonite Bd. of Missions v. Adams,*
18     462 U.S. 791, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983) ................................................ 13

19

*Michigan v. EPA,*
20     576 U.S. 743, 135 S. Ct. 2699 (2015) .................................................................. 10

21

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
    339 U.S. 306, 70 S. Ct. 652 (1950) .................................................................... 12

22

*Niz-Chavez v. Garland,*
23     141 S. Ct. 1474 (2021) ................................................................................... 9

24

*Perez v. Mortg. Bankers Ass'n,*
    135 S. Ct. 1199 (2015) ............................................................................... 18, 19

25

*PM Grp. Life Ins. Co. v. W. Growers Assurance Tr.,*
26     953 F.2d 543 (9th Cir. 1992) ............................................................................ 9

27

*SEC v. Ross,*
28     504 F.3d 1130 (9th Cir. 2007) ........................................................................... 9

ii

*Strike 3 Holdings, LLC v. Doe*,
   No. 22cv659-LL (MSB), 2022 U.S. Dist. LEXIS 96062 (S.D. Cal. May 27, 2022)...................................................................................................................... 13

*Williams v. Doe*,
   No. 6:21-03074-CV-RK, 2021 WL 4975742 (W.D. Mo. Oct. 26, 2021) ............................. 15

**Other State Cases**

*Commodity Futures Trading Comm'n v. Bryant*,
   No. CV 21-00386 HG-KJM, 2022 WL 1746760, at *2 (D. Haw. May 31, 2022).................. 12

*Cox v. Coinmarket OPCO*,
   LLC 2021 WL 5908206 (Slip. Op.) ...................................................................................... 15

**Federal Statutes**

5 U.S.C.
   § 553(b) ................................................................................................................................. 18
   § 553(b)(A) and (B)............................................................................................................... 19
   § 553(c) ................................................................................................................................. 18
   § 702 ..................................................................................................................................... 10
   § 704 ..................................................................................................................................... 16
   § 706 ..................................................................................................................................... 15
   § 706(2) ................................................................................................................................... 9
   § 706(2)(A), (D) ................................................................................................................... 10

7 U.S.C.
   § 1(a)(38)................................................................................................................................. 8

Commodity Exchange Act ...............................................................................................*passim*

**California Statutes**

Administrative Procedure Act .................................................................................... 8, 9, 17

APA.....................................................................................................................................*passim*

**Other Authorities**

CFTC Docket No. 22-31 ............................................................................................................. 2

Fed. R. Civ. P. 4 ........................................................................................................................ 13

FRCP 4(f)(1) .............................................................................................................................. 15

https://academy.shrimpy.io/lesson/what-is-liquidity-
   mining#:~:text=Liquidity%20mining%20is%20a%20process,accrued%20from
   %20traders%20swapping%20tokens ...................................................................................... 4

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

https://cointelegraph.com/daos-for-beginners/what-is-a-dao ................................................ 5

https://compound.finance/governance/comp ................................................................ 5

https://consensys.net/blog/codefi/daos/ ................................................................... 2, 4

https://decrypt.co/34131/bzx-about-to-jump-on-yield-farming-bandwagon ............................ 2, 4

https://docs.ooki.com/ ...................................................................................... 7

https://docs.ooki.com/governance/dao-governance ........................................................ 4

https://docs.ooki.com/governance/delegating .............................................................. 6

(https://docs.ooki.com/ooki-ecosystem/multichain) ...................................................... 3

https://docs.ooki.com/ooki-ecosystem/multichain ......................................................... 4

https://ethereum.org/en/dao ............................................................................ 2, 4

https://ethereum.org/en/defi/ ............................................................................. 3

https://ethereum.org/en/developers/docs/consensus-mechanisms/pos/#validators ...................... 4

https://ethereum.org/en/developers/docs/nodes-and-clients/ ............................................ 7

https://ethereum.org/en/smart-contracts/ ................................................................. 3

https://ethereum.org/en/what-is-ethereum/ ............................................................... 3

https://ethereum.org/en/what-is-ethereum/
        https://ethereum.org/en/developers/docs/consensus-
        mechanisms/pow/mining/#top; ...................................................................... 4

https://forum.ooki.com/ .................................................................................... 7

https://forum.ooki.com/t/ooki-snapshot-proposal-to-adjust-interest-rates-with-
        minimal-interest-rate-mechanism/449 .............................................................. 6

https://makerdao.world/en/faqs/stability-fee/............................................................. 4

https://makerdao.world/en/learn/governance/mkr-token/ ................................................ 4

, https://snapshot.org/#/ooki.eth,
        https://www.tally.xyz/governance/eip155:1:0x3133b4F4dcffc083724435784fE
        FAD510FA659c6and
        https://etherscan.io/address/0x3133b4f4dcffc083724435784fefad510fa659c6#w
        riteProxyContract ................................................................................. 7

https://snapshot.org/#/ooki.eth/proposal/0xb68f02817b18529c5cf17bf1ef8e40b1a9782d47f633e08305ca817fb8a55a1d ................................................................. 6

https://uniswap.org/blog/uni .................................................................................. 5

https://vitalik.ca/general/2022/09/20/daos.html ................................................ 4

https://web.archive.org/web/20220926144508/https://docs.ooki.com/governance/voting ................................................................................................................ 8

https://www.cftc.gov/PressRoom/PressReleases/8590-22 ................................. 11, 12

https://www.cftc.gov/PressRoom/SpeechesTestimony/mersingerstatement092222 ................. 9

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE

64864917 v1-WorkSiteUS-038978/0001

**<u>STATEMENT OF INTEREST</u>**

This case concerns the U.S. Commodities Futures Trading Commission's ("CFTC") claims against users of a piece of software and other people associated with it.[1]  The software is known as the "bZx protocol" or "Ooki protocol" (together, "Ooki Protocol").[2]  Ooki Protocol is an example of a blockchain-based, open-source software known as a "decentralized finance" ("DeFi") system. Ooki DAO is an example of a novel type of loose-knit, technologically mediated social structure known as a "decentralized autonomous organization" or "DAO."[3] DAOs are often closely associated with DeFi systems.[4] LeXpunK[5] is a community of lawyers and software developers dedicated to providing open source legal resources and support for DeFi and DAOs, providing a voice for groups that wish to use DeFi systems or associate through DAOs, and advocating for these communities.

LeXpunK operates through various working groups that specialize in (i) developing contracts, templates, and best practices for DAOs, (ii) responding to regulatory guidance, draft laws, and proposals for self-regulatory initiatives, (iii) developing DAO alternative dispute resolution processes, and (iv) producing general educational materials.  The purpose of this brief is

/ / /

---

[1] Pursuant to Fed. R. Evid. 201(b)(2), LeXpunK respectfully requests that the Court take judicial notice of the articles and hyperlinked web pages referenced herein, the existence and contents of which are not reasonably subject to dispute.

[2] The CFTC describes the Ooki Protocol as "a blockchain-based software protocol that accepted orders for and facilitated margined and leveraged retail commodity transactions (functioning *similarly to* a trading platform)". (September 22, 2022 Order Instituting Proceedings Pursuant to Section 6(c) and (d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, CFTC Docket No. 22-31, at 2.) (Emphasis Added).  The CFTC refers to certain users of and other persons associated with the Ooki Protocol in the aggregate as "bZx DAO" or "Ooki DAO" (together, "Ooki DAO").

[3] https://decrypt.co/34131/bzx-about-to-jump-on-yield-farming-bandwagon and https://ethereum.org/en/dao

[4] https://consensys.net/blog/codefi/daos/

[5] LeXpunK ("Amicus") files this brief pursuant to the Court's Order of October 12, 2022 (ECF # 27).

to provide the Court with legal and technical context, in the absence of parties before the Court able to respond to the CFTC's Motion for Alternative Service (the "Motion" ECF #11).[6]

## **BACKGROUND**

DeFi systems like Ooki Protocol let people all over the world interact over the Internet in "peer-to-peer" trading, borrowing, lending, and other financialization of digital assets, including cryptocurrencies.[7] Copies of the Ooki Protocol and other DeFi systems are stored on certain general-purpose blockchain systems, such as Ethereum.[8]  Software code comprising DeFi systems are called "smart contracts".[9] The blockchains on which these smart contracts reside are databases that operate and are maintained by a globally distributed, unaffiliated set of network nodes who receive, process, and store transactions and their results.[10]

As part of their activities, blockchain node operators do the following for Ooki Protocol:

1.   receive transaction requests relating to the Ooki Protocol and other DeFi smart contracts from anonymous Internet users;

2.   run the code for such smart contracts in accordance with those requests;

3.   record the results of such code-execution on the blockchain; and

/ / /

---

[6] The DeFi Education Fund ("DEF") has filed a separate *Amicus Curiae* brief (ECF #22). Amicus generally supports the arguments advanced by DEF and will not replicate the arguments set forth therein.

[7] https://ethereum.org/en/defi/ and https://ethereum.org/en/what-is-ethereum/.

[8] In addition to  Ethereum, the Ooki Protocol is also deployed to the Binance Smart Chain, and Polygon blockchain systems  (https://docs.ooki.com/ooki-ecosystem/multichain).

[9] The term "smart contract" is metaphorical, and refers to blockchain stored and software code. Smart contracts, standing alone, are not legal contracts.  *See*  https://ethereum.org/en/defi/ and https://ethereum.org/en/smart-contracts/.

[10] *See* Iansiti, Marco; Lakhani, Karim R. (January 2017). "The Truth About Blockchain". Harvard Business Review. Harvard University. The technology at the heart of bitcoin and other virtual currencies, blockchain, is an open, distributed ledger that can record transactions between two parties efficiently and in a verifiable and permanent way.

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

4. receive a reward of cryptocurrency—whether from the users, the blockchain network itself, or a mix of the two—for performing these tasks, in a process known as "mining," "validation" or "block production".[11]

Ooki DAO and other DAOs associated with DeFi systems "are not corporations," but rather are *ad hoc* social formations "organized around *providing infrastructure*" that help make possible the activities described immediately above.[12] In Ooki DAO's case, the relevant infrastructure is the Ooki Protocol as it exists on Ethereum and other blockchain systems.[13] Ooki Protocol users have received a token formerly referred to as "BZX" and now referred to as "OOKI" (hereinafter, "OOKI"), in a process variously referred to as "liquidity mining," "yield farming," or "protocol disbursement".[14] The OOKI Token is known as a "governance token" for the Ooki Protocol.[15] Other DeFi systems similarly distribute governance tokens to their users.[16]

Governance tokens such as OOKI give users control over two things: (1) changeable properties of the DeFi system (e.g., the 'stability fee' parameter determining how much users of the system must pay into the system for usage[17]) or (2) allocation of discretionarily controllable

---

[11] https://ethereum.org/en/what-is-ethereum/  https://ethereum.org/en/developers/docs/consensus-mechanisms/pow/mining/#top; *and see* https://ethereum.org/en/developers/docs/consensus-mechanisms/pos/#validators

[12] *See* https://vitalik.ca/general/2022/09/20/daos.html

[13] These blockchain systems include  Ethereum, Binance Smart Chain, and Polygon. *See* https://docs.ooki.com/ooki-ecosystem/multichain

[14] https://decrypt.co/34131/bzx-about-to-jump-on-yield-farming-bandwagon

[15] https://docs.ooki.com/governance/dao-governance

[16] https://academy.shrimpy.io/lesson/what-is-liquidity-mining#:~:text=Liquidity%20mining%20is%20a%20process,accrued%20from%20traders%20swapping%20tokens. And https://ethereum.org/en/dao and https://consensys.net/blog/codefi/daos/ "Liquidity mining is a process in which crypto holders lend assets to a decentralized exchange in return for rewards. These rewards commonly stem from trading fees that are accrued from traders swapping tokens."

[17] https://makerdao.world/en/faqs/stability-fee/ and https://makerdao.world/en/learn/governance/mkr-token/ ("As a governance token, MKR is used …to execute changes to parameters inside of the Maker Protocol like Stability Fees, the DSR, Debt Ceilings, and many others."

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

resources that are related to the DeFi system (such as governance tokens that have not yet been distributed)[18]. The goal of providing users with this limited authority is to provide for the continuing availability, functioning and quality of the financial infrastructure those users rely upon.[19] The holders or users of such governance tokens are often referred to as comprising all or part of "a DAO" such as Ooki DAO.[20]

Although OOKI holders, or the Ooki DAO, may be able to "govern" the Ooki Protocol through their OOKI tokens, such governance is highly limited, technologically constrained and not like "governance" as it exists in traditional corporate structures.[21] As noted above, neither the Ooki DAO nor OOKI holders run the Ooki Protocol on behalf of users—that activity is performed by neutral, general-purpose, unaffiliated, globally distributed blockchain network nodes whose owner/operators neither know nor care whether the transactions they are processing relate to the Ooki Protocol or any other specific DeFi system or protocol.[22]  Node owner/operators have no contract, arrangement, or understanding with, and are not in privity with, any OOKI holders or the Ooki DAO as such—rather, they perform their functions in order to gain cryptocurrency rewards for their general network services, and any given "block" of data that is produced by them will

---

[18] https://uniswap.org/blog/uni ""Uniswap governance will control all UNI vested to the Uniswap treasury. At this point, governance can vote to allocate UNI towards grants, strategic partnerships, governance initiatives, additional liquidity mining pools, and other programs."

[19] *See* https://compound.finance/governance/comp ("Compound (COMP) is an ERC-20 asset that empowers community governance of the Compound protocol; COMP token-holders and their delegates debate, propose, and vote on all changes to the protocol. By placing COMP directly into the hands of users and applications, an increasingly large ecosystem will be able to upgrade the protocol, and will be incentivized to collectively steward the protocol into the future with good governance."

[20] https://cointelegraph.com/daos-for-beginners/what-is-a-dao ("In 2020, a DeFi lending protocol launched its own governance token and distributed it through a liquidity mining process. Essentially, anyone who interacted with the protocol would receive tokens as a reward. Other projects have since replicated and adapted the model. Now, the list of DAOs is extensive…"

[21] *Supra*, note 11.

[22] *See, e.g.*, *Supra* notes 15, 19.

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

contain transactions relating to diverse smart contract systems rather than relating solely to the Ooki Protocol.[23] Instead of running the Ooki protocol on behalf of others as a business, the Ooki DAO, or OOKI holders, vote their tokens on various issues relating to the Ooki protocol, and, in doing so, express their personal preferences as users of that digital infrastructure as to how it should operate. For example, recent votes were held on a proposal to change the interest rates charged by the Ooki Protocol[24] and a proposal to allocate previously un-distributed OOKI to a 'cross-chain' bridge intended to make the copies of the Ooki Protocol on different blockchain systems interoperable[25].

The OOKI token also contains a "delegation" feature whereby an OOKI holder can authorize other people—by "permissioning" their respective blockchain system addresses—to use the voting power of any given OOKI token.[26] Because of this delegation feature, it cannot even be clearly ascertained which persons own <u>and</u> vote their OOKI, versus owning their OOKI and delegating the voting power to other persons. All such persons—whether owning OOKI tokens, voting OOKI tokens directly, or voting OOKI tokens through "delegation", may be completely unknown to one another in their identities, locations, interests, and motivations. Each may be running his or her own business or personal activities on the Ooki Protocol, in a disparate and uncoordinated manner, and voting their OOKI tokens solely to further their own personal, individual, unaffiliated interests in the Ooki Protocol rather than, as portrayed by the CFTC, to conduct a collective business enterprise.

Ooki DAO governance does not require use of any particular website or centrally controlled software. Rather, OOKI tokens can be voted through any number of open-source

---

[23] *Id.*

[24] https://forum.ooki.com/t/ooki-snapshot-proposal-to-adjust-interest-rates-with-minimal-interest-rate-mechanism/449

[25] https://snapshot.org/#/ooki.eth/proposal/0xb68f02817b18529c5cf17bf1ef8e40b1a9782d47f633e08305ca817fb8a55a1d

[26] https://docs.ooki.com/governance/delegating

1  software tools designed for blockchain system interaction, including completely self-hosted tools

2  such as the client software for blockchain system "nodes".[27] Moreover, *multiple* independently

3  owned and operated and unaffiliated websites facilitate OOKI token voting, for people who don't

4  use wallet applications or their own nodes.[28]  Furthermore, discussion of matters relating to the

5  Ooki Protocol and Ooki DAO takes place on multiple platforms, including Twitter, Telegram,

6  Discord, YouTube, GitHub, Instagram and a messaging forum devoted to discussing the Ooki

7  Protocol.[29] In short, there is no one single website which all OOKI token holders, Ooki DAO

8  participants or Ooki Protocol users can be presumed to view or use.

9  ## ARGUMENT

10        It is true, as can be seen, that this case concerns novel technology and novel internet-based

11  social structures. At this procedural juncture, however, not-so-novel constitutional principles are at

12  issue.  The CFTC claims that a group of OOKI token holders violated the Commodities Exchange

13  Act ("CEA") by being a Futures Commission Merchant ("FCM") from August 23, 2021 to the

14  present. CFTC Complaint, ECF #1, p. 4. In particular, the CFTC seeks to hold liable an unknown

15  and unidentified subset of Ooki token holders "who have voted those tokens to govern… the Ooki

16  Protocol". *Id.*, p. 11. The CFTC, without justification or analysis, characterizes the activity of

17  having voted OOKI tokens *at any time*, on *any subject*, regardless of whether directly (as owner)

18  or indirectly (as delegate), as constituting 'membership' in the "unincorporated association" of the

19  Ooki DAO.[30]

---

21  [27] https://ethereum.org/en/developers/docs/nodes-and-clients/ ("Running a node allows you to directly, trustlessly and privately use Ethereum").

23  [28] *See*, *e.g.*, https://snapshot.org/#/ooki.eth; https://www.tally.xyz/governance/eip155:1:0x3133b4F4dcffc083724435784fEFAD510FA659c6; https://etherscan.io/address/0x3133b4f4dcffc083724435784fefad510fa659c6#writeProxyContract) .

25  [29] https://docs.ooki.com/, *see* "Additional Resources" section in side ribbon and https://forum.ooki.com/

27  [30] It is also seems that the CFTC is factually incorrect in its assertion that only OOKI Token holders can vote in the DAO. According to the OOKI governance documents "Token Holders with (footnote continued)

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

The CFTC seeks to serve these anonymous people, who may be all over the world, have not entered into a partnership or similar contract with one another, and who seemingly hold in common only their shared use of specific software (the Ooki Protocol) over the Internet, by posting a lawsuit on a website maintained by unknown persons with an unknown relationship to such people and such software, rather than serving the targeted software users themselves.  The CFTC's only rationale for such a novel alternative method of group service is that such persons are "associated" by means of the software in question —which, in the CFTC's mind, makes such persons an "unincorporated association" constituting a legal person under U.S. federal law.

The CFTC's Motion seeking leave to serve process in this manner, if granted, would offend basic principles of due process and potentially violate international law. Granting the Motion would also prevent OOKI holders from exercising their rights under the Administrative Procedure Act ("APA") by using the judicial process, and a likely default judgment, to prevent such persons from challenging rules created by the CFTC regarding liability of token holders without complying with required rulemaking procedures.  Finally, granting the Motion could also have a needless and unnecessary chilling effect on technological innovation by raising the specter of unlimited personally liability for persons interacting with blockchain based software.  The Motion should be denied.

I.   **BECAUSE A "DAO" IS NOT A LEGAL PERSON UNDER THE CEA OR OTHER APPLICABLE U.S. FEDERAL LAW, THE CFTC MUST PURSUE ITS CLAIMS AGAINST INDIVIDUAL DAO PARTICIPANTS, AGAINST WHOM ALTERNATIVE SERVICE IS IMPROPER**

A.   **A "DAO" is Not a Person Under the Statute's Plain Language.**

While the CEA includes an "association" within in the definition of "person", *see* 7 U.S.C.

/ / /

_____

DAO voting rights is not limited to OOKI token holders." *See* archived version of this document (as of September 26, 2022) at
https://web.archive.org/web/20220926144508/https://docs.ooki.com/governance/voting.

§ 1(a)(38),  nothing in the statutory text suggests that a DAO is an association.[31]  This is a threshold problem because "[b]efore a court may exercise the state's coercive authority over a person or property, some statute must authorize the act." *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). As CFTC Commissioner Summer Mersinger observed: "[T]he CEA does not provide the Commission with authority to regulate the Ooki DAO."[32]

Whether a "DAO" is an association under the CEA is a matter of federal statutory interpretation, not state law.  "When called on to resolve a dispute over a statute's meaning, [a] Court normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021) (""[T]he court's sole function is to apply the law as the court finds it, not defer to some conflicting reading the government might advance."). The CEA was enacted in 1936, and it is difficult to conceive that, at that time, Congress intended to include a DAO in the term "association".  The DAO at issue here, as explained in the CFTC's complaint, is more like autonomous software than a corporation or partnership, which is controlled by people. ECF #1, p. 25 – 31. Indeed, Congress could not have intended that software be treated as a person for purposes of CEA when it enacted the law in 1936, given the fact that computers as we know them did not exist at that time, much less software.  No case from any court holds otherwise.  In short, there is no independent statutory basis to support the CFTC's assertion that Ooki DAO is a person or an association. Without this authority, service on Ooki DAO cannot be approved by this Court, whether under FCRP 4 or otherwise.

The Administrative Procedure Act ("APA") further militates against granting the CFTC's request. Under the APA, courts are required to "hold unlawful and set aside agency action, findings, and conclusions found to be" (5 U.S.C. § 706(2)), *inter alia*, "arbitrary, capricious, an

---

[31] Amicus' position only differs from DEF's in relation to DEF's assertion that this Court should defer to California state law to determine what constitutes an association for the purposes of the CEA. While this Court can consider California state law, its primary goal is to adopt a rule that best comports with the CEA's regulatory scheme. *PM Grp. Life Ins. Co. v. W. Growers Assurance Tr.*, 953 F.2d 543, 546 (9th Cir. 1992).

[32] https://www.cftc.gov/PressRoom/SpeechesTestimony/mersingerstatement092222.

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE

abuse of discretion, or otherwise not in accordance with law [or] without observance of procedure required by law[.]" 5 U.S.C. § 706(2)(A), (D). The agency action at issue in this matter is the determination that "Ooki DAO is an unincorporated association comprised of holders of Ooki Tokens (or of BZRX Tokens, when the Ooki DAO was doing business as the bZx DAO) who have voted those tokens to govern (e.g., to modify, operate, market, and take other actions with respect to) the Ooki Protocol (formerly named the Ooki Protocol) during the DAO Relevant Period [after August 23, 2021]." CFTC Complaint, ECF #1, p. 11.

No person will be able to challenge whether the CFTC's actions in expanding the definition of "person" comport with the requirements of the APA if a default judgment is entered in this matter on the CFTC's behalf.  Thus, allowing this to happen will effectively permit the CFTC to create regulations in abrogation of the APA without effectively allowing parties aggrieved by such rules to challenge them. It is a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758, 135 S. Ct. 2699, 2710 (2015). As explained in the DEF brief, the CFTC made no attempt to justify its position that Ooki DAO is a person for the purposes of the CEA and further, that only some of its token holders are liable for the actions of Ooki DAO. While the CFTC explains in great detail its general interest in regulating digital assets as commodities, it does not explain its conclusion that Ooki DAO is a person under the CEA. This renders the decision impermissible under the APA, which presents further grounds for the Court to deny the CFTC's Motion.

Furthermore, the CFTC's proposed course of action here, serving the Complaint in this matter in a fashion designed to obtain a default judgment, precludes review of the CFTC's administrative action under the APA. As explained in 5 USC § 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." If this Court allows the CFTC to serve the complaint at issue here in a manner calculated to obtain a default judgment, the affected OOKI holders will be unable to challenge the rules promulgated by the CFTC regarding personal liability for token holders expressed in that complaint and the preceding administrative

10

1   action. Therefore, this Court should require that the CFTC serve the Complaint on the persons it

2   believes are ultimately liable for the damages it seeks, so that such persons are able to

3   appropriately challenge the agency's actions under the APA.

4        **B.**     **Alternative Service is Inappropriate for Individual  Ooki DAO Token Users.**

5        As explained above, although this case is styled by the CFTC as an action against a

6   "DAO", it is really against individual Ooki Token users. This intent is evident in the CFTC's

7   moving papers, where it alleges among other things:

8   - "at least 38 messages discussing the Commission's complaint against the Ooki DAO in the Ooki DAO's Telegram Channel, including by a participant listed as an Ooki
9     DAO 'Community admin'"[33].

10  - Furthermore, the website through which the CFTC wishes to serve Ooki DAO "links to an Online Forum for Ooki Token holders to discuss and vote on Ooki DAO
11    governance issues".[34]

12  - "this action has been well-publicized and has been extensively discussed on social media, including in over 1,000 tweets on Twitter."[35]

13

14  The CFTC's intention is not to make Ooki DAO, as a purported organization, aware of the action,

15  but to make *individuals* who possibly own and vote Ooki Tokens and also use internet forums,

16  read twitter, and use telegram aware of this action.

17       The CFTC's complaint and motion for alternative service suggest that Ooki DAO is a

18  completely anonymous organization, where ownership and control can't be ascertained. But the

19  administrative record and the CFTC's own actions contradict this narrative.  The CFTC has

20  already instituted and resolved an enforcement action against two alleged owners and operators of

21  the underlying protocol, Tom Bean and Kyle Kistner.  According to the CFTC,[36] (1) Ooki DAO is

22  a successor organization to bZeroX, LLC ("bZeroX"), a traditional limited liability company

---

[33] ECF #11, p. 10.

[34] *Id.* p. 7.

[35] *Id.*, p. 10.

[36] https://www.cftc.gov/PressRoom/PressReleases/8590-22

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

1  whose ultimate beneficial owners are Mr. Bean and Mr. Kistner and (2) Ooki DAO "operated the

2  same software protocol as bZeroX".[37]  In short, far from being anonymous actors, the CFTC

3  identified Bean and Kistner as operators of the protocol at issue in this matter. Indeed, the CFTC

4  reached a settlement agreement for $250,000.00 with Bean and Kistner.[38]

5         The CFTC does not describe what happened at the conclusion of its enforcement action

6  that suddenly caused the protocol at issue in this litigation to cease being beneficially owned and

7  operated by Bean and Kistner and start being owned and operated by others. It appears that the

8  CFTC is somehow trying to get two bites at the same apple – the first time against Bean and

9  Kistner, and the second time at an unknown and potentially international group of people who

10  interacted with a software protocol, the operation of which caused Bean and Kistner to be charged

11  by the CFTC and then settle with that regulator. Rather than name the actual persons whom the

12  CFTC believes are liable for the alleged violations of the CEA, the CFTC has set up Ooki DAO as

13  a straw man to obtain a default against.

14         But the fact that the CFTC does not know, or does not admit to knowing, the identity of

15  these individuals is not material for purposes of service of this complaint, and it cannot use the

16  fiction of a DAO as an organization as an end run around the Constitution.[39] Here, Ooki DAO is a

17

18  [37] The CFTC concludes its press release with the following statement: "[O]n approximately

19  August 23, 2021, bZeroX transferred control of the bZx Protocol to the bZx DAO, which
subsequently renamed itself and is currently doing business as the Ooki DAO. The Ooki DAO

20  operates the Ooki Protocol (formerly the bZx Protocol) in the exact same manner as bZeroX and
thus is continuing to violate the law in the same manner as bZeroX. By transferring control to a

21  DAO, bZeroX's founders touted to bZeroX community members the operations would be
enforcement-proof—allowing the Ooki DAO to violate the CEA and CFTC regulations with

22  impunity, as alleged in the federal court action. The order finds the DAO was an unincorporated
association of which Bean and Kistner were actively participating members and liable for the Ooki

23  DAO's violations of the CEA and CFTC regulations.

24  [38] *See* https://www.cftc.gov/PressRoom/PressReleases/8590-22.

25  [39] *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950),

26  internal citations and quotations omitted; *and see Commodity Futures Trading Comm'n v. Bryant*,
No. CV 21-00386 HG-KJM, 2022 WL 1746760, at *2 (D. Haw. May 31, 2022) ("A federal court

27  is without personal jurisdiction over a Defendant unless the Defendant has been served in
accordance with Federal Rule of Civil Procedure.") (Denying CFTC Motion for entry of Default

28  (footnote continued)

fictitious defendant, more akin to a "Doe" defendant than an unincorporated association.  But if the CFTC alleges that individuals it cannot identify are responsible for CEA violations, the solution is to name them as fictitious defendants until such persons can be identified, served with this lawsuit in a manner consistent with FRCP 4, and given an appropriate opportunity to defend themselves. This is the correct method of filing and serving a complaint against unknown individuals.

> [When the] identity of alleged defendants will not be known prior to the filing of a complaint… [T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

A three factor test applies in determining whether early discovery will be permitted to determine the identity of fictitious defendants:

> District Courts in the Ninth Circuit typically apply a three-factor test when considering motions for early discovery to identify Doe defendants. First, the moving party should be able to identify the missing party with sufficient specificity that the Court can determine that the defendant is a real person or entity who could be sued in federal court. Second, the movant should identify all previous steps taken to locate the elusive defendant to ensure that the movant has made a good faith effort to comply with the requirements of the service of process and specifically identifying defendants. Third, the plaintiff should establish to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss.

*Strike 3 Holdings, LLC v. Doe*, No. 22cv659-LL (MSB), 2022 U.S. Dist. LEXIS 96062, at *3-4 (S.D. Cal. May 27, 2022), internal citations and quotations omitted, cleaned up.

Here the CFTC tries to circumvent this long recognized process for naming defendants who cannot be identified prior to the filing of a complaint. The CFTC does not know whether the actual persons it seeks to hold liable in this proceeding are proper defendants in this Court.

---

where it had "failed to demonstrate that it has undertaken reasonably diligent efforts to locate the Defendant and to comply with Fed. R. Civ. P. 4"); *and see Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799, 103 S. Ct. 2706, 2711, 77 L. Ed. 2d 180 (1983) ("Neither notice by publication and posting, nor mailed notice to the property owner, are means "such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it.") (citing Mullane).

1   Therefore the CFTC has invented a theory that a DAO is a person, and invented a rule that it can

2   be served through a chatbox on a website. Service by publication on a website will not apprise the

3   individuals whom the CFTC alleges have violated the CEA of such allegations. As noted above in

4   the background section of this brief, there is no central website for Ooki DAO, and the CFTC's

5   purported service on a single website provides insufficient notice.  Rather, it is the shortest path

6   for the CFTC to obtain a default judgment against an entity that doesn't actually exist, which it

7   alleges provides no protection from ultimate liability for its purported beneficial owners. See

8   Complaint, ECF #1 p. 11.  In this fashion, the CFTC seeks to establish CEA violations through

9   default, and subsequently hold individuals who never had a chance to defend themselves

10  responsible for that violation. This is inconsistent with due process for the reasons outlined in

11  Amicus's original moving papers and DEF's brief.[40]

12          Importantly, defects in service also deprive this Court of personal jurisdiction.  Any person

13  brought before this court must be either subject to personal jurisdiction of the Court or have

14  waived that jurisdictional requirement. Personal jurisdiction "represents a restriction on judicial

15  power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ir. v.*

16  *Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 702, 102 S. Ct. 2099, 2104 (1982). If a DAO

17  is, by itself and on its own, subject to the personal jurisdiction of this Court, it must be served with

18  the Complaint in this matter in such a manner as to allow it to defend itself. If, on the other hand,

19  the CFTC's ultimate purpose is to hold certain Ooki Token holders liable for the action of the

20  DAO, the CFTC must identify those persons and serve this Complaint in a manner which allows

21  those persons to appear and defend themselves. If this Court renders a default judgment which is

22  ultimately enforceable against individual token holders, this Court will be, in effect, issuing a

23  judgment against persons over whom it may not have jurisdiction.

24          In addition to those general due process concerns, the CFTC is not completely in the dark

25  as to the identities of those they allege are liable for violations of Ooki DAO, as they allege that

26

27

28  [40] See ECF #17 p.8-9 and ECF #22, p. 12.

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

multiple Ooki DAO members have resided in the United States. ECF #1, p. 49. This allegation raises additional concerns to those raised by DEF, namely, it implies that there are Ooki Token holders who the CFTC alleges are liable in this matter who do not reside in the United States. As articulated in FN 3 of the Amicus's moving papers this implication raises issues pertaining to the United States' obligations under Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention") as incorporated into FRCP 4(f)(1).

This Court should, at a minimum, require the CFTC to articulate why it believes that some Ooki Token holders reside in the United States and state whether it believes that Ooki Token holders reside outside of the United States, and where those token holders do reside. As the Ninth Circuit has explained "[t]he citizenship of each member of an unincorporated association must be alleged, even though the entity might be recognized at state law as having the ability to sue and the liability to be sued." *Fifty Assocs. v. Prudential Ins. Co.*, 446 F.2d 1187, 1190 (9th Cir. 1970). Alternative service with respect to those token holders should comport with the Hague Convention and international treaty obligations. The failure to do so makes any judgment potentially unenforceable internationally.[41]

## II.   TREATING OOKI DAO AS A "PERSON" FOR PURPOSES OF SERVICE OF PROCESS EXCEEDS THE CFTC'S AUTHORITY UNDER THE CEA

The APA exists to ensure the agency actions by executive agencies are not arbitrary and capricious and that agencies do not exceed their statutory authority.  *See* 5 USC § 706.[42]  Neither

---

[41] An order allowing alternative service could well be unenforceable and contrary to international treaties on service. *See Cox v. Coinmarket OPCO*, LLC 2021 WL 5908206 (Slip. Op., 2021) (Refusing to allow service via social media because "[w]ithout further proof of the country of residency for the individual Defendants… [t]he Court can only speculate as to whether service by Twitter is prohibited by international agreement as the country of residency cannot be identified."); See, also, Fed. R. Civ. P. 4(f)(1); and see *Williams v. Doe*, No. 6:21-03074-CV-RK, 2021 WL 4975742, at *3 (W.D. Mo. Oct. 26, 2021) (refusing to allow service via WhatsApp or email on resident of London, England where there was insufficient evident that this method was adequate to provide notice to defendant, even though Plaintiff had communicated with the defendant using those methods).

[42] The existence of a final rule for purposes of APA review is a functional test, and the APA (footnote continued)

1   the APA nor the CEA contemplate *ad hoc* agency enforcement actions – rulemaking by

2   enforcement – as a substitute for APA governed rulemaking.  But that is precisely what the CFTC

3   seeks to do here, by bringing a lawsuit against an entity that is not within the scope of the CEA's

4   definition of "person" and for which no formal rulemaking process has ever been undertaken.

5        If this suit named the persons the CFTC intends to hold liable for alleged CEA violations,

6   and was served in a manner which advised such persons of the pendency of this action, such

7   persons would be permitted to ask this Court to review the propriety of the CFTC's rulemaking

8   with respect to DAOs under the CEA.  Conversely, if the CFTC is permitted to obtain a default

9   judgment against the DAO defendant through a questionable method service, the CFTC will

10  obtain a judgment that extends the meaning of "person" under the CEA without the persons

11  aggrieved ever having been given the opportunity to challenge such agency actions under the

12  APA.

13       A.      **The CFTC's Rules with Respect to DAO Personhood, Token Holder Liability**

14               **and DAO Membership are Arbitrary and Capricious.**

15       Judicial review under the "'arbitrary and capricious' standard… is narrow: [courts]

16  determine only whether the [Agency] examined the relevant data and articulated a satisfactory

17  explanation for his decision, including a rational connection between the facts found and the

18  choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (cleaned up). "Under

19  what [the Supreme Court has] called this 'narrow' standard of review, we insist that an agency

20  'examine the relevant data and articulate a satisfactory explanation for its action.'" *F.C.C. v. Fox*

21  *Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Assn. of United*

22  *States, Inc. v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43 (1983)). Ultimately, to uphold

23  an agency action, a court must find that, based on the record, the action falls "within the bounds of

24  reasoned decision-making[.]" *Dep't of Com.,* 139 S. Ct.  at 2569 (cleaned up).

25

26  contains "generous [judicial] review provisions [that] must be given a hospitable interpretation."
    *Abbott Labs. v. Gardner*, 387 U.S. 136, 141, 87 S. Ct. 1507, 1511 (1967), internal quotations and

27  citations omitted.  The APA permits judicial review of agency actions "for which there is no other
    adequate remedy in a court". 5 U.S.C. § 704.

28

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001

The Supreme Court has explained that, when undertaking this judicial review, "[w]e start with settled propositions." *Id.* at 2573. This consists of a four-part analysis. First, the agency must disclose the basis of its analysis. Second, the court must evaluate this explanation in light of the administrative record. Third, the court should only consider the stated reasons of the agency, and not potential ulterior motives. Finally, the court should consider only the relevant administrative record except in extreme circumstances. *Id.*

The Supreme Court further explained the underlying rationale:

> The reasoned explanation requirement of administrative law, after all, is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public. Accepting contrived reasons would defeat the purpose of the enterprise. If judicial review is to be more than an empty ritual, it must demand something better than the explanation offered for the action taken in this case.

*Id.* at 2575–76.

At a minimum, "agencies must pursue their goals reasonably. Reasoned decision-making under the Administrative Procedure Act calls for an explanation for agency action." *Id.* at 2576. Here the CFTC has advanced a novel theory of liability for DAO token holders. The CFTC has divided the world of Ooki DAO Token holders into two camps. First, is the camp of token holders who "voted those tokens to govern" the Ooki Protocol and second is the camp of token holders who did not so vote those tokens. Complaint, ECF #1, paragraph 11. This distinction is arbitrary and capricious. The CFTC does not explain how it determined which Ooki Token holders voted their tokens, which DAO votes constituted governance votes, or the extent to which a voting token holder who subsequently disposed of his or her tokens may be found liable. This constitutes an arbitrary and capricious agency action by the CFTC.

The actual persons harmed by this agency action are the individual token holders whom the CFTC seeks to assert as liable for the purported violations of the CEA. This Court should require that such persons are afforded their rights to challenge the agency action underpinning this alleged liability by requiring that the CFTC serve the Complaint herein in a manner that advises such persons that the CFTC is attempting to hold them liable under the CEA.

/ / /

17

B.     **Any Determination that DAOs are Futures Commodities Merchants or Otherwise have Liability for DeFi Systems is a Legislative Rule Required to go through an APA Required Notice and Comment period Before it can Bind Anyone.**

Under the APA, substantive (a/k/a/ legislative) rules are subject to the rule making requirements, which require proposed agency actions to go through notice and comment *before they can bind third parties. See Kisor v. Wilkie*, 139 S. Ct. 2400, 2420 (2019) (discussing "legislative rule[s], which (to be valid) must go through notice and comment."); *see also Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015) (quoting *Chrysler Corp. v. Brown,* 441 U.S. 281, 302–303 (1979) ("Rules issued through the notice-and-comment process are often referred to as 'legislative rules' because they have the 'force and effect of law.'")).

> The APA establishes the procedures federal administrative agencies use for "rule making," defined as the process of "formulating, amending, or repealing a rule." § 551(5). "Rule," in turn, is defined broadly to include "statement [s] of general or particular applicability and future effect" that are designed to "implement, interpret, or prescribe law or policy." § 551(4).

*Id*.

Under the APA, "[g]eneral notice of proposed rule making shall be published in the Federal Register[.]" 5 U.S.C. § 553(b).

> After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

5 U.S.C. § 553(c).

This mandate applies to all agency rules except in the case of the following:

> [I]nterpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

///

///

18

5 U.S.C. § 553(b)(A) and (B). As opposed to legislative rules, these "interpretive" or "'[p]rocedural rules,' the general label for rules falling under this exemption, are primarily directed toward improving the efficient and effective operations of an agency, not toward a determination of the rights or interests of affected parties." *Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014) (cleaned up).

Indeed, "[t]he absence of a notice-and-comment obligation makes the process of issuing interpretive rules comparatively easier for agencies than issuing legislative rules. But that convenience comes at a price: Interpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Perez*, 575 U.S. at 97.  Accordingly, without going through notice and comment

> [a]n agency may use interpretive rules to *advise* the public by explaining its interpretation of the law. But an agency may not use interpretive rules to *bind* the public by making law, because it remains the responsibility of the court to decide whether the law means what the agency says it means.

*Id.* at 109 (Scalia, *J.*, concurring) (emphasis in original).

The CFTC's conclusions that (1) a DAO is a person under the CEA, (2) that only voting token holders are members of a DAO and (3) that voting token holders of a DAO are liable for DAO actions which violate the CEA are legislative rules under the APA. These are statements by the CFTC designed to implement law and policy. They were not published in the federal register. There was no notice and comment period for these proposed rules. And, finally, by no stretch can these rules be classified as interpretative rules.

The CFTC has adopted new rules regarding the classification of DAOs as persons under the CEA and proposed rules for who is liable for the actions of such DAOs without notice or comment. And, now, the CFTC seeks to have this Court fashion new rules regarding the service of process of a complaint under these new rules on a DAO. This Court should decline to do so, and instead require that the CFTC serve this Complaint in a fashion that allows the individuals whom it seeks to hold liable to challenge these agency actions under the APA.

///

///

19

**CONCLUSION**

For the reasons set forth herein, Amicus believes that the Court should vacate its prior

Order granting the CFTC's Motion for Alternative Service and for such other relief that is just and

proper under the circumstances.

DATED: October 17, 2022        Respectfully submitted,

BROWN RUDNICK LLP

ALEX GOLUBITSKY, PLLC

By:   *Stephen D. Palley*

STEPHEN D. PALLEY (*pro hac vice*)
spalley@brownrudnick.com
601 Thirteenth Street NW Suite 600
Washington, D.C. 20005
Telephone: (202) 536-1766
Facsimile: (617) 289-0466

SAMUEL A. MONIZ (State Bar No. 313274)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: smoniz@brownrudnick.com

ALEX GOLUBITSKY (State Bar No. 289236)
3013 Libby Ter
Richmond, Virginia 23223
Telephone: (206) 271-7417
Facsimile: (866) 301-2038
Email: ag@agolubitsky.com

*Attorneys for Amicus Curiae, LeXpunK*

AMICUS CURIAE BRIEF OF LEXPUNK RE PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE
64864917 v1-WorkSiteUS-038978/0001