1   Douglas K. Yatter (Bar No. 236089)
       *douglas.yatter@lw.com*
2   Benjamin Naftalis (*pro hac vice to be filed*)
       *benjamin.naftalis@lw.com*
3   Samir Deger-Sen (*pro hac vice to be filed*)
       *samir.deger-sen@lw.com*
4   LATHAM & WATKINS LLP
    1271 Avenue of the Americas
5   New York, NY 10020
    +1.212.906.1200
6
    Matthew Rawlinson (Bar No. 231890)
7      *matt.rawlinson@lw.com*
    LATHAM & WATKINS LLP
8   140 Scott Drive
    Menlo Park, CA 94025
9   +1.650.463.3076

10  *Counsel for* Amicus Curiae
    *Andreessen Horowitz*

11

12                **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                  **SAN FRANCISCO DIVISION**

15  | Commodity Futures Trading Commission, | Case No. 3:22-cv-5416-WHO |

16  | *Plaintiff,* | ***AMICUS CURIAE* BRIEF OF ANDREESSEN HOROWITZ REGARDING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE** |

17  | v. | |

18  | OOKI DAO (formerly d/b/a bZx DAO), an unincorporated association, | Hearing Date:    November 30, 2022 |

19  | *Defendant.* | Hearing Time:    2:00 PM |
    | | Courtroom:    2 |
    | | Judge:    Hon. William H. Orrick |

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

**Page**

INTEREST OF *AMICUS CURIAE* ...................................................................................................1

INTRODUCTION .............................................................................................................................2

ARGUMENT .....................................................................................................................................3

I.    PLAINTIFF CFTC HAS NOT SATISFIED REQUIREMENTS FOR SERVICE OF PROCESS ON THE OOKI DAO PURSUANT TO CALIFORNIA LAW .........................................................................................................3

    A.    Service of Process In This Case Must Satisfy California Law ..............................3

    B.    California Law Allows Service on an Unincorporated Association When the Plaintiff Identifies a Common Lawful Purpose of the Association and Identifies Members To Be Served ...............................4

    C.    The CFTC Has Not Met These Requirements for Serving Its Complaint on the Ooki DAO ........................................................................8

    D.    Alternative Service Should Not Be Used To Circumvent the Service Requirements for an Unincorporated Association ...............................9

II.    THE CFTC'S PROPOSED SERVICE SHORTCUT HIGHLIGHTS OTHER POTENTIAL PROBLEMS IN THE COMPLAINT AND THE RELIEF IT SEEKS ...........................................................................................................11

    A.    The Complaint Does Not Identify Responsible Parties and Establish Their Liability ..................................................................................12

    B.    The Complaint Improperly Seeks *Ex Parte* Relief ...........................................13

    C.    The Complaint Seeks an Unenforceable Injunction ...........................................14

CONCLUSION................................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Berry v. Evans*,
No. 06-cv-3795, 2007 WL 1342544 (N.D. Cal. May 8, 2007)..................................4

*Black v. Dublin EMS, LLC*,
No. 16-cv-1340, 2017 WL 1150661 (M.D. Pa. Mar. 28, 2017) ...............................4

*Cal. Serv. Emps. Health & Welfare Tr. Fund v. GreenBox Servs. LLC*,
No. 21-cv-2237, 2021 WL 1966597 (N.D. Cal. May 17, 2021).............................10

*CFTC v. Doe 1, et al.*,
No. 18-cv-807 (N.D. Tex. Sept. 28, 2018) ...........................................................11

*CFTC v. Lake Shore Asset Mgmt. Ltd.*,
496 F.3d 769 (7th Cir. 2007) ...............................................................................14

*De Fontbrune v. Wofsy*,
39 F.4th 1214 (9th Cir. 2022) ................................................................................6

*DPR Constr., Inc. v. ANKA (Cortez Hill) LLC*,
No. 06-cv-25, 2007 WL 1975166 (S.D. Cal. June 11, 2007) ..................................4

*Entrepreneur Media, Inc. v. Doe*,
No. 19-cv-1706, 2019 WL 8638802 (C.D. Cal. Dec. 5, 2019)................................9

*Fed. Ins. Co. v. Caldera Med., Inc.*,
No. 2:15-cv-393, 2015 WL 12655601 (C.D. Cal. Apr. 8, 2015)............................10

*Flint v. Krause*,
No. 11-cv-480, 2011 WL 4626149 (S.D. Cal. Oct. 5, 2011)...................................4

*Fortyune v. Am. Multicinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004) .............................................................................15

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944)............................................................................................15

*Liu v. Sec. & Exch. Comm'n*,
140 S. Ct. 1936 (2020)........................................................................................15

*Oh My Green, Inc. v. Cuffe*,
No. 2:20-cv-2509, 2020 WL 3213715 (C.D. Cal. Mar. 20, 2020) .........................10

*Optima Direct, LLC v. Yageo Am. Corp.*,
No. 21-cv-02823, 2021 WL 6051738 (N.D. Cal. Dec. 21, 2021)...........................11

*Penn Cent. Co. v. Buckley & Co.*,
   293 F. Supp. 653 (D.N.J. 1968), *aff'd*, 415 F.2d 762 (3d Cir. 1969) ....................................15

*People ex rel Reisig v. Acuna*,
   9 Cal. App. 5th 1 (Cal. Ct. App. 2017) ....................................................................................6

*People ex rel. Reisig v. Broderick Boys*,
   149 Cal. App. 4th 1506 (Cal. Ct. App. 2007) ........................................................................6, 9

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ...........................................................................................10, 11

*Searles v. Archangel*,
   60 Cal. App. 5th 43 (Cal. Ct. App. 2021) ..............................................................................10

*People ex rel. Spitzer v. Fullerton Tokers Town*,
   No. G058720, 2021 WL 1851483 (Cal. Ct. App. May 10, 2021) .........................................6, 7

*People ex rel. Spitzer v. Townsend Street Gang*,
   No. G060293, 2022 WL 2747293 (Cal. Ct. App. July 14, 2022) ...............................................6

*People ex rel. Totten v. Colonia Chiques*,
   156 Cal. App. 4th 31 (Cal. Ct. App. 2007) ..............................................................................6

*Virginian Ry. Co. v. Sys. Fed'n No. 40*,
   300 U.S. 515 (1937) ...............................................................................................................15

*Vosburg v. County of Fresno*,
   54 Cal. App. 5th 439 (Cal. Ct. App. 2020) ..............................................................................5

**STATUTES**

7 U.S.C.
   § 2(a)(1)(B) ............................................................................................................................12
   § 2(c)(2)(D) ............................................................................................................................13
   § 13a-1 ...................................................................................................................................12
   § 13a-1(a) ...............................................................................................................................14
   § 13a-1(e) .................................................................................................................................3
   § 13c(a) ..................................................................................................................................12
   § 13c(b) ..................................................................................................................................12

Cal. Civ. Proc. Code
   § 369.5 .....................................................................................................................................7
   § 369.5(a) .................................................................................................................................4
   § 413.30 ...............................................................................................................................9, 10
   § 415.10 ....................................................................................................................................5
   § 415.20(a) ...............................................................................................................................5
   § 415.30 ....................................................................................................................................5
   § 416.40 ....................................................................................................................................4

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

Cal. Corp. Code
§ 18035(a) ............................................................................................2, 3, 5, 6
§ 18220 ..............................................................................................4, 5, 8, 9

**RULES**

Fed. R. Civ. P.
4 ...........................................................................................................................3
4(d)(1) ................................................................................................................5
4(e) .....................................................................................................................5
4(e)(1) ........................................................................................................3, 4, 8
4(f) ......................................................................................................................5
4(f)(3) ................................................................................................................10
4(h) ..................................................................................................................3, 5
4(h)(1) .................................................................................................................3
4(h)(1)(A) .......................................................................................................3, 8
4(h)(2) .................................................................................................................3
17(b)(3) ...............................................................................................................4
17(b)(3)(A) ..........................................................................................................4
65(d)(1) ..............................................................................................................15
65(d)(2) ..............................................................................................................14

**TREATISES**

7 Cal. Jur. 3d *Associations and Clubs* § 7 (2003) ...........................................6

7 Cal. Jur. 3d *Associations and Clubs* § 6 (Aug. 2022 update) ......................6

50A Cal. Jur. 3d *Process, Notices, & Subpoenas* § 48 (Aug. 2022 update) .......7

4B *Federal Practice and Procedure Civil* § 1115 (4th ed., Apr. 2022 update) ...........................4

**OTHER AUTHORITIES**

Aaron Wright, *The Rise of Decentralized Autonomous Organizations: Opportunities and Challenges*, 4 Stan. J. of Blockchain L. & Pol'y 152, 155 (2021), https://stanford-jblp.pubpub.org/pub/rise-of-daos/release/1 ....................................................12

*Dissenting Statement of CFTC Commissioner Summer K. Mersinger Regarding Enforcement Actions Against 1) bZeroX, LLC, Tom Bean, and Kyle Kistner; and 2) Ooki DAO* (Sept. 22, 2022), https://tinyurl.com/56zpa9z8 ....................................................................14

*In re bZeroX, LLC, Tom Bean, and Kyle Kistner*, CFTC No. 22-31, 2022 WL 4597664 (Sept. 22, 2022) ...................................4, 9, 13

M. Jennings & D. Kerr, *A Legal Framework for Decentralized Autonomous Organizations* (Oct. 26, 2021), at 13-14 & n.27, https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-1.pdf .........................................................................................................13

1

2

*Suit by or Against an Unincorporated Association*, 8 Cal. L. Revision Comm'n Reports 901, 907
(1966), http://www.clrc.ca.gov/pub/Printed-Reports/Pub074.pdf...........................................7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTEREST OF *AMICUS CURIAE*

Founded in Silicon Valley in 2009, *amicus curiae* Andreessen Horowitz (known as "a16z") is a venture capital firm that invests in seed to venture to late-stage technology companies across a range of sectors, with dedicated funds that have raised more than $7.6 billion to invest in crypto and web3 startups. The a16z team includes founders of successful technology ventures, engineers, finance professionals, lawyers, and former regulators from U.S. government agencies. The firm supports its portfolio and the growth of web3 through its research organization, engineering and security teams, legal and regulatory teams, go-to-market expertise, recruiting services, and educational content.

The first era of the modern internet (roughly 1990-2005) was about open protocols that were decentralized and community-governed. Most of the value accrued to the edges of the network: users and builders. The second era of the internet (roughly 2005-2020) favored siloed, centralized services. Most of the value accrued to a handful of large tech companies. a16z's investments focus on the third era of the internet – what many call web3 – which combines the decentralized, community-governed ethos of the first era with the advanced, modern functionality of the second era. This will unlock a new wave of creativity and entrepreneurship that has the potential to transform online commerce and technological engagement.

Emerging models of decentralized community interaction and governance are central to web3. The case before the Court, which involves a novel and untested application of legal principles to a decentralized autonomous organization ("DAO"), may impact the future of this emerging technology far beyond the matter at issue. a16z shares the Commodity Futures Trading Commission's ("CFTC") view that regulation of activity in this new arena is important and that wrongdoers should be held accountable. But enforcement need not and should not come at the expense of important legal principles or undermine a significant area of technological innovation.

As the Court entertains a motion for reconsideration on alternative service, Dkt. 27, a16z respectfully submits this brief to bring to the Court's attention important aspects of California law that bear on that decision and have not been addressed by plaintiff or other *amici*.

## INTRODUCTION

The Complaint filed in this case by the CFTC is based on the premise that a DAO can be treated as an "unincorporated association" for purposes of the agency's enforcement power under the Commodity Exchange Act ("CEA").  But pursuing that novel theory of liability comes with consequences at the service stage.  Specifically, the CFTC must comply with applicable state law requirements for service on an unincorporated association.

California law imposes a threshold requirement that a plaintiff may only serve an unincorporated association if it has established that the alleged association has a "common *lawful* purpose." Cal. Corp. Code § 18035(a) (emphasis added).  This requirement ensures that a plaintiff cannot avoid the ordinary rules governing service on individuals by relying on nebulous allegations that those individuals conspired or combined to engage in unlawful conduct.  Instead, to avail itself of service on an association, a plaintiff must establish that an entity truly is an "unincorporated association" within the meaning of California law, and then identify one or more persons for the Court through whom the association can be served.  The CFTC has not done so.  Instead, it seeks to do what California law does not allow – serve a diffuse and unidentified group of individuals alleged to be engaged in unlawful conduct.

Allowing the CFTC to serve process on and proceed against Defendant Ooki DAO under this theory could imperil an entire industry by chilling participation in decentralized governance or community activity.  In alleging that the DAO is an association comprising all token holders who have voted those tokens – on any subject at any time – the CFTC makes no distinction between lawful and unlawful aspects of DAO activity and instead threatens to impose financial penalties and other punitive measures on individuals based solely on their alleged association with a software protocol, rather than on any acts of wrongdoing or intent to participate in unlawful activity.  Requiring the CFTC to plead a common *lawful* purpose of the DAO and take further steps to identify members through whom the alleged association can be served – as California law dictates – is essential to ensuring that correct defendants are properly served and that there is an opportunity for adversarial testing of the CFTC's allegations and the relief it seeks.

**ARGUMENT**

## I.   PLAINTIFF CFTC HAS NOT SATISFIED REQUIREMENTS FOR SERVICE OF PROCESS ON THE OOKI DAO PURSUANT TO CALIFORNIA LAW

The CFTC's assertion that the Ooki DAO qualifies as an unincorporated association is central to its enforcement action, as the Ooki DAO is the only named defendant and the CFTC bases its theory of liability under the CEA on the DAO's status as an unincorporated association. Compl. ¶¶ 11, 39, 47, 56, 64, 70.  The CFTC's Motion for Alternative Service likewise labels the Ooki DAO an unincorporated association for purposes of service of process.  Mot. for Alternative Service, Dkt. 11 at 3-5, 7-8.  That designation has important consequences for the CFTC's effort to serve the Ooki DAO in accordance with Federal Rule of Civil Procedure 4 and California law. Because the CFTC fails to allege that the Ooki DAO has a "common lawful purpose" or identify any members – requirements for serving an unincorporated association in California – the CFTC cannot serve the DAO as an unincorporated association.  Cal. Corp. Code § 18035(a).

### A.   Service of Process In This Case Must Satisfy California Law

The CFTC invokes the provision in Federal Rule of Civil Procedure 4(h)(1)(A) that permits service on a "domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name . . . in the manner prescribed by Rule 4(e)(1) for serving an individual."  Fed. R. Civ. P. 4(h)(1)(A); Dkt. 11 at 7.  Rule 4(e)(1), in turn, allows service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).[1]  By attempting to proceed against the Ooki DAO as an unincorporated association, the CFTC disclaims any need to serve individuals or attempt to do so, instead citing California provisions for service on unincorporated associations before requesting alternative service under California law.  Dkt. 11 at 7-8.

---

[1]     The CEA's service provision does not address how service should be accomplished, stating only that process "may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found."  7 U.S.C. § 13a-1(e).  And although beyond the scope of this brief, it is also worth noting that the CFTC's motion ignores Rule 4(h)'s distinction between serving an unincorporated association "in a judicial district of the United States," Fed. R. Civ. P. 4(h)(1), and "at a place not within any judicial district of the United States," Fed. R. Civ. P. 4(h)(2).  Even though it has not identified where any members of the alleged association reside, the CFTC does not address requirements for service abroad.

1    Thus, as the CFTC recognizes, *see id.*, the adequacy of its effort to serve the Ooki DAO

2    must be evaluated under California law.  "Service under Rule 4(e)(1) that fails to accord with the

3    state's requirements, not surprisingly, will be found improper."  4B *Federal Practice and*

4    *Procedure Civil* § 1115 (4th ed., Apr. 2022 update); *see also, e.g.*, *Flint v. Krause*, No. 11-cv-480,

5    2011 WL 4626149, at *3 (S.D. Cal. Oct. 5, 2011) (dismissing complaint that "fail[ed] to meet"

6    California service of process requirements); *Berry v. Evans*, No. 06-cv-3795, 2007 WL 1342544,

7    at *1-2 (N.D. Cal. May 8, 2007) (denying motion for default judgment based on inadequate service

8    of process under California law).  In other words, the inquiry looks to the "applicable state service

9    procedures," and "a party cannot pick and [choose] individual provisions from the '[F]ederal and

10   [State R]ules to manufacture proper service.'"  *Black v. Dublin EMS, LLC*, No. 16-cv-1340, 2017

11   WL 1150661, at *4 (M.D. Pa. Mar. 28, 2017) (citation omitted).[2]

12       **B.    California Law Allows Service on an Unincorporated Association When the**
         **Plaintiff Identifies a Common Lawful Purpose of the Association and**
13       **Identifies Members To Be Served**

14       As the CFTC recognizes, Dkt. 11 at 7, California statutes prescribe rules for service of

15   process on unincorporated associations.  Two provisions provide avenues for serving an

16   unincorporated association:  California Civil Procedure Code § 416.40[3] and California

17

---

18   [2]    Similar to Rule 4(e)(1), Federal Rule of Civil Procedure 17(b)(3) looks to "the law of the state
         where the court is located" to determine an unincorporated association's "[c]apacity to sue or be sued."
19       Fed. R. Civ. P. 17(b)(3).  In its related settlement order with other respondents, the CFTC reached for a
         "federal definition" of an unincorporated association, *see In re bZeroX, LLC, Tom Bean, and Kyle Kistner*,
20       CFTC No. 22-31, 2022 WL 4597664, at *8 (Sept. 22, 2022), but Rule 17(b)(3) looks to federal law only
         when an unincorporated association has "no such capacity" to sue or be sued under the forum state's law,
21       Fed. R. Civ. P. 17(b)(3)(A).  Here, California law provides a mechanism for unincorporated associations to
         be sued.  Cal. Civ. Pro. Code § 369.5(a) ("A partnership or other unincorporated association, whether
22       organized for profit or not, may sue and be sued in the name it has assumed or by which it is known.");
         *DPR Constr., Inc. v. ANKA (Cortez Hill) LLC*, No. 06-cv-25, 2007 WL 1975166, at *3 (S.D. Cal. June 11,
23       2007) (unincorporated association possessed capacity to be sued under California law).  But to use that
         mechanism, the plaintiff must satisfy California law requirements for serving an unincorporated
24       association.

25   [3]    Section 416.40 provides:

26            A summons may be served on an unincorporated association (including a
              partnership) by delivering a copy of the summons and of the complaint:

27            (a) If the association is a general or limited partnership, to the person
              designated as agent for service of process in a statement filed with the
28            Secretary of State or to a general partner or the general manager of the

Corporations Code § 18220.[4]  Both of California's methods for service on an unincorporated association ensure that responsible parties receive actual notice of an action brought against the association.[5]

For a defendant to meet California's "unincorporated association" definition, it must be "an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not."  Cal. Corp. Code § 18035(a); *Vosburg v. County of Fresno*, 54 Cal. App. 5th 439, 452 (Cal. Ct. App. 2020).  A plaintiff cannot commence an action against a group of individuals as an unincorporated association simply by alleging that the group engaged in wrongdoing.  As California state courts have recognized, a plaintiff's failure to allege

---

partnership;

(b) If the association is not a general or limited partnership, to the person designated as agent for service of process in a statement filed with the Secretary of State or to the president or other head of the association, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the association to receive service of process;

(c) When authorized by Section 18220 of the Corporations Code, as provided by that section.

[4]   Section 18220 provides:

If designation of an agent for the purpose of service of process has not been made as provided in Section 18200, or if the agent designated cannot with reasonable diligence be found at the address specified in the index referred to in Section 18205 for delivery by hand of the process, and it is shown by affidavit to the satisfaction of a court or judge that process against an unincorporated association cannot be served with reasonable diligence upon the designated agent by hand or the unincorporated association in the manner provided for in Section 415.10 or 415.30 of the Code of Civil Procedure or subdivision (a) of Section 415.20 of the Code of Civil Procedure, the court or judge may make an order that service be made upon the unincorporated association by delivery of a copy of the process to one or more of the association's members designated in the order and by mailing a copy of the process to the association at its last known address. Service in this manner constitutes personal service upon the unincorporated association.

[5]   In this way, California's service provisions align with the admonitions of the advisory committee on the Federal Rules of Civil Procedure regarding service of process via a "notice and request" procedure that applies to "[a]n individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h)." Fed. R. Civ. P. 4(d)(1).  The committee explained that "[c]are must be taken . . . to address the document to an individual officer or authorized agent of the corporation." Fed. R. Civ. P. 4(h) advisory committee's note on 1993 amendment.  Simply sending mail "undirected to the mail room of the organization" does not constitute "effective use of the Notice and Request procedure." *Id.*

that an unincorporated association possesses a "common *lawful* purpose" precludes effective service of process. *See People ex rel. Reisig v. Broderick Boys*, 149 Cal. App. 4th 1506, 1520-22 (Cal. Ct. App. 2007) (emphasis added). In *Broderick Boys*, a district attorney sought a permanent injunction against a street gang and attempted to effect service of process on the gang as an unincorporated association by serving a single gang member of unknown rank. *Id.* at 1513-15. The Third District Court of Appeal held that the gang did not qualify as an unincorporated association under California law because the district attorney failed to establish that the gang "was formed, at least in part, for a common lawful purpose." *Id.* at 1521. To the contrary, the district attorney had alleged that the gang produced "no social benefits." *Id.* Thus, under the plain text of the statute, the district attorney's allegations failed to establish that the gang constituted an "unincorporated association." *See id.* (citing Cal. Corp. Code § 18035(a)). It noted that the 2005 addition of the lawful purpose requirement to the statutory text "codified the existing common law rule that an unincorporated association must be formed for a lawful purpose." *Id.* (citing 7 Cal. Jur. 3d *Associations and Clubs* § 7 (2003)); *see also* 7 Cal. Jur. 3d *Associations and Clubs* § 6 (Aug. 2022 update) (unincorporated association's purpose "may be anything not contrary to law").[6]

Indeed, as courts and state prosecutors have recognized, alleging lawful purpose remains an important step for service of process on an unincorporated association in California. Just this year, in *People ex rel. Spitzer v. Townsend Street Gang*, the Fourth District Court of Appeal upheld an injunction against a street gang, but only after acknowledging that *Broderick Boys* governed service of process and noting that the complaint at issue alleged lawful purposes. No. G060293, 2022 WL 2747293, at *3, 5 (Cal. Ct. App. July 14, 2022). Similarly, in *People ex rel. Spitzer v. Fullerton Tokers Town*, a trial court rejected a motion to dissolve an injunction against a street

---

[6]     Though other California courts have questioned the scope of *Broderick Boys*, *see People ex rel. Totten v. Colonia Chiques*, 156 Cal. App. 4th 31, 39-41 & n.7 (Cal. Ct. App. 2007), or limited the "lawful purpose" requirement to the service of process context, *People ex rel Reisig v. Acuna*, 9 Cal. App. 5th 1, 39-40 (Cal. Ct. App. 2017), no higher California court has dispensed with the "lawful purpose" requirement for service of process on an unincorporated association, *see De Fontbrune v. Wofsy*, 39 F.4th 1214, 1230 (9th Cir. 2022) (the Ninth Circuit "will ordinarily accept the decision of an intermediate appellate court as the controlling interpretation of state law, unless [it] find[s] convincing evidence that the state's supreme court likely would not follow it").

gang because, contrary to the gang members' arguments, the district attorney had identified "many gang activities, like socializing," that "are lawful." No. G058720, 2021 WL 1851483, at *2-3 (Cal. Ct. App. May 10, 2021) (holding that defendant forfeited lawful purpose argument by not appealing trial court's denial of motion to dissolve injunction).

Accordingly, California law does not permit service upon an entity as an unincorporated association where its only common purpose is the unlawful conduct that is the subject of the suit. 50A Cal. Jur. 3d *Process, Notices, & Subpoenas* § 48 (Aug. 2022 update) (citing *Broderick Boys* and explaining that statutes providing for service on unincorporated associations cannot be used to serve a group "not formed for a lawful purpose as required by the statute"). That principle makes good sense. The California legislature recognized unincorporated associations' capacity to sue and be sued as distinct juridical entities to facilitate litigation related to *lawful* conduct that members come together to perform. *See* Cal. Civ. Pro. Code § 369.5. As California's Law Revision Commission explained, unincorporated associations were given capacity to sue and be sued to aid "expeditious administration of litigation arising out of . . . activities" that included "virtually every kind of commercial, charitable, and social" end pursued by "partnerships, churches, lodges, clubs, labor unions, and business and professional societies." *Suit by or Against an Unincorporated Association*, 8 Cal. L. Revision Comm'n Reports 901, 907 (1966), http://www.clrc.ca.gov/pub/Printed-Reports/Pub074.pdf.

Draining the "lawful purpose" requirement of meaning would turn "unincorporated association" status – something meant to promote lawful conduct – into a tool for imposing expansive liability that chills participation in new ventures. Permitting a group of defendants to be sued as an unincorporated association without requiring the plaintiff to distinguish between lawful and unlawful purposes threatens individuals who played no role in the alleged unlawful conduct with potential liability based on their proximity to alleged wrongdoing. If plaintiffs may define unincorporated associations solely with reference to unlawful conduct, that would allow plaintiffs to sidestep the rigors of proving that a group of individuals engaged in unlawful conduct. Accordingly, to effect service of process on the Ooki DAO as an unincorporated association

1    pursuant to Rules 4(h)(1)(A) and 4(e)(1), California law requires the CFTC to allege that the DAO

2    has a lawful purpose distinct from its alleged unlawful purpose.

3       Moreover, under the service provisions for unincorporated associations, a plaintiff who

4    cannot achieve service on an association by other means may, as a last resort, do so "by delivery

5    of a copy of the process to one or more of the association's members designated in the order and

6    by mailing a copy of the process to the association at its last known address."  Cal. Corp. Code

7    § 18220.  In other words, the plaintiff must identify one or more members of the alleged association

8    who can be served in this manner and identify such persons to the Court for inclusion in an order

9    allowing such service.

10    **C.**      **The CFTC Has Not Met These Requirements for Serving Its Complaint on the**

11         **Ooki DAO**

12       The CFTC's Complaint does not articulate a common lawful purpose of the Ooki DAO.

13    To the extent the Complaint sets forth a common purpose at all, its allegations focus on unlawful

14    transactions allegedly offered by the Ooki Protocol.  According to the CFTC, "[a] key bZeroX

15    objective in transferring control of the bZx Protocol (now the Ooki Protocol) to the bZx DAO

16    (now the Ooki DAO) was to attempt to render the bZx DAO, by its decentralized nature,

17    enforcement-proof."  Compl. ¶ 3; *see also id.* ¶ 35 (alleging that the DAO "explicitly advertised

18    the lack of KYC or AML compliance as a positive feature of the bZx Protocol").  The Complaint's

19    other allegations are also intertwined with the CFTC's allegations of illegal conduct.  The CFTC

20    alleges that "[t]he Ooki DAO exists for the exact same purpose as bZeroX before it – to run a

21    business, and specifically, to operate and monetize the Ooki Protocol."  *Id.* ¶ 4.  The Complaint

22    equates operating and monetizing the Protocol with offering unlawful retail leveraged commodity

23    transactions: "Just like the bZx Protocol during the bZx Relevant Period, the Ooki Protocol during

24    the DAO Relevant Period has permitted, and continues to permit, users to contribute margin

25    (collateral) to open leveraged positions whose value is determined by the price difference between

26    two virtual currencies from the time the position is established to the time it is closed."  *Id.*; *see*

27    *also id.* ¶ 41 (describing the manner in which the DAO allegedly "controlled and operated" the

28    Protocol in violation of the CEA).  The CFTC does not meet the requirements for serving the DAO

as an unincorporated association because it has not alleged that the DAO has a common lawful purpose as required under California law.

Further, the CFTC's motion for alternative service does not identify any members of the DAO who can be designated in an order to receive delivery of process on behalf of the alleged association. Cal. Corp. Code § 18220. Other *amici* have explained why the CFTC's efforts to identify individual members of the alleged association thus far have been insufficient. Paradigm Br. 4; DEF Br. 9-10; LeXpunK Br. 12-15. The CFTC identified Tom Bean and Kyle Kistner – the co-founders of the bZx DAO and members of the Ooki DAO – in a separate settlement, *In re bZeroX, LLC*, 2022 WL 4597664, at *2, but has not identified any members in this action. This omission puts the risks of forgoing service requirements in even sharper relief than *Broderick Boys*, where the district attorney sought to serve process on a gang by at least serving one of its members. *See* 149 Cal. App. 4th at 1521-22. Here, the CFTC has not identified *any* individual members of the alleged association and has instead opted to submit the Complaint to a help chat box and post it in an online forum. Those measures do not show that individual members of the DAO – defined by the CFTC to include anyone anywhere who ever voted Ooki DAO tokens on anything – will learn of the action. *See Entrepreneur Media, Inc. v. Doe*, No. 19-cv-1706, 2019 WL 8638802, at *3 (C.D. Cal. Dec. 5, 2019) (denying motion for service via social media account where there was no showing that it would be "an adequate vehicle for providing actual notice to Defendant").

Because the Complaint fails to articulate a lawful purpose of the Ooki DAO distinct from the alleged illegality, and because the CFTC does not identify any members of the DAO, the CFTC's attempt to serve process on the DAO as an unincorporated association fails.

### D.   Alternative Service Should Not Be Used To Circumvent the Service Requirements for an Unincorporated Association

California Civil Procedure Code § 413.30's alternative service provision does not permit the CFTC to avoid the procedures for serving an unincorporated association. That provision states:

> *Where no provision is made in this chapter or other law for the service of summons*, the court in which the action is pending may direct that summons be served in a manner which is reasonably calculated to give actual notice to the party to be served and that proof of such service be made as prescribed by the court.

Cal. Civ. Pro. Code § 413.30 (emphasis added).  Here, however, California has specifically provided for service of process on unincorporated associations.  Thus, "[t]he necessary prerequisite for the court to authorize an alternative method of service" remains "unsatisfied."  *Searles v. Archangel*, 60 Cal. App. 5th 43, 53-54 (Cal. Ct. App. 2021) (holding that a "respondent who was actively evading service" could not be served through publication on social media); *see also Fed. Ins. Co. v. Caldera Med., Inc.*, No. 2:15-cv-393, 2015 WL 12655601, at *2 (C.D. Cal. Apr. 8, 2015) ("[T]he Court cannot invoke Section 413.30 to circumvent Section 416.90."); *Oh My Green, Inc. v. Cuffe*, No. 2:20-cv-2509, 2020 WL 3213715 (C.D. Cal. Mar. 20, 2020) (similar).

Because the CFTC seeks to serve a defendant that it has alleged to be an unincorporated association, it must use the methods available under California law for serving an unincorporated association.  As other *amici* explain, Paradigm Br. 4; DEF Br. 9-10; LeXpunK Br. 12-14, the CFTC has pointed to obstacles to service of process, but it has not used means available to it to overcome those obstacles.  The mere fact that it may require additional time or effort to serve the DAO in accordance with California law does not allow the CFTC to turn immediately to methods for service not authorized for unincorporated associations.  *See Searles*, 60 Cal. App. 5th at 52-54; *cf. Cal. Serv. Emps. Health & Welfare Tr. Fund v. GreenBox Servs. LLC*, No. 21-cv-2237, 2021 WL 1966597, at *2 (N.D. Cal. May 17, 2021) (permitting alternative service via certified mail and email to unincorporated association's designated agent only after several unsuccessful attempts to serve via statutorily approved methods).  The legislature could have expressly identified service pursuant to Section 413.30 as an avenue for service on an unincorporated association, as it did in rules governing probate actions.  *See id.* at 54-55.  That it has not done so undermines the CFTC's immediate resort to alternative means of service on the Ooki DAO.

The authority that the CFTC cites in its motion for alternative service does not alter this conclusion.  *Rio Properties, Inc. v. Rio International Interlink* addressed service pursuant to Federal Rule of Civil Procedure 4(f)(3), which permits service "by . . . means not prohibited by international agreement as may be directed by the court."  284 F.3d 1007, 1014 (9th Cir. 2002) (quoting Fed. R. Civ. P. 4(f)(3)).  The Ninth Circuit's approval of email service on a foreign sports gambling operation does not provide a basis for relaxing California law's requirements for serving

an unincorporated association or immediately permitting an alternative form of service.  *Id.* at 1018.  And in *Optima Direct, LLC v. Yageo America Corp.*, the court *rejected* a plaintiff's request for alternative service by email or by service upon the California Secretary of State.  No. 21-cv-02823, 2021 WL 6051738, at *2-5 (N.D. Cal. Dec. 21, 2021).  The *Optima Direct* court found that email service was not a viable method of notifying the defendant and that service on the Secretary of State was not warranted because the plaintiff had not shown that other authorized methods would be unavailing.  *Id.* at *3-4.

Because the Complaint fails to articulate any lawful purpose or identify any individual members of the DAO, this Court should reconsider its grant of the CFTC's motion for alternative service and require the CFTC to re-plead its allegations in a way that delineates the DAO's lawful and unlawful purposes and request service on one or more identified members of the DAO who can respond to this action.  If the CFTC cannot satisfy these requirements for serving an unincorporated association, then the proper course may be for the CFTC instead to bring its action against individuals (including John Doe defendants, if appropriate)[7] and set forth the elements necessary to hold individuals accountable for misconduct under the various recognized forms of liability under the CEA.  If the CFTC wishes to hold individuals accountable solely by virtue of their participation in an alleged unincorporated association, it must satisfy the requirements for serving its Complaint on the association, and it has not done so here.

## II.   THE CFTC'S PROPOSED SERVICE SHORTCUT HIGHLIGHTS OTHER POTENTIAL PROBLEMS IN THE COMPLAINT AND THE RELIEF IT SEEKS

The CFTC's effort to serve the Ooki DAO without identifying a common lawful purpose of the alleged unincorporated association or identifying any individual members highlights several other challenges this case will present if it proceeds in this form.  Requiring the CFTC to differentiate between lawful and unlawful conduct of the DAO and its members will help address those concerns.

---

[7]   *See, e.g.*, Complaint ¶ 11, *CFTC v. Doe 1, et al.*, No. 18-cv-807 (N.D. Tex. Sept. 28, 2018) (Dkt. 1) (instituting action under Section 6c of the CEA against John Doe defendants).

A.    **The Complaint Does Not Identify Responsible Parties and Establish Their Liability**

Section 6c of the CEA authorizes the Court to, among other things, enjoin "violation[s] of [the Act] or any rule, regulation, or order thereunder." 7 U.S.C. § 13a-1. By proceeding under Section 6c, Compl. ¶ 7, the CFTC seeks injunctive relief with respect to the purported unincorporated association, "including all members of the Ooki DAO" as well as "any of its affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert or participation with the [DAO]." Compl., Prayer for Relief, ¶¶ B, C. But the CFTC has not identified or joined any of these persons – whether individuals or legal entities – and it has not connected any violative conduct or basis for those persons' liability to the CEA's statutory text. The construct of the purported "unincorporated association" should not allow an end-run around traditional concepts of liability under the CEA.

As other *amici* have explained, the CEA provides defined avenues for a person to be held responsible for violations: (i) direct liability for personal violations; (ii) control person liability; (iii) aiding and abetting; and (iv) principal-agent liability. 7 U.S.C. §§ 2(a)(1)(B), 13c(a)-(b). The CFTC's theory satisfies none of these well-defined bases for liability for any – let alone all – of the persons encompassed in its request for relief. *See* Paradigm Br. 9-10. The CFTC cites no authority for a theory of liability that would, for example, impose a lifetime personal trading ban on a person who merely holds and has voted tokens in a DAO, takes no other affirmative action, and personally engages in no illegal activity. Compl., Prayer for Relief, ¶ C.

By urging a contrary rule here, the CFTC's Complaint threatens to render decentralized models for governance based on smart contracts illegal, instead of targeting governance decisions or actions that constitute unlawful conduct. This will stifle innovation and chill legitimate business and technological activity. DAOs may be used for a variety of purposes unrelated to derivatives or leveraged commodity transactions. *See* Aaron Wright, *The Rise of Decentralized Autonomous Organizations: Opportunities and Challenges*, 4 Stan. J. of Blockchain L. & Pol'y 152, 155 (2021), https://stanford-jblp.pubpub.org/pub/rise-of-daos/release/1 (predicting that "the use of DAOs may expand . . . into a range of industries"). A DAO also may govern the operation of a

protocol that enables financial transactions between individuals over which the CFTC has no jurisdiction.[8]  The possibility that an individual or group of individuals can use a blockchain protocol for unlawful purposes should not make anyone who votes on any aspect of a protocol at any time subject to liability for everything that protocol is ever used to do.  Articulating the difference between lawful and unlawful purposes of a DAO would allow decentralized governance and activity to continue its growth and development.

The parallel settlement order that accompanied the filing of this case shows that the CFTC can pursue its important regulatory interests by focusing on individuals who seek to use DAOs to provide unlawful transactions, such as by administering websites or applications facilitating unlawful transactions, or engaging in marketing or solicitation of unlawful transactions.  *See In re bZeroX, LLC*, 2022 WL 4597664, at \*4-7.  Aiming to prevent unregistered derivatives or retail leveraged commodity transactions does not require ignoring the difference between lawful and unlawful conduct or undermining the promise of decentralized governance models with a threat of unlimited liability untethered to an individual's own conduct or knowledge.[9]

## B.    The Complaint Improperly Seeks *Ex Parte* Relief

By proceeding solely against the Ooki DAO as an association, the CFTC also effectively seeks *ex parte* relief that the CEA prohibits.  The CFTC prays here for far-reaching relief enjoining

---

[8]    As one example, the CFTC's regulatory authority under the CEA does not apply to transactions in "spot" or "cash" commodity markets.  Rather, the CFTC's regulatory authority focuses on so-called "commodity interest" transactions – principally commodity derivatives but also, in one technical area of commodities law, transactions offered to retail customers on a leveraged, margined, or financed basis that do not result in actual delivery of the relevant commodity within 28 days.  *See* 7 U.S.C. § 2(c)(2)(D).  Retail leveraged commodity transactions that do result in actual delivery of the relevant commodity within 28 days are not subject to regulation under the CEA.  7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa).  One can imagine a DAO for a protocol that a developer coded to deliver bitcoin within 28 days that later changes to allow later delivery or no delivery at all.  Under the CFTC's theory in this case, a token holder who votes on aspects of the DAO having nothing to do with delivery terms will be liable for any unlawful transactions resulting from a change in delivery terms, even if the token holder did not vote on such a proposal, voted against it, or has never even heard of the CEA or its regulation of retail leveraged commodity transactions.

[9]    Indeed, members of a DAO, depending on the facts and circumstances, may be liable for actions associated with the DAO.  *See* M. Jennings & D. Kerr, *A Legal Framework for Decentralized Autonomous Organizations* (Oct. 26, 2021), at 13-14 & n.27, https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-1.pdf.  But the novelty and potential complexity of determining when and how individual DAO members may be subject to liability underscores the importance of adhering to fundamental legal principles, such as service of process requirements, that protect individual rights, ensure adversarial testing, and improve the prospect of an enforceable judgment.

1   persons from continuing the alleged violations and also barring future participation in the

2   derivatives markets.  Under Section 6c of the CEA, the CFTC cannot seek to enjoin conduct or

3   enforce compliance with the CEA on an *ex* parte basis.  *See* 7 U.S.C. § 13a-1(a); *CFTC v. Lake*

4   *Shore Asset Mgmt. Ltd.*, 496 F.3d 769, 773 (7th Cir. 2007) ("[R]ecord-keeping and asset-freeze

5   orders are the *only* kinds of relief that may be adopted *ex parte* . . . .").  This limitation on *ex parte*

6   relief is necessary to avoid "serious constitutional problems" associated with granting relief that

7   could cause "a business to be destroyed without giving the affected party any opportunity to

8   present evidence." *Id.* at 771.  Use of the construct of an "unincorporated association" in this case

9   would circumvent the CEA's prohibition on *ex parte* relief by not identifying, naming, joining, or

10   articulating grounds for liability on the part of the numerous individuals who may be swept up in

11   the CFTC's broad request for relief.

       **C.     The Complaint Seeks an Unenforceable Injunction**

13   Finally, because the CFTC alleges that the mere voting of tokens on any subject at any time

14   makes a token holder liable for all actions of the DAO and its Protocol, Compl. ¶¶ 11, 60, 67, 72,

15   an injunction against continued operation of the Protocol may put token holders and the Court in

16   an impossible position.  Token holders will not vote to modify or terminate the Protocol when such

17   a vote may fail and the mere act of having voted will subject that token holder to joint and several

18   liability for all past and future violations relating to the Protocol.  As CFTC Commissioner

19   Mersinger explained in her dissenting statement from the CFTC's *bZx* settlement order and its

20   decision to file this action, the CFTC's approach "affirmatively disincentivizes voting participation

21   in DAO governance generally – and particularly those who may want to vote in a manner that

22   effectuates change to comply with the law." *Dissenting Statement of CFTC Commissioner*

23   *Summer K. Mersinger Regarding Enforcement Actions Against 1) bZeroX, LLC, Tom Bean, and*

24   *Kyle Kistner; and 2) Ooki DAO* (Sept. 22, 2022), https://tinyurl.com/56zpa9z8.  This problem will

25   be compounded if a majority of token holders do not receive notice of the Complaint or eventual

26   judgment, or if a majority of token holders are located abroad or are not subject to the jurisdiction

27   of the Court.  *See* Fed. R. Civ. P. 65(d)(2) (an injunction or restraining order is only binding on

28   those who "receive actual notice of it by personal service or otherwise").

1    It is well-established that injunctive relief should not be granted where it would be futile

2   or require something that is impossible.[10]   A properly articulated theory of liability based on

3   specified wrongdoing and not merely the voting of tokens would improve the prospect of an

4   enforceable judgment.  Fed. R. Civ. P. 65(d)(1) ("[E]very order granting an injunction . . . must

5   . . . describe in reasonable detail . . . the act or acts restrained or required"); *Fortyune v. Am.*

6   *Multicinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004) (injunction must provide "'fair and

7   precisely drawn notice of what the injunction actually prohibits'" (citation omitted)).   Under a

8   theory of liability that distinguishes lawful governance of a DAO from unlawful use of a DAO to

9   engage in illegal conduct, token holders would be able to vote on modifications to avoid unlawful

10   uses, without fear that the mere act of doing so would subject them to liability if the vote fails.

11                                            **CONCLUSION**

12    For the foregoing reasons, *amicus curiae* a16z respectfully submits that the Court should

13   decline to approve the CFTC's request for alternative service on the current record.  For this action

14   to comply with California's requirements for service on an unincorporated association, and for the

15   action to proceed in a manner that can give rise to an enforceable judgment, the Complaint should

16   articulate wrongdoing by individuals that is distinct from the simple act of voting on any DAO

17   governance proposal at any point in time.  Rather than rendering the mere holding and voting of

18   tokens unlawful conduct by association, the CFTC should articulate the DAO's lawful purpose

19   and identify the alleged acts of wrongdoing that could give rise to liability.

---

[10]    *See, e.g., Penn Cent. Co. v. Buckley & Co.*, 293 F. Supp. 653, 658 (D.N.J. 1968), *aff'd*, 415 F.2d 762 (3d Cir. 1969) (describing the "general rule that a Court of Equity will not grant injunctive relief unless it is shown that, if an injunction is granted the Court may enforce the mandate of the injunction"); *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 550 (1937) ("It is true that a court of equity may refuse to give any relief when it is apparent that that which it can give will not be effective or of benefit to the plaintiff."). Although the CFTC seeks a statutory injunction under Section 6c of the CEA and not a private injunction, the Court is still vested with exercising equitable discretion.  *See Hecht Co. v. Bowles,* 321 U.S. 321, 328-30 (1944); *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1947-50 (2020) (courts must grant relief that is consistent with traditional constraints on equity practice).

Dated:  October 31, 2022

Respectfully submitted,

*/s/ Douglas K. Yatter*

Matthew Rawlinson (Bar No. 231890)
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone: +1.650.463.3076
Email: matt.rawlinson@lw.com

Douglas K. Yatter (Bar No. 236089)
Benjamin Naftalis (*pro hac vice to be filed*)
Samir Deger-Sen (*pro hac vice to be filed*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Email: douglas.yatter@lw.com
         benjamin.naftalis@lw.com
         samir.deger-sen@lw.com

*Counsel for* Amicus Curiae *Andreessen Horowitz*