1    Thomas L. Simek (DC Bar #57268)
     Anthony C. Biagioli (MO Bar # 72434)
2    Attorneys for Plaintiff
     COMMODITY FUTURES TRADING COMMISSION
3    2600 Grand Boulevard, Suite 210
     Kansas City, MO  64108
4    Telephone: (816) 960-7700
     tsimek@cftc.gov
5    abiagioli@cftc.gov

6

7

8

9                    **UNITED STATES DISTRICT COURT**
                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
10                       **SAN FRANCISCO DIVISION**

11                                          )
                                            )
12                                          )    **CIVIL ACTION NO:  3:22-cv-05416-**
                                            )    **WHO**
13   Commodity Futures Trading Commission,  )
                                            )
14                      Plaintiff,          )    **Hon. William H. Orrick**
                                            )
15                 v.                       )
                                            )    **PLAINTIFF'S CONSOLIDATED**
16   Ooki DAO (formerly d/b/a bZx DAO), an  )    **OPPOSITION TO *AMICUS CURIAE***
     unincorporated association,            )    **MOTIONS FOR RECONSIDERATION**
17                                          )    **OF ORDER GRANTING PLAINTIFF'S**
                        Defendant.          )    **MOTION FOR ALTERNATIVE**
18                                          )    **SERVICE**
                                            )
19                                          )    Hearing Date:    December 7, 2022
                                            )    Hearing Time:    2:00 PM
20                                          )    Courtroom:       2 (Zoom Videoconference)
                                            )
21   _____       )

22

23

24

25

26

27

28

_____
PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS FOR RECONSIDERATION

1

## **TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION ...................................................................................................1

4

STATEMENT OF ISSUE TO BE DECIDED...........................................................5

5

POINTS AND AUTHORITIES ...............................................................................5

6

    I.      Facts ..........................................................................................................5

7

             a.   The Ooki Protocol and the Ooki DAO ..................................................5

8

             b.  The CFTC's Service Efforts .................................................................7

9

    II.     Argument ...............................................................................................10

10

             a.   The CFTC's Service Method Complied with Applicable Law and Resulted in Actual Notice ....................................................................................10

11

12

13

             b.  The CFTC Is Not Required to Serve All Individual Members of the Ooki DAO .13

14

             c.   The CFTC Sufficiently Alleged that the Ooki DAO is an Unincorporated Association for Purposes of Its Motion for Alternative Service............................16

15

16

17

    III.    Conclusion ............................................................................................24

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

5

*Assoc. Students of the University of Cal. at Riverside v. Kleindienst*,
    60 F.R.D. 65 (C.D. Cal. 1973) ............................................................................................17

6

7

*Committee for Idaho's High Desert, Inc. v. Yost*,
    92 F.3d 814 (9th Cir. 1996) ...............................................................................................17

8

*Heinold Hog Market, Inc. v. McCoy*,
    700 F.2d 611 (10th Cir. 1983) ...........................................................................................17

9

10

*Ill. Citizens Comm. for Broad. v. FCC*,
    515 F.2d 397 (D.C. Cir. 1975)...........................................................................................22

11

*Karl Rove & Co. v. Thornburgh*,
    39 F.3d 1273 (5th Cir. 1994) .............................................................................................13

12

13

*Michael Kors, L.L.C. v. Individuals, Partnerships and Unincorporated Associations Identified on
Schedule "A"*,
    No. 20-cv-62455-BLOOM/Valle, 2020 WL 8231117 (S.D. Fla. Dec. 4, 2020) .................16

14

15

*Rio Properties, Inc. v. Rio Intern. Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ....................................................................................11, 16

16

17

*Satanic Temple, Inc. v. City of Scottsdale*,
    423 F. Supp. 3d 766 (D. Ariz. 2019) .................................................................................21

18

*Seattle Affiliate of October 22nd Coalition to Stop Police Brutality, Repression and the
Criminalization of a Generation v. City of Seattle*,
    No. C04 0860L, 2005 WL 3418415 (W.D. Wash. Dec. 12, 2005) ......................................17

19

20

*So. Cal. Darts Ass'n v. Zaffina*,
    762 F.3d 921 (9th Cir. 2014) .............................................................................................17

21

22

*Sprint Nextel Corp. v. FCC*,
    508 F.3d 1129 (D.C. Cir. 1975).........................................................................................22

23

24

*United Health Servs., Inc. v. Meyer*,
    No. C12-6197-CW, 2013 WL 843698 (N.D. Cal. Mar. 6, 2013).........................................11

25

26

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022).......................................................................................................23

27

28

ii

**STATUTES**

7 U.S.C.
  § 1a(38) ...................................................................................................22

Cal. Civ. Pro. Code
  § 413.30 .............................................................................................11, 12
  § 415.95 ...................................................................................................11
  § 416.40 .........................................................................................11, 12, 18

Cal. Corp. Code
  § 18220 ........................................................................................11, 12, 18
  § 18035(a) ...............................................................................................18

**RULES**

Fed. R. Civ. P.
  4 .........................................................................................................1, 15
  4(e)(1) .....................................................................................................10
  4(h) ...........................................................................................................2
  4(h)(1) .........................................................................................10, 13, 22
  4(h)(1)(A) ...............................................................................................10
  4(h)(1)(B) ...............................................................................................10
  4(h)(2) .....................................................................................................16
  17(b)(3)(A) ..............................................................................................17

Rev. Uniform Partnership Act (R.U.P.A)
  § 306(a) ...................................................................................................13
  § 307(c) ...................................................................................................14
  § 307 Official Comment 3 ......................................................................14
  § 307 Authors' Comment 1 ...............................................................14, 15

**OTHER AUTHORITIES**

Andreessen Horowitz, *A Legal Framework for Decentralized Autonomous Organizations ("Legal Framework for DAOs")*, *available at* https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-1.pdf ..............................4, 18

Andreessen Horowitz, *A Legal Framework for Decentralized Autonomous Organizations Part II: Entity Selection Framework*, *available at* https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-2.pdf....................................................19

Andreessen Horowitz, *Letter to U.S. Senate Committee on Banking Housing, and Urban Affairs re: Request for Proposals for Clarifying Laws Concerning Cryptocurrency and Blockchain Technologies*, Sept. 27, 2021, *available at* https://a16z.com/wp-content/uploads/2021/10/Andreessen-Horowitz-Senate-Banking-Proposals.pdf ..............19

Andrew Gilbert, *Decentralized Autonomous Organizations: The New LLCs?*,
Bloomberg Law, Aug. 2, 2022, *available at* https://news.bloomberglaw.com/securities-law/decentralized-autonomous-organizations-the-new-llcs ..................................................19

*In re bZeroX, LLC, Tom Bean, and Kyle Kistner*,
CFTC No. 22-31, 2022 WL 4597664 (Sept. 22, 2022) ........................................................3

Jason Gottlieb, Daniel Isaacs, Alexandra Wang, *How to Do Business as a DAO*, CoinDesk, Oct. 20, 2021, *available at* https://www.coindesk.com/policy/2021/10/20/how-to-do-business-as-a-dao/ ..................................................................................................................................19

M. Jennings and D. Kerr, Andreessen Horowitz,
*DAO Entity Features & Entity Selection*, *available at* https://a16z.com/2022/05/23/dao-legal-frameworks-entity-features-selection/ ...................................................................................4

Zack Smith, *The Legal Status of Decentralized Autonomous Organizations:  Do DAOs Require New Business Structures?   Some States Think So.*, Heritage Foundation, June 1, 2022, *available at* https://www.heritage.org/government-regulation/commentary/the-legal-status-decentralized-autonomous-organizations-do-daos ...........................................................19

iv

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **INTRODUCTION**

Plaintiff Commodity Futures Trading Commission ("CFTC") respectfully submits this consolidated opposition to four Motions for Reconsideration of this Court's Order Granting the CFTC's Motion for Alternative Service.[1]

The Court should not reconsider the Order Upholding Service, as the CFTC's service method followed applicable law and resulted in actual notice.  The CFTC sued a single entity— the Ooki DAO, as an unincorporated association—for operating a trading platform in a manner that violated the Commodity Exchange Act ("CEA") and a CFTC Regulation.  In strict adherence to Federal Rule of Civil Procedure ("FRCP") 4 and Ninth Circuit and California law, the CFTC served the summons and complaint on the Ooki DAO via the only avenue the Ooki DAO itself made available for the public to contact it.  Not only was this reasonably calculated to provide notice of the action, as the law requires, it in fact *did* provide notice to the Ooki DAO. For example, the Ooki DAO's official Twitter account publicly confirmed that it had received the complaint, and noted that it was publicly discussing in its Online Forum how (if at all) to respond to the complaint:[2]

---

[1]    *See* Brief of *Amicus Curiae* DeFi Education Fund Regarding Plaintiff's Motion for Alternative Service (ECF No. 22 at Ex. A) ("DEF Motion"); Brief of *Amicus Curiae* Paradigm Operations LP (ECF No. 31 at Ex. A) ("Paradigm Motion"); *Amicus Curiae* Brief of LeXpunK Regarding Plaintiff's Motion for Alternative Service (ECF No. 36) ("LeXpunK Motion); *Amicus Curiae* Brief of Andreessen Horowitz Regarding Plaintiff's Motion for Alternative Service (ECF No. 45-1) ("Andreessen Motion," and together with the DEF Motion, Paradigm Motion, and LeXpunK Motion, the "Motions for Reconsideration"); *see generally* ECF No. 17 (Order Granting Plaintiff's Motion for Alternative Service) ("Order Upholding Service"); ECF No. 11 (Plaintiff's Motion for Alternative Service) ("Motion for Alternative Service"); ECF No. 13 (CFTC's Administrative Motion to Supplement Motion for Alternative Service) ("Motion to Supplement").

[2]    *See, e.g.*, Declaration of Brittne Snyder ("Snyder Declaration") (attached hereto as Exhibit 1) ¶ 8 & Ex. B.

Despite that the Ooki DAO's public acknowledgment occurred on September 28, neither the DEF Motion, the Paradigm Motion, the LeXpunK Motion, nor the Andreessen Motion (all filed in October) brought this dispositive fact to the Court's attention.  It is undeniable that the Ooki DAO received actual notice of this lawsuit.



The CFTC's compliance with applicable service requirements, combined with the clear fact of actual notice, is by itself sufficient to deny the Motions for Reconsideration.

To serve an unincorporated association, a plaintiff need not serve every uncharged individual member of the association. *See* FRCP 4(h) (specifying service requirements which do not include service on every such individual). The Motions for Reconsideration suggest otherwise—arguing that the CFTC's method of service was inadequate because the CFTC did not serve each individual (uncharged) member of the Ooki DAO. But that is not the law, and *Amici* cite nothing suggesting this requirement exists. Instead, numerous Motions for Reconsideration attempt to characterize the CFTC's Complaint as suing and/or seeking recovery directly against individual Ooki token holders.[3] This is simply incorrect.[4]

---

[3]     *See, e.g.*, DEF Motion, ECF No. 22 at [ECF page] 2 ("DEF's interest in this case concerns the Commission's enforcement action against Ooki DAO and its individual token holders, and in particular the Commission's attempt to serve process on Ooki DAO, and its individual token holders . . . ."); Paradigm Motion, ECF No. 31 at [ECF page] 11 ("the Commission seeks . . . to impose CEA liability on every token holder who voted on any proposal related to the DAO's governance . . . ."); LeXpunK Motion at 7, 11 (arguing that "the CFTC seeks to hold liable an unknown and unidentified subset of Ooki token holders" and that the CFTC's "case . . . is really against individual Ooki Token users"). Note that, because ECF No. 22 (DEF Motion) and ECF No. 31 (Paradigm Motion) each contains multiple documents that begin at page 1, page references to ECF No. 22 and to ECF No. 31 herein are to ECF page numbers.

[4]     It is true that in a concurrent administrative settlement with the Ooki DAO's predecessor (bZeroX, LLC) and that LLC's two founders, the two founders consented to the CFTC's findings that they were liable, among other

Each Motion for Reconsideration also asserts that the CFTC has not sufficiently alleged that the Ooki DAO is an unincorporated association and consequently cannot rely on effecting service only on this alleged association.  However, this argument is a challenge to the sufficiency of the allegations in the Complaint, and thus is appropriately raised in a motion to dismiss (or similar dispositive motion), not a motion for alternative service.

More importantly, the CFTC, as explained below, has not only more than sufficiently alleged that the Ooki DAO meets the well-established definition of an unincorporated association, but, contrary to the claims of the *Amici*, there is nothing novel about applying this definition to the Ooki DAO.  The CFTC is not suing technology, as *Amici* claim: the CFTC's action is not against the blockchain-based Ooki Protocol, but against the Ooki DAO—an association that acts and makes collective decisions regarding the Ooki Protocol through voting by its governance token holders.  Since bZeroX, LLC transferred control of the Ooki Protocol to the bZx DAO, governance token holders, among other things, have voted:

- to change the DAO's name to the Ooki DAO;

- to approve release of funds from a Treasury that holds—collectively and in the name of the Ooki DAO—revenue from the trading platform; and

- to approve an omnibus funding plan for going-forward operations, including for marketing, operations, protocol development, community management, and legal expenses.

In addition, governance token holders have continued to operate a website, maintain a social media presence, and make available to the public a trading platform that offers illegal leveraged retail commodity transactions and that unlawfully solicits and accepts orders for and

---

bases, as members of the Ooki DAO for any future judgment that may be entered against the Ooki DAO.  *See In re bZeroX, LLC, Tom Bean, and Kyle Kistner*, CFTC No. 22-31, 2022 WL 4597664 (Sept. 22, 2022).  The Motions for Reconsideration appear to disagree with the CFTC's findings relating to individual liability in that concurrent administrative settlement order; however, this is not the time or place to express that disagreement.

enters into such transactions—all functions previously performed by bZeroX, LLC.  The factors *Amici* claim disqualify the Ooki DAO as an unincorporated association—variable membership over time, inconsistent voting by members, and different or divergent views and opinions among members—are nothing more than features of almost any unincorporated association (or other business entity, for that matter).

The Motions for Reconsideration overstate the potential for this litigation to disincentivize participation in DAOs.  Nothing prevented the Ooki DAO, upon taking control of the Ooki Protocol, from choosing to avail itself of some corporate form recognized by law to shield individual members from liability and limit potential creditors to monetary recovery from the Ooki DAO Treasury only.  Indeed, industry commentators—including *amicus* Andreessen Horowitz—have proposed numerous entity structures with a goal of enabling nascent DAOs to address potential individual-member liability issues and achieve many other goals.[5]  Likewise, multiple states have set up LLC-like registration frameworks to facilitate DAO registration to attempt to obviate such individual liability issues.  Here, Ooki DAO members did not choose to adopt such an approach, assuming—incorrectly—that eschewing a more traditional entity structure, with its concomitant individual-member liability protections, would "future-proof" it against regulation.  Rather than disincentivizing DAO participation, the CFTC's lawsuit seeks only to apply to DAOs the same rules that apply to any group of persons who organize for the purpose of a common business objective.[6]

---

[5]     *See, e.g.*, Miles Jennings and David Kerr, Andreessen Horowitz, *DAO Entity Features & Entity Selection*, *available at* https://a16z.com/2022/05/23/dao-legal-frameworks-entity-features-selection/; *see also, e.g.*, Andreessen Horowitz, *A Legal Framework for Decentralized Autonomous Organizations ("Legal Framework for DAOs")* at 12, *available at* https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-1.pdf ("Unfortunately, a DAO's decision to not create a legal entity does not offer protection from responsibilities that may arise in the operation of a DAO.").

[6]     Ironically, by denying that that DAOs are unincorporated associations that can be sued, *Amici* also deny that DAOs *can sue others*—a position that would deny DAOs the ability to remedy unlawful conduct against them.

The CFTC's Complaint is based on the proposition that although the Ooki DAO is free to develop and innovate the Ooki protocol and the blockchain technology on which it is based as it sees fit, it cannot avoid liability for engaging in activities that violate the CEA or CFTC Regulations simply by placing the organizational and governance functions previously performed by an LLC in a DAO.  Vacating the Order Upholding Service would effectively allow the Ooki DAO to do so, and prove correct the statements made by the bZeroX founders—that an incorporated entity can "future-proof" itself against regulation, continue to engage in illegal activity, and violate U.S. federal commodities laws or indeed any U.S. or state laws without accountability by transforming itself into a DAO.  That proposition is extraordinary, and it is wrong.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the CFTC complied with applicable law when it provided the summons and complaint in this action to the Ooki DAO—a self-described decentralized autonomous organization doing business under the common name "Ooki DAO" and that operates a trading platform, controls a Treasury containing revenue from that platform, and maintains a website and an active social media presence under that common name—via the only mechanism the Ooki DAO made available to the public to contact it directly, and where the Ooki DAO subsequently acknowledged receipt of those papers and publicly debated whether and how to respond.

## POINTS AND AUTHORITIES

I.      **Facts**

In support of this consolidated opposition, the CFTC states the following facts:

A.      **The Ooki Protocol and the Ooki DAO**

1.      As alleged in the Complaint, the bZx Protocol (later renamed the Ooki Protocol) was a collection of smart contracts on a blockchain that purported to facilitate transactions

- 5 -

without intermediaries, functioning similarly to a trading platform.  *See, e.g.*, ECF No. 1 ¶¶ 26, 28-30.

2.      Originally, bZeroX, LLC ran the for-profit business of operating, marketing, soliciting orders for, facilitating access through a website to, and collecting fees and other revenue in connection with the operation of the bZx Protocol.  *Id.* ¶¶ 32-33.  However, in August 2021, bZeroX, LLC transferred control of the bZx Protocol to the newly formed bZx DAO, a group of users of the bZx Protocol who (a) chose not to incorporate, and (b) both held and actually voted governance tokens to participate in the business of running the bZx Protocol.  *Id.* ¶¶ 38-39.  In practice, the bZx DAO controlled and operated the bZx Protocol just as bZeroX, LLC before it had done.  *Id.* ¶ 41.

3.      As bZeroX, LLC had done, the bZx DAO controlled a Treasury, into which fees and other revenue generated from user activity in connection with the bZx Protocol were collected.  *Id.* ¶¶ 41-44.  Although this Treasury existed on the blockchain, the bZx DAO, acting through the votes of governance token holders, controlled the release of funds from this Treasury.  *Id.* ¶ 41-42.  For example, one of the first acts the bZx DAO undertook was to approve and release funding from the bZx DAO Treasury for going-forward bZx DAO operations, including marketing, operations, protocol development, community management, and legal expenses.  *Id.* ¶¶ 43-44.  The bZx DAO undertook these acts through the votes of governance token holders, pursuant to specific governance protocols the bZx DAO publicized.  *Id.* ¶¶ 42-46, 48.

4.      The bZx DAO continued to operate, market, solicit orders for, and facilitate access to the bZx Protocol through a website, just as bZeroX, LLC had done before the transfer of control of the bZx Protocol to the bZx DAO.  *Id.* ¶ 41.

1    5.    When bZeroX, LLC transferred control of the bZx Protocol to the bZx DAO, it

2    did so with the explicitly stated objective of insulating the bZx Protocol from regulatory

3    oversight and accountability for compliance with U.S. law.  As explained by one of bZeroX,

4    LLC's founders:

5

6        It's really exciting. We're going to be really preparing for the new
         regulatory environment by ensuring bZx is future-proof.  So many
7        people across the industry right now are getting legal notices and
         lawmakers are trying to decide whether they want DeFi companies
8        to register as virtual asset service providers or not – and really
         what we're going to do is take all the steps possible to make sure
9        that when regulators ask us to comply, that we have nothing we
         can really do because we've given it all to the community.
10

11   *Id.* ¶¶ 3, 40.

12    6.    In December 2021, through a vote by governance token holders, the bZx DAO

13   renamed itself the Ooki DAO (and renamed the bZx Protocol the Ooki Protocol).  *Id.* ¶ 46.  The

14   Ooki DAO continued to operate as a group of users of the Ooki Protocol who (a) chose not to

15   incorporate, and (b) both held and actually voted governance tokens to participate in the business

16   of running the Ooki Protocol pursuant to specific, publicized governance protocols.  *Id.* ¶¶ 46-

17   48.[7]

18

19   **B.    The CFTC's Service Efforts**

20    7.    On September 22, 2022, the CFTC filed a Complaint against the Ooki DAO

21   (formerly doing business as the bZx DAO).  The Complaint does not charge any individual

22   members of the Ooki DAO.  *See, e.g.*, ECF No. 1 ¶ 11 (listing one defendant—the Ooki DAO

23   unincorporated association).

24    8.    The CFTC took extensive steps to attempt to serve the Ooki DAO by traditional

25   means but faced significant obstacles to traditional service of process due to the way the Ooki

26

27

28   _____
     [7]    In the Argument below, where the CFTC refers to the "Ooki DAO," it is referring to the "Ooki DAO
     (formerly doing business as the bZx DAO)."

- 7 -

DAO chose to structure itself.  Motion for Alternative Service (ECF No. 11) at 4-5.

9.    In light of these obstacles, the CFTC provided the summons, complaint, and additional related papers to the Ooki DAO via the mechanisms the Ooki DAO held out as the appropriate mechanisms to contact it—i.e., a Help Chat Box on its website, with contemporaneous notice through an Online Forum linked through its website.  *Id.* at 5 ¶ 9.

10.    The Ooki DAO, in fact, has been notified regarding the CFTC's action.  For example:

   a.    The Ooki DAO's Telegram channel contained at least 49 messages as of November 14, 2022 discussing the Complaint.  Snyder Declaration ¶ 5;

   b.    On September 27, 2022, a post appeared in the Ooki DAO's Online Forum titled "Future of Ooki DAO" that was "geared towards beginning discussion among DAO community members as to the appropriate response to the CFTC complaint" and proposing several potential courses of action.  Snyder Declaration ¶ 7 & Ex. A (attaching full version of following screenshot):



   c.    On September 28, 2022, the Ooki DAO's official Twitter account tweeted (as discussed above) that "DAO members have kicked off a discussion regarding the

CFTC complaint" and invited DAO members to join this discussion on the above forum thread.  Snyder Declaration ¶ 8 & Ex. B;

d.   On October 10, 2022, following the discussion in the Online Forum, the Ooki DAO held a non-binding "snapshot vote" regarding potential responses to the Complaint to gauge support for these proposals before holding a binding vote through governance tokens, per the governance protocols prescribed by the Ooki DAO (as alleged in the Complaint, ECF No. 1 ¶¶ 43, 48).  Snyder Declaration ¶ 9 & Ex. C (attaching full version of the following screenshot):



11.      On October 3, 2022, the Court granted the Motion for Alternative Service and held that the CFTC effectively served the Ooki DAO on that date.  ECF No. 17.

1

2

3

## II.   **Argument**

### A.   **The CFTC's Service Method Complied with Applicable Law and Resulted in Actual Notice.**

4

5

6

7

8

9

10

As alleged in the Complaint, the Ooki DAO is an unincorporated association comprised of governance token holders who have voted those tokens to govern (e.g., to modify, operate, market to the public, and take other actions with respect to) the Ooki Protocol.  *See, e.g.*, ECF No. 1 ¶ 11 (defining the Ooki DAO—the lone defendant charged in the Complaint—in that manner).  In the Complaint, the CFTC sued the Ooki DAO—and only the Ooki DAO—for certain violations of the CEA and a CFTC Regulation.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

After suing the Ooki DAO, the CFTC adhered strictly to the applicable service rules in providing that defendant with the summons and complaint via the lone mechanism the entity established for contacting it.   As set forth in the Motion for Alternative Service, FRCP 4(h)(1) provides that a corporation, partnership, or other unincorporated association "must be served . . . in a judicial district of the United States:  (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant . . . ."  However, none of the predicates to satisfy FRCP 4(h)(1)(B) exist (i.e., the Ooki DAO has no officer, managing or general agent, etc.).  Thus, per FRCP 4(h)(1)(A), the CFTC must serve the Ooki DAO in a manner prescribed by FRCP 4(e)(1), which permits service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."

27

28

Here the traditional California state law service rules similarly required steps that presented significant obstacles to successful service.  The CFTC could not, for example, serve an

- 10 -

1    identifiable person authorized by law to accept service, or leave or mail the summons at or to an

2    identifiable physical address, because the Ooki DAO does not authorize anyone to accept service

3    and has no physical address.[8]

4            However, under California law, "[w]here no provision is made in this chapter or other

5    law for the service of summons," a court "may direct that summons be served in a manner which

6    is reasonably calculated to give actual notice to the party to be served . . . ."  CAL. CIV. PRO.

7    CODE § 413.30.  Courts in the Ninth Circuit have regularly upheld service under this and

8    analogous provisions by a means of electronic communication that a business organization with

9    no physical address makes available on its website to contact the organization, such as via email.

10   For example, in *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017-19 (9th Cir. 2002),

11   the Ninth Circuit held that service by email was permissible and constitutionally acceptable

12   because it was "reasonably calculated to apprise [the defendant] of the pendency of [the] action

13   and afford it an opportunity to respond . . . ."[9]  Here, the CFTC served the Ooki DAO via the

14   only mechanism the Ooki DAO made available to the public to contact it, and *actual* notice

15   clearly occurred.  Notably, *Amici* do not mention, much less contest, this evidence of actual

---

[8]        *See, e.g.*, CAL. CIV. PRO. CODE § 416.40 (providing that unincorporated associations may be served by delivering the summons or complaint to specified authorized individuals or as authorized by Cal. Corp. Code § 18220); CAL. CORP. CODE § 18220 (providing that, in the event service on specified authorized individuals or mailing to a specified address is not reasonably feasible, an unincorporated association may be served by personally delivering process to one or more of the association's members **and** mailing a copy to the association's last known physical address) (emphasis added); CAL. CIV. PRO. CODE § 415.95 (providing for service on a business organization, form unknown, by physically delivering and then mailing process to a physical office location).

[9]        Similarly, this court upheld service by email under CAL. CIV. PRO. CODE § 413.30 and catalogued cases so holding in *United Health Servs., Inc. v. Meyer*, No. C12-6197-CW, 2013 WL 843698, at *1-2 (N.D. Cal. Mar. 6, 2013).  The Ninth Circuit has confirmed that service in this manner is appropriate where the defendant had "neither an office nor a door; it had only a computer terminal," it had "structured its business such that it could be contacted *only* via its email address," and where email was "the method of communication which [defendant] utilizes and prefers."  *Rio Props.*, 284 F.3d at 1017-18 ("Courts . . . cannot be blind to changes and advances in technology.  No longer do we live in a world where communications are conducted solely by mail carried by fast sailing clipper . . . ships.  Electronic communication via satellite can and does provide instantaneous transmission of process and information.  No longer must process be mailed to a defendant's door when he can receive complete notice at an electronic terminal inside his very office, even when the door is steel and bolted shut.") (citation omitted).

- 11 -

1    notice.

2           The Andreesen Motion incorrectly argues that the CFTC is required to meet—and has not

3    met—two prerequisites to serving the Ooki DAO:  (1) that the CFTC must allege that the Ooki

4    DAO possesses a "common lawful purpose"; and (2) that it "must identify one or more members

5    of the alleged association."  *See* Andreessen Motion at 3-9.  This argument misunderstands the

6    procedural mechanism under California law the CFTC used to serve the Ooki DAO.  The

7    Andreessen Motion derives these requirements from two provisions of California law regarding

8    service on unincorporated associations, California Civil Procedure Code § 416.40 and California

9    Corporations Code § 18220.[10]  However, the CFTC served the Ooki DAO under California Civil

10   Procedure Code *§ 413.30*.  The CFTC used this provision properly, as the Court recognized in

11   the Order Upholding Service, because the CFTC demonstrated that the mechanisms under Cal.

12   Civ. Proc. Code § 416.40 and Cal. Corp. Code § 18220 did not readily provide for service on an

13   organization like the Ooki DAO—namely, (1) the Ooki DAO has *not* specified Bean, Kistner, or

14   any other individual as an officer or individual authorized to accept service on behalf of the Ooki

15   DAO itself, and (2) the Ooki DAO has no physical office location.  Thus, simply identifying one

16   or more Ooki DAO members and delivering the complaint and summons to those individuals

17   would not, by itself, satisfy the traditional prerequisites to serving the Ooki DAO itself (and,

18   ironically, that approach appears far less likely to achieve actual notice to the Ooki DAO).

19   Accordingly, proceeding under Cal. Civ. Proc. Code § 413.30 was the appropriate and only

20   effective approach to providing service, and the CFTC need not meet the two additional

21

22

23

24

25   _____

26   [10]      Other Motions for Reconsideration similarly argue that because the CFTC either has been able to identify
     some Ooki DAO members, namely bZeroX founders Tom Bean and Kyle Kistner, the CFTC should be able to
     identify and serve additional Ooki DAO members and need not resort to alternative service.  *See, e.g.*, Paradigm
27   Motion at [ECF pages] 14-15 (noting, among other things, that CFTC settled with bZeroX founders and should be
     able to identify other Ooki DAO members); DEF Motion at [ECF page] 13 n.5 (noting that the CFTC has alleged
28   that certain Ooki DAO members have resided in the United States); LeXpunK Motion at 11-12 (noting that the
     CFTC identified and settled with the bZeroX founders).

prerequisites to service identified by the Andreessen Motion.[11]

**B.    The CFTC Is Not Required to Serve All Individual Members of the Ooki DAO.**

To serve an unincorporated association, the CFTC need only serve the association itself; it need not serve all of the association's uncharged individual members.  *See, e.g.*, FRCP 4(h)(1) (requiring service on a specified individual or following the law of the state where the district court sits, *not* service on every uncharged individual who could hypothetically be alleged to be a member of that association); *see also* FRCP 4, Notes of Advisory Committee on Rules – 1937 (stating that the relevant rule "enumerates the officers and agents of a[n] . . . unincorporated association upon whom service of process may be made, and permits service of process **<u>only</u>** upon the officers, managing or general agents, or agents authorized by appointment or by law, of the . . . unincorporated association against which the action is brought) (emphasis added).

This is true notwithstanding the fact that individual members of an unincorporated association organized for profit potentially may be held jointly and severally liable for the debts of the association, in the same way as general partners may be held jointly and severally liable for the debts of a general partnership.  *See, e.g.*, *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1285 & n.40 (5th Cir. 1994) (citations omitted) (noting potential for individual liability based on membership in for-profit unincorporated associations pursuant to principals of partnership law); *see generally, e.g.*, Revised Uniform Partnership Act ("R.U.P.A.") § 306(a) (in a general partnership, absent certain conditions, "all partners are liable jointly and severally for all obligations of the partnership").  Although individual members of an unincorporated association may be held jointly and severally liable for the debts of the association, the law does not require

---

[11]    In addition to mis-analyzing California's service provisions, the Andreessen Motion appears to assert that the Ooki DAO's alleged lack of a "lawful purpose" undermines that it is an unincorporated association that can be sued at all.  This is wrong, for the reasons described below in Section II.C.

a plaintiff to serve each individual member of the association.  *Cf.*  R.U.P.A. § 307 Authors'

Comment 1 ("Under R.U.P.A., it is not necessary to serve the partners in order to obtain a

judgment against the partnership").

　　　　For good reason:  any judgment against the Ooki DAO in this litigation will *not*

constitute a judgment against an individual Ooki DAO member.  "A judgment against a

partnership is not by itself a judgment against a partner.  A judgment against a partnership may

not be satisfied from a partner's assets unless there is also a judgment against the partner."

R.U.P.A. § 307(c); *see also* R.U.P.A. § 307 Official Comment 3 ("Thus, a partner must be

individually named and served, either in the action against the partnership or in a later suit,

before his personal assets may be subject to levy for a claim against the partnership.").  In the

hypothetical event the CFTC (in its discretion) requests and obtains (with the Court's approval) a

money judgment against the Ooki DAO, the CFTC could enforce that judgment only against the

Ooki DAO's assets (including those held in the Ooki DAO Treasury).  Accordingly, by choosing

to proceed against the Ooki DAO only, as the CFTC has done here, the CFTC need not serve any

individual Ooki DAO member.

　　　　If, at some point in the future, after seeking and obtaining a judgment against the Ooki

DAO, the CFTC then wishes to enforce that judgment against any alleged individual Ooki DAO

member, the CFTC must institute a subsequent action against, serve, and obtain a judgment

against that alleged individual member (or amend this current action to name and serve that

individual alleged member as a party).  In such a hypothetical future action or hypothetical

amended current action, any alleged individual member would have the opportunity to present

any applicable defenses to his or her alleged membership in the Ooki DAO or other defenses as

that member sees fit.  Even if the CFTC obtained such a judgment against an Ooki DAO

individual member, the CFTC could not attempt to recover from that individual member without

- 14 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

first seeking satisfaction from the Ooki DAO's assets (including those held in the Ooki DAO's Treasury).  *See* R.U.P.A. § 307 Authors' Comment 1 (noting that under the R.U.P.A., "a partnership creditor must seek satisfaction from partnership property before levying on a partner's separate property") (footnotes and citations omitted).

The CFTC, however, did not sue any individual Ooki DAO members.  *See, e.g.*, ECF No. 1 ¶ 11 (listing only the Ooki DAO unincorporated association, not any individual Ooki DAO members, as a defendant).  Nor does the CFTC's complaint request that the Court enter judgment against any individual Ooki DAO member on the basis of that member's joint and several liability for a judgment against the Ooki DAO.  *See id.* at 24-25 ¶¶ D, F-G (requesting an order requiring that the Ooki DAO itself—not any individual Ooki DAO member—pay disgorgement, restitution, and civil monetary penalties).  Accordingly, personal service on all uncharged individual Ooki DAO members was not required.[12]

Despite this, each Motion for Reconsideration appears focused on a speculative hypothetical—that at some future point, the CFTC (1) could potentially obtain a judgment against the Ooki DAO; and (2) then could potentially seek to enforce that judgment against uncharged individual Ooki DAO members or otherwise recover against individual Ooki DAO members.  On the basis of this hypothetical, *Amici* seek to foist on the CFTC an obligation to serve, in this lawsuit against the Ooki DAO only, each individual Ooki DAO member.[13]  But as

---

[12]    The Andreessen Motion objects to the potential scope of possible injunctive relief described in the CFTC's Complaint.  *See* Andreessen Motion at 13-15; ECF No. 1 at 23-24 ¶¶ B, C.  As an initial matter, litigating the breadth of hypothetical injunctive language is premature and unnecessary to decide the issue before the Court— which is simply whether the CFTC followed the law to serve the Ooki DAO, the only defendant it sued.  That said, any injunctive relief ultimately sought by the CFTC will be crafted as narrowly tailored as possible to best ensure the Ooki DAO's compliance with any final order, and, as such, it will apply to individual Ooki DAO members, if at all, *only* to the extent those members control the DAO and are in position to ensure its compliance with any final order.

[13]    *See, e.g.*, DEF Motion at [ECF page] 3, 15-16 (noting that "the Commission has not adequately pled that its proposed method of service on Ooki DAO is likely to notify the parties potentially liable for the claims of this lawsuit" and arguing the CFTC must serve those individuals); LeXpunK Motion at 11, 14 (asserting, without basis, that the CFTC's true "intention" is to ultimately pursue uncharged individuals and that the CFTC should have served

1    explained above, the law simply does not require this.[14]

2
       **C.**      **The CFTC Sufficiently Alleged that the Ooki DAO Is an Unincorporated**
3                   **Association for Purposes of Its Motion for Alternative Service.**

4        Each Motion for Reconsideration seeks to litigate whether the CFTC has sufficiently

5    alleged that the Ooki DAO is an unincorporated association and thus whether the CFTC can

6    avail itself of service provisions relating to unincorporated associations.  As an initial matter, this

7    is premature.  Typically, objections to the sufficiency of complaint allegations are appropriate

8
9    subjects for motions to dismiss or similar dispositive motions.  By contrast, on antecedent

10    motions for alternative service, courts routinely authorize service on entity defendants without

11    requiring robust showings that the complaint has sufficiently alleged that the defendant is, in

12    fact, the type of entity covered by the assertedly applicable service provision.  *See, e.g.*, *Rio*

13    *Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014-16 (9th Cir. 2002) (affirming

14    alternative service on an asserted "foreign business entity" pursuant to FRCP 4(h)(2) without

15    first analyzing whether that entity did, in fact, constitute such an entity); *Michael Kors, L.L.C. v.*

16
17    *Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-

18    cv-62455-BLOOM/Valle, 2020 WL 8231117, at *1-2 (S.D. Fla. Dec. 4, 2020) (upholding

19    service via electronic means on nearly 350 foreign defendants identifiable, in most cases, only by

20    a domain name, without requiring such antecedent analysis).  The Motions for Reconsideration

21

22    its complaint on such individuals).

23    [14]      The LeXpunK Motion goes even further, suggesting that the CFTC should have sued pseudonymous
individuals responsible for the Ooki DAO's illegal conduct directly as fictitious "Doe" defendants.  *See* LeXpunK
24    Motion at 12-13.  But whether or not such a suit could be viable has no bearing on the permissibility of a suit against
the Ooki DAO itself.  The CFTC notes that, by suing the Ooki DAO as an entity defendant, the CFTC has an
25    opportunity to obtain an injunction against the Ooki DAO as an entity (instead of many individuals who might not
control the Ooki DAO) and to recover from the Ooki DAO Treasury (which may contain, for example, unlawful
26    gains from the illegal operation of the trading platform).  In any event, the CFTC chose not to sue individual Ooki
DAO members in this case—an exercise of prosecutorial discretion with which one would expect *Amici* to agree.
27    (Similarly, the CFTC chose to exercise is prosecutorial discretion in settling with Bean and Kistner as part of the
concurrent administrative settlement.)  Ironically, each Motion for Reconsideration takes a position (that DAOs
28    cannot be sued in their own names) that would effectively *require* lawsuits against individuals to address a DAO's
unlawful conduct—a position that is surprising and wrong.

PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS FOR RECONSIDERATION

1   cite no authority suggesting that motion to dismiss-style litigation is appropriate at this stage.

2       But even if it were, the CFTC has more than sufficiently alleged that the Ooki DAO is an

3   unincorporated association.  Pursuant to FRCP 17(b)(3)(A), an unincorporated association "may

4   . . . be sued in its common name" pursuant to the law of the state where the district court is

5   located or, where no such capacity exists, to enforce a substantive right existing under federal

6   law.  Where an action (such as this one) arises under federal law, then federal law, not state law,

7   
8   determines whether the defendant is an unincorporated association.[15]  Under federal law, an

9   unincorporated association is simply "a voluntary group of persons, without a charter, formed by

10  mutual consent for the purpose of promoting a common objective."[16]

11      The Ooki DAO meets this definition.  First, it is a voluntary group of persons—there is

12  no dispute that Ooki Token holders voluntarily vote their Ooki Tokens.  Second, no Ooki DAO

13  corporate charter exists.  Third, the group was formed by mutual consent for the purpose of

14  
15  promoting a common objective.  As alleged in the Complaint, the Ooki DAO maintains a

16  Treasury, in the name of the Ooki DAO, to fund the objectives of the Ooki DAO.  Almost

17  immediately after bZeroX, LLC transferred control to the Ooki DAO, certain Ooki Token

18  
19  holders voted unanimously, pursuant to publicized governance protocols, to approve the release

---

[15]     *See Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 819-20 (9th Cir. 1996); *Assoc. Students of the University of Cal. at Riverside v. Kleindienst*, 60 F.R.D. 65, 67 (C.D. Cal. 1973) ("[W]here, as here, a federal substantive right is claimed, federal courts must apply federal and not state law in determining what constitutes an unincorporated association for capacity purposes.").

[16]     *See, e.g.*, *So. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 927 (9th Cir. 2014) (holding that former incorporated entity promoting competitive play of darts whose corporate powers had been suspended was an unincorporated association under federal law); *Heinold Hog Market, Inc. v. McCoy*, 700 F.2d 611, 613-14 (10th Cir. 1983) (holding that the "National Commodity Exchange" ("NCE"), an affiliate of an organization devoted to tax reform that converted customers' federal reserve notes to gold and silver and then back to federal reserve notes to pay customer creditors, was an unincorporated association where multiple individuals operated the NCE with the purpose of allowing customers to pay creditors without generating a paper trail in the Federal Reserve System); *Seattle Affiliate of October 22nd Coalition to Stop Police Brutality, Repression and the Criminalization of a Generation v. City of Seattle*, No. C04 0860L, 2005 WL 3418415, at *2 (W.D. Wash. Dec. 12, 2005) (holding that local advocacy group was an unincorporated association despite that group did not have an official "membership" list where group had existed in city for years; operated as a local affiliate of a national group; participated in publications, events, and rallies; and utilized an egalitarian, volunteer-oriented structure to meet its objectives).

20
21
22
23
24
25
26
27
28

of funds from this common Treasury for marketing, operations, development, community management, and legal expenses associated with the Ooki Protocol.  ECF No. 1 ¶ 44.  There can be little dispute that, in so doing, that group of individuals acted by mutual consent to pursue the common objective of governing—directing the operation of, marketing, and making available to the public—the Ooki Protocol and, thus, carrying on the business of bZeroX, LLC.[17]

   That DAOs can be held liable as unincorporated associations is not a novel proposition. Many commentators—including Andreessen Horowitz itself and other prominent industry stakeholders—have publicly acknowledged this unremarkable proposition.  For example, Andreessen Horowitz has written:

> Unfortunately, a DAO's decision to not create a legal entity does
> not offer protection from responsibilities that may arise in the
> operation of a DAO.  From a legal perspective, when two or more
> individuals are engaged in even a tenuous business relationship,
> the imputed structure is that of a general partnership . . . .
> Unincorporated associations are formed when a group agrees to
> perform a task together, even without paperwork or formality.  If
> the purpose of the unincorporated association includes the intent to
> make a profit, then a general partnership has been formed.[18]

---

[17]  Contra the authorities cited *supra* at 18 & n. 15, the Andreessen Motion and DEF Motion incorrectly state that California law, not federal law, determines whether the Ooki DAO is an unincorporated association.  *See* Andreessen Motion at 3-9; DEF Motion at [ECF pages] 13-15.  The Andreessen Motion further suggests that even if federal law defines an unincorporated association for capacity purposes, a plaintiff must further allege that the association meets the (assertedly narrower) California definition of an unincorporated association before it can serve that association under California law.  As discussed above, this argument is misplaced because the CFTC has not served the Ooki DAO under the unincorporated association-specific provisions of Cal. Civ. Proc. Code § 416.40 and Cal Corp. Code § 18220.  Moreover, this argument is also incorrect because it would effectively allow state-law definitions of unincorporated associations to veto the federal law capacity determination by rendering entities that meet the latter definition but not the former incapable of receiving service.

  Nevertheless, the Ooki DAO is an unincorporated association under the California definition of the term, which is similar to the federal law definition.  *See* Cal. Corp. Code § 18035(a) ("'Unincorporated association' means an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not.").  As discussed above, *see supra* n. 11, the Andreessen Motion contends that the CFTC has failed to allege that the Ooki DAO meets this definition because it has not alleged that the Ooki DAO was organized for a lawful purpose.  But unlike the criminal gang referenced in the Andreessen Motion, the Ooki DAO operates and markets a for-profit trading platform for leveraged and margined retail commodity transactions, an enterprise that is not intrinsically unlawful as long as it is operated in accordance with the CEA and CFTC Regulations.  The Ooki DAO also engages in other perfectly lawful activities related to the business it runs, such as voting to release funds from its Treasury to compensate victims of a security breach and theft of funds.  *See* ECF No. 1 ¶ 45.

[18]  *See* Andreessen Horowitz, *Legal Framework for DAOs* at 12-13 & n.27, *available at*

1

2    As a result, Andreessen Horowitz has recommended various entity structures that DAOs might

3    adopt to limit liability and facilitate their activities, including where, as here, among other things,

4    the DAO "exercise[s] dominion and control over income generated by the network or protocol"

5    or "exercise[s] dominion and control over a treasury."[19]

6            Andreessen Horowitz is not alone in agreeing that DAOs can be unincorporated

7    associations.  For example, counsel for bZeroX, LLC and its founders wrote an article noting that

8    "[t]here is a risk the DAO could be considered a general partnership or unincorporated

9    association."[20]  Another commentator noted the risk of DAOs being deemed general partnerships

10   or unincorporated associations and observed that several states have established LLC-like

11   registration frameworks for DAOs to address related liability risks for individual members.[21]

12   Yet another observed that, "[w]ithout a recognized corporate form, the law assumes that

13   individuals working together in a common enterprise have formed a general partnership and,

14   unlike stockholders, the token holders would not be immune from personal liability resulting

15   from the DAO's conduct."[22]  Accordingly, despite what the Motions for Reconsideration assert

16

17

18

19   https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-1.pdf; *see also, e.g.*, Andreessen Horowitz, *Letter to U.S. Senate Committee on Banking Housing, and Urban Affairs re: Request for Proposals for Clarifying Laws Concerning Cryptocurrency and Blockchain Technologies*, at 6, Sept. 27, 2021, *available at* https://a16z.com/wp-content/uploads/2021/10/Andreessen-Horowitz-Senate-Banking-Proposals.pdf (proposing to define DAOs as unincorporated associations for federal income tax purposes).

20

21

22   [19]    *See* Andreessen Horowitz, *A Legal Framework for Decentralized Autonomous Organizations Part II: Entity Selection Framework* at 16, *available at* https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-2.pdf.

23

24   [20]    *See, e.g.*, Jason Gottlieb, Daniel Isaacs, Alexandra Wang, *How to Do Business as a DAO*, CoinDesk, Oct. 20, 2021, *available at* https://www.coindesk.com/policy/2021/10/20/how-to-do-business-as-a-dao/.

25   [21]    Zack Smith, *The Legal Status of Decentralized Autonomous Organizations:  Do DAOs Require New Business Structures?  Some States Think So.*, Heritage Foundation, June 1, 2022, *available at*

26   https://www.heritage.org/government-regulation/commentary/the-legal-status-decentralized-autonomous-organizations-do-daos.

27   [22]    Andrew Gilbert, *Decentralized Autonomous Organizations: The New LLCs?*, Bloomberg Law, Aug. 2,

28   2022, *available at* https://news.bloomberglaw.com/securities-law/decentralized-autonomous-organizations-the-new-llcs.

and suggest, there is ample support for the Court to conclude that the Ooki DAO is an unincorporated association.

Nothing in the Motions for Reconsideration compels a different conclusion.   The Motions for Reconsideration first assert that a decentralized autonomous organization is not really an "organization" at all, but is simply "technology" that is immune from suit and service.[23] But this confuses the underlying facts.  The Ooki *Protocol* is software-based technology that functions like a trading platform; the Ooki *DAO* is the organization of voting token holders that controls it.

Two Motions for Reconsideration concede that the Ooki DAO does, in fact, involve a group of people making decisions, but argue that allegedly inconsistent voting by individual members, divergent views among voting members, and allegedly changing membership composition over time somehow disqualifies the Ooki DAO as an unincorporated association.[24]

First, the CFTC notes that the Motions for Reconsideration base these arguments on asserted facts about the Ooki DAO (or about hypothetical DAOs who are not before the Court) that are unsupported, untested, unripe, and inappropriate for consideration at this stage.[25]  At

---

[23]    *See, e.g.*, DEF Motion at [ECF page] 8 (asserting that "Ooki DAO is an open-source technology . . . [not] an ordinary business entity . . . ."); Paradigm Motion at [ECF page] 16 (arguing a DAO is simply "a technological tool"); LeXpunK Motion at 9 (asserting that the Ooki DAO is "more like autonomous software" than an association "controlled by people").

[24]    *See, e.g.*, DEF Motion at [ECF pages] 14-15 (asserting that governance token holders may vote with different purposes and may have different views as to the best way to govern the Ooki Protocol); Paradigm Motion at [ECF pages] 16-17 (asserting that the hypothetical specter of different individuals voting on different questions over time undermines that anyone "consented" to participation in a single association or that anyone acted with a common purpose; and arguing that there may be a time when a hypothetical voting member ceased being a member of the unincorporated association).

[25]    *See, e.g.*, DEF Motion at [ECF page] 8 (asserting that DAOs often lack central organization or management, and many DAO token holders often lack coordination or common objectives"); Paradigm Motion at [ECF page] 3 ("A person might choose to participate once or many times, but the community of people making decisions on the DAO is fluid, ever-changing, and different for each proposal on which they vote."); Paradigm Motion at [ECF page] 13 ("Token holders in a particular DAO do not, however, 'operate' or 'control' the underlying protocols.  Their voting rights are typically limited . . . ."); LeXpunK Motion at 10 ("Although OOKI holders, or the Ooki DAO, may be able to 'govern' the Ooki Protocol through their OOKI tokens, such governance is highly

- 20 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14

most, the Court should consider the CFTC's allegations, not contrary, unsupported, and

speculative factual assertions by *Amici Curiae*.  Second, the *Amici's* unsupported speculative

assertions—that DAO members did not vote consistently or uniformly, that not all DAO

members participate in governance with the same regularity, and that DAO members do not

necessarily share the same beliefs about the objectives of the association—do not undermine the

existence of an unincorporated association, but are simply common features of such associations.

For example, in *Satanic Temple, Inc. v. City of Scottsdale*, 423 F. Supp. 3d 766, 773 (D. Ariz.

2019), the court rejected the defendant's argument that a religious group was not an

unincorporated association because "individuals apparently became members at different times,

they lack uniform beliefs, and they operated through a council instead of by mutual consent[,]"

noting that Defendant cited no authority suggesting that such facts disqualfied a group of persons

from being an unincorporated association.

15
16
17
18
19
20
21
22
23
24
25
26

      What the Motions for Reconsideration actually seem to be arguing is that some

hypothetical individuals could, in theory, have defenses to the argument that they were Ooki

DAO members at all or during specific periods (whether because they voted once and then

stopped voting; joined late; voted only on an inconsequential question; voted against any alleged

unlawful conduct; sold their tokens; or took some other action that the individual might assert is

relevant to the disposition of his or her liability).  But, as discussed above, those questions would

only theoretically arise in a hypothetical lawsuit that charged specific individuals, which is not

this lawsuit.  And those questions are not relevant to the central question at issue here: whether

the Ooki DAO exists as a distinct organization and can thus be served.  For the reasons discussed

herein, it clearly does and clearly can.

27
28

limited, technologically constrained and not like 'governance' as it exists in traditional corporate structures.").

1
2
3
4
5
6
7
8

        To illustrate the problematic nature of the arguments presented by *Amici*, imagine a suit against a general partnership.  Those who were partners when the partnership was formed may not all remain partners throughout the applicable period; individual partners may vote different ways on partnership business, and may not even vote on every relevant question; may have joined or left the partnership in the middle of the applicable period; and may even have an individual defense that s/he was not a partner at all.  But those facts, even if true, would not undermine that the partnership itself exists.  Likewise here.[26]

9
10
11
12
13
14
15
16

        Finally, there is a broader context at play the Court should not ignore.  As alleged, the Ooki DAO was created, at least in part, with evasive purpose—to avoid obligations to comply with the law.  The bZeroX, LLC founders believed DAOs could not be held responsible for violating the law.  The Motions for Reconsideration take this one step further—that the Ooki DAO does not even *exist* in a form that could enable suit or service, even though the Ooki DAO maintains a common Treasury in its own name and publishes specific governance protocols that

17
18
19
20
21
22
23
24

---

[26]        The Motions for Reconsideration further argue that, to serve the Ooki DAO under FRCP 4(h)(1), the CFTC must not only establish that the Ooki DAO is an unincorporated association (i.e., the kind of entity that can be served under that provision), but also that it is a "person" under the CEA.  *See, e.g.*, DEF Motion at [ECF pages] 11, 13-14; LeXpunK Motion at 8-11 (quoting the CFTC Commissioner who dissented from the CFTC's enforcement actions, articulating a minority, nonbinding view).  "Persons" under the CEA include "associations," and there is no authority suggesting "associations" excludes "unincorporated associations."  *See* 7 U.S.C. § 1a(38) ("The term 'person' . . . includes individuals, associations, partnerships, corporations, and trusts.").  But this is extremely far afield from any issue before the Court.  It speaks to whether the CEA in fact prohibits conduct by an unincorporated association like the Ooki DAO, and thus whether the CFTC has stated a claim against the Ooki DAO.  The issue before the Court is much narrower—whether the Ooki DAO is the kind of unincorporated association that can be served under FRCP 4(h)(1).  In addition, the CFTC notes that the views of an individual commissioner do not represent the official legal position of the CFTC, or otherwise constitute "institutional [CFTC] actions."  *See, e.g.*, *Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1132 (D.C. Cir. 1975) (citing *Ill. Citizens Comm. for Broad. v. FCC*, 515 F.2d 397, 402 (D.C. Cir. 1975)).

25
26
27
28

        The Paradigm Motion also argues that individuals can only be held liable under the CEA for direct violations or on a controlling person, aiding and abetting, or agency basis, not as members of an unincorporated association.  Paradigm Motion at [ECF pages] 19-20.  First, as stated throughout this opposition, this argument has no purchase in a lawsuit against an entity only, particularly an entity that, as an association, is specifically enumerated as a "person" under the CEA.  Second, this argument ignores the numerous bases for liability the CFTC has relied on that are supplied by federal common law, such as the common enterprise, alter ego, and relief defendant doctrines.

1    enable members to come together to market, direct, and offer to the public leveraged or margined

2    retail commodity transactions regulated by the CEA and CFTC Regulations.  *Amici* urge this

3    Court to adopt a rule that requires the CFTC—and, potentially, any other person with a claim

4    involving this trading platform, such as a defrauded customer—to identify, locate, sue, and serve

5    a collection of pseudonymous individuals—none of whom individually controlled the Ooki

6    DAO's conduct or its common assets (including those contained in the Ooki DAO's Treasury),

7    and whose personal assets may be insufficient to compensate those plaintiffs for their losses,

8    instead of the entity that holds itself out to the public as the operator of this platform.

9            Taken to its logical end, when the Motions for Reconsideration assert that DAOs are not

10   unincorporated associations, what they are ultimately saying is that DAOs are nothing—or at

11   least nothing that can be sued, or served, or held accountable for running a for-profit trading

12   platform that operates in violation of the CEA and a CFTC Regulation, or for any other legal

13   violations.  Accordingly, per the Motions for Reconsideration, simply switching business forms

14   from an LLC to a DAO makes an entity immune from suit and outside any government's

15   enforcement reach.  For the reasons stated herein, this ignores the relevant facts and is not the

16   law, and the CFTC respectfully submits that this Court should not endorse that radical and

17   dangerous proposition.[27]

---

[27]      In addition, the Motions for Reconsideration raise a litany of additional arguments that are not relevant to the Motion for Alternative Service, and thus should not serve as bases for reconsidering the Order Upholding Service.  Specifically, the DEF Motion asserts that the CFTC has not promulgated regulations related to DAOs or explained how a DAO could register with the CFTC, *see* DEF Motion at [ECF page] 9; but this does not undermine that the CFTC may also file a lawsuit against a DAO that breaks the law and serve that DAO following applicable law.  Likewise, the LeXpunK Motion asserts that the CFTC's determinations in this matter violate the Administrative Procedure Act, which is interrelated with LeXpunK's argument that the CFTC has not sufficiently alleged that the Ooki DAO is a "person" under the Act.  LeXpunK Motion at 9-10, 15-19; *see also* DEF Motion at [ECF page] 9 (asserting that the CFTC's action is unauthorized pursuant to *West Virginia v. EPA*, 142 S. Ct. 2587 (2022)).  However, as described above, these arguments are both wrong (the CEA permits suits against "associations," and there is no reason to conclude that this excludes "unincorporated associations") and unripe (as it speaks to whether the CFTC has stated a claim under the CEA, not the sufficiency of service).  Finally, the LeXpunK Motion cites inapposite precedent to assert that the CFTC should have asserted the citizenship of each member of the Ooki DAO unincorporated association, *see* LeXpunK Motion at 15, which, of course, is required only in diversity actions, as the case LeXpunK cites makes clear.  The CFTC reiterates, these have nothing to do

- 23 -

III.     **Conclusion**

        The issue before the Court is actually quite narrow.  The CFTC followed applicable law

to serve the entity it sued.  Thus, the CFTC respectfully requests that the Court deny the Motions

for Reconsideration and leave in place its Order Upholding Service.


Dated:  November 14, 2022                    Respectfully submitted,

                                             **COMMODITY FUTURES TRADING**
                                             **COMMISSION**


                                             By:  /s/ Anthony C. Biagioli
                                             Tom Simek (DC Bar # 57268), tsimek@cftc.gov
                                             TRIAL COUNSEL
                                             Anthony C. Biagioli (MO Bar # 72434),
                                             abiagioli@cftc.gov
                                             Attorneys for Plaintiff
                                             COMMODITY FUTURES TRADING
                                             COMMISSION
                                             2600 Grand Boulevard, Suite 210
                                             Kansas City, MO  64108
                                             (816) 960-7700

---

with whether it properly served the Ooki DAO with its Complaint.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Certificate of Service</u>**

I hereby certify that on November 14, 2022, I caused a copy of the foregoing to be filed with the Clerk of the Court via the CM/ECF system as well as provided to the Defendant Ooki DAO through the Ooki DAO's Help Chat Box on the Ooki DAO website as well as by posting notice of the foregoing to the Ooki DAO's Online Forum.

In addition, I caused a copy of the foregoing to be provided via email to counsel for *Amici* LeXpunK (smoniz@brownrudnick.com, spalley@brownrudnick.com, ag@agolubitsky.com), DeFi Education Fund (oswell@sullcrom.com, ostragerae@sullcrom.com, mcdonaldj@sullcrom.com, richardsond@sullcrom.com), Paradigm (rodrigo@paradigm.xyz, etung@jonesday.com, jburnham@jonesday.com, jsterling@jonesday.com, ihanna@jonesday.com), and Andreessen Horowitz (douglas.yatter@lw.com, benjamin.naftalis@lw.com, samir.deger-sen@lw.com, matt.rawlinson@lw.com).

*/s/ Anthony C. Biagioli*
Counsel for Plaintiff

PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTIONS FOR RECONSIDERATION