Douglas K. Yatter (Bar No. 236089)
 douglas.yatter@lw.com
Benjamin Naftalis (*admitted pro hac vice*)
 benjamin.naftalis@lw.com
Samir Deger-Sen (*admitted pro hac vice*)
 samir.deger-sen@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
+1.212.906.1200

Matthew Rawlinson (Bar No. 231890)
 matt.rawlinson@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
+1.650.463.3076

*Counsel for* Amicus Curiae
*Andreessen Horowitz*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>*Plaintiff*,<br><br>v.<br><br>OOKI DAO (formerly d/b/a bZx DAO), an unincorporated association,<br><br>*Defendant*. | Case No. 3:22-cv-5416-WHO<br><br>**REPLY *AMICUS CURIAE* BRIEF OF ANDREESSEN HOROWITZ REGARDING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**<br><br>Hearing Date:   December 7, 2022<br>Hearing Time:   2:00 PM<br>Courtroom:     2<br>Judge:         Hon. William H. Orrick |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I. The CFTC Concedes that California Law Governs Its Effort To Serve the Ooki DAO as an Unincorporated Association ............................................................. 3

II. California Law Does Not Allow the CFTC's Leap to Alternative Service ...................... 3

III. The CFTC's Opposition Brief Does Not Overcome Its Failure To Allege Lawful Purpose ................................................................................................................ 7

IV. The CFTC Cannot Skip the Additional Requirement To Identify and Serve an Individual Member of the DAO ................................................................................ 8

V. The CFTC's Effort To Recast the Complaint, While Helpful, Does Not Overcome the Service Deficiency that Will Set This Case on an Untenable Path .................................................................................................................................. 10

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Black v. Dublin EMS, LLC*,
    No. 16-cv-1340, 2017 WL 1150661 (M.D. Pa. Mar. 28, 2017) ................................................6

*Ellawendy v. Wormuth*,
    No. 21-cv-6618, 2022 WL 7475916 (N.D. Cal. Sept. 16, 2022) ...................................1, 8, 12

*In re Facebook, Inc. Sec. Litig.*,
    477 F. Supp. 3d 980 (N.D. Cal. 2020) .................................................................................1, 8

*Facebook, Inc. v. Banana Ads, LLC*,
    No. 11-cv-3619, 2012 WL 1038752 (N.D. Cal. Mar. 27, 2012) ...............................................5

*Fed. Ins. Co. v. Caldera Med., Inc.*,
    No. 15-cv-393, 2015 WL 12655601 (C.D. Cal. Apr. 8, 2015) .........................................3, 4, 5

*Michael Kors, LLC v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Schedule "A"*,
    No. 20-cv-62455, 2020 WL 8231117 (S.D. Fla. Dec. 4, 2020) ................................................5

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ..................................................................................................................9

*Oh My Green, Inc. v. Cuffe*,
    No. 20-cv-2509, 2020 WL 3213715 (C.D. Cal. Mar. 20, 2020) ...............................................4

*Recouvrer v. Carreon*,
    No. 12-cv-3435, 2012 WL 12920768 (N.D. Cal. 2012) ...........................................................7

*People ex rel. Reisig v. Broderick Boys*,
    149 Cal. App. 4th 1506 (Cal. Ct. App. 2007) .......................................................................1, 4

*Rio Props., Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ..................................................................................................5

*S. Cal. Darts Ass'n v. Zaffina*,
    762 F.3d 921 (9th Cir. 2014) ....................................................................................................6

*Searles v. Archangel*,
    60 Cal. App. 5th 43 (Cal. Ct. App. 2021) ........................................................................3, 4, 5

*Splash News & Picture Agency, LLC v. Benson*,
    No. 20-cv-10864, 2021 WL 3598736 (C.D. Cal. May 19, 2021) .............................................4

*Sumaron v. Int'l Longshoremen's & Warehousemen's Union*,
    450 F. Supp. 1026 (C.D. Cal. 1978) .................................................................................11

*United Health Servs., Inc. v. Meyer*,
    No. 12-cv-6197, 2013 WL 843698 (N.D. Cal. Mar. 6, 2013) ...................................................4

**STATUTES**

Cal. Corp. Code
    § 18035(a) ..............................................................................................................................1
    § 18220 ........................................................................................................................1, 3, 10

Civ. Proc. Code
    § 413.30 ........................................................................................................................1, 2, 3, 4
    § 416.40 ..............................................................................................................................1, 3
    § 416.90 ..................................................................................................................................4

**RULES**

Fed. R. Civ. P.
    4 ..............................................................................................................................6, 7, 12
    4(e)(1) ................................................................................................................................3, 6
    4(f)(3) ......................................................................................................................................5
    17 ............................................................................................................................................6
    17(b) ........................................................................................................................................6
    17(b)(3) ...................................................................................................................................6
    17(b)(3)(A) ..............................................................................................................................6

**TREATISES**

50 C.J.S. *Judgments* § 1107 ...........................................................................................................11

5C *Federal Practice and Procedure* § 1363 (3d ed., Apr. 2022 update) ........................................5

**OTHER AUTHORITIES**

*In re bZeroX, LLC, Tom Bean, and Kyle Kistner*,
    CFTC No. 22-31, 2022 WL 4597664 (Sept. 22, 2022) ...........................................................9

*Dissenting Statement of CFTC Commissioner Summer K. Mersinger Regarding Enforcement
    Actions Against 1) bZeroX, LLC, Tom Bean, and Kyle Kistner; and 2) Ooki DAO* (Sept. 22,
    2022), https://tinyurl.com/56zpa9z8 .......................................................................................2

Jordan Teague, *Starting a DAO in the USA? Steer Clear of DAO Legislation*, The Defiant (June
    7, 2022), https://thedefiant.io/starting-a-dao-in-the-usa-steer-clear-of-dao-legislation...........10

M. Jennings & D. Kerr, *A Legal Framework for Decentralized Autonomous Organizations* (June
    2, 2022), https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-
    2.pdf .......................................................................................................................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

ANDREESSEN HOROWITZ'S REPLY *AMICUS* BRIEF
REGARDING MOT. FOR ALT. SERV.
CASE NO. 3:22-cv-5416-WHO

# INTRODUCTION

The CFTC does not dispute that service in this case is governed by California law. Opp. to Mot. for Reconsideration ("Opp. Br.") 10. Nor does it deny that California law, for service on an unincorporated association, requires the plaintiff to (1) allege a common lawful purpose and (2) identify one or more persons through whom the association can be served. Opp. Br. 12; *see* Cal. Civ. Pro. Code § 416.40; Cal. Corp. Code §§ 18220, 18035(a).

Instead of meeting these two requirements, the CFTC claims it can bypass them altogether by availing itself of California's alternative service provision, Civil Procedure Code § 413.30. But that provision governs service only where "no provision is made in this chapter or other law for the service of summons." Cal. Civ. Pro. Code § 413.30. Here, there *is* a "provision [] made in this chapter" for service upon an "unincorporated association." *Id.* § 416.40; Cal. Corp. Code § 18220. As the CFTC has unequivocally pled that the DAO is an unincorporated association, the CFTC must endeavor to effect service by the methods established for serving such an entity.

The CFTC does not meet this burden. As to the requirement that it allege a common lawful purpose, the CFTC claims now for the first time that there are various lawful purposes of the Ooki DAO. Opp. Br. 18 n.17. But those assertions are in tension with the Complaint, *see People ex rel. Reisig v. Broderick Boys*, 149 Cal. App. 4th 1506, 1520-22 (Cal. Ct. App. 2007); a16z Br. 5-7, and it is settled law that a complaint cannot be amended via an opposition to a motion, *see Ellawendy v. Wormuth*, No. 21-cv-6618, 2022 WL 7475916, at *5 (N.D. Cal. Sept. 16, 2022) (citing *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1020 (N.D. Cal. 2020)). The CFTC's newfound contention that the Ooki DAO engages in numerous "perfectly lawful activities," Opp. Br. 18 n.17, is inconsistent with its pleading and only highlights the deficiency of the Complaint in failing to allege those activities.

This requirement is no mere formality. Establishing which associational purposes are lawful will have important substantive consequences for who may be held liable and how the association may reasonably be defined. For example, the CFTC claims it would be "perfectly lawful" for DAO members to "vot[e] to release funds from its Treasury to compensate victims of a security breach." *Id.* But at the same time, it defines the association as those "governance token

holders who have voted those tokens to govern." *Id.* at 10 (citing Compl. ¶ 11). Thus, under the CFTC's theory, even if a token holder's *only* vote is the "perfectly lawful" release of treasury funds, he or she nonetheless can be jointly and severally liable for all of the association's purportedly unlawful acts. That consequence only becomes clear once the CFTC has properly delineated activities that are lawful from those that are unlawful – which underscores the importance of this threshold requirement of California law.

As to the separate requirement that an individual member be identified and served, the CFTC claims it would be infeasible to identify and serve any DAO member. But it does not articulate any adequate efforts it has made to meet this requirement. Instead, it asserts that the DAO "does not authorize anyone to accept service and has no physical address." Opp. Br. 11. Alternative service under California law is permitted when "no provision is made" for traditional service, not simply because a plaintiff claims it is inconvenient. Cal. Civ. Pro. Code § 413.30. That there may be challenges in serving the DAO does not allow a free pass to accomplish service in a way that maximizes the plaintiff's convenience and minimizes the chance of anyone appearing to defend the action and subject it to adversarial testing.

Ultimately, the CFTC's Opposition underscores that it has been too hasty here. In its effort to pursue this new kind of enforcement action, *see Dissenting Statement of CFTC Commissioner Summer K. Mersinger Regarding Enforcement Actions Against 1) bZeroX, LLC, Tom Bean, and Kyle Kistner; and 2) Ooki DAO* (Sept. 22, 2022), https://tinyurl.com/56zpa9z8 (criticizing the Commission for making the "consequential decision" to pursue this matter in an enforcement action "with no public notice or input whatsoever"), the CFTC has failed to make adequate efforts to accomplish service in the way California law requires. While many aspects of this case may be novel, California's service requirements are not, and they remain vitally important in ensuring procedural fairness. The Court should reconsider its order granting alternative service and decline to approve the CFTC's request at this stage.

# ARGUMENT

## I. The CFTC Concedes that California Law Governs Its Effort To Serve the Ooki DAO as an Unincorporated Association

Consistent with its motion for alternative service, the CFTC concedes that California law governs its service efforts in this case. Opp. Br. 10; Mot. for Alt. Serv. 7; a16z Br. 3-4. Specifically, the CFTC recognizes that it "must serve the Ooki DAO in a manner prescribed by [Federal Rule of Civil Procedure] 4(e)(1)," which allows service under "California state law service rules." Opp. Br. 10.

Beyond that acknowledgement, the Opposition does not seriously engage with the requirements of California law. The CFTC alleges in its Complaint that the Ooki DAO is an unincorporated association, and it repeatedly describes the Ooki DAO as an unincorporated association in its motion for alternative service. Compl. ¶¶ 2, 11, 47, 60, 67, 72; Mot. for Alt. Serv. 3, 5, 8. California law specifically provides a method to serve unincorporated associations. Cal. Civ. Pro. Code § 416.40; Cal. Corp. Code § 18220. To comply with those methods, a plaintiff must allege that the unincorporated association has a lawful purpose and identify individual members of the association to be served. *See* a16z Br. 4-8. This much is common ground. *See* Opp. Br. 12 (acknowledging that these requirements reflect "California law regarding service on unincorporated associations").

## II. California Law Does Not Allow the CFTC's Leap to Alternative Service

While noting these requirements of California law, the CFTC argues that it can sidestep them by using California's alternative service provision, Cal. Civ. Pro. Code § 413.30. Opp. Br. 10-13. But as explained in a16z's opening *amicus* brief, a16z Br. 9-11, it is a "necessary prerequisite" of service under Section 413.30's alternative service provision that there be no enumerated provision available for service on the type of defendant a plaintiff seeks to sue. *Searles v. Archangel*, 60 Cal. App. 5th 43, 53-54 (Cal. Ct. App. 2021) (holding that existence of statute providing for service of civil harassment restraining order precluded court from "authoriz[ing] an alternative method of service" pursuant to Section 413.30). The CFTC cannot use the alternative service provision to "circumvent" California's statutorily provided method for service. *Fed. Ins.*

*Co. v. Caldera Med., Inc.*, No. 15-cv-393, 2015 WL 12655601, at *2 (C.D. Cal. Apr. 8, 2015) (declining to permit alternative method of serving authorized agent because Civil Procedure Code § 416.90 "provid[ed] for service of summons upon authorized agents"); *see also Oh My Green, Inc. v. Cuffe*, No. 20-cv-2509, 2020 WL 3213715, at *2 (C.D. Cal. Mar. 20, 2020) (similar); *Splash News & Picture Agency, LLC v. Benson*, No. 20-cv-10864, 2021 WL 3598736, at *2 (C.D. Cal. May 19, 2021) (similar). The Opposition fails to acknowledge, let alone rebut, any of the authority on this aspect of Section 413.30.

Instead, the CFTC offers three other arguments in support of alternative service. None is persuasive. *First*, the CFTC argues that it should be permitted to avail itself of alternative service on the Ooki DAO notwithstanding its alleged status as an unincorporated association because the statutes for serving unincorporated associations "did not *readily* provide for service on an organization like the Ooki DAO." Opp. Br. 12 (emphasis added). But inconvenience or an obstacle to service does not permit the CFTC to turn immediately to alternative service. *See Searles*, 60 Cal. App. 5th at 53-54 (rejecting motion for alternative service on defendant who was evading service); a16z Br. 10. The CFTC states that the Ooki DAO does not have a publicly posted address, does not identify officers or agents, and has not registered in any jurisdiction. *See* Mot. for Alt. Serv. 4-5. But as the California cases against street gangs as unincorporated associations show, the lack of such information does not obviate the need to comply with California law for service on an unincorporated association. *See People ex rel. Reisig v. Broderick Boys*, 149 Cal. App. 4th 1506, 1513 (Cal. Ct. App. 2007) (upholding requirements for serving an unincorporated association even though "Broderick Boys is not registered as a California corporation, limited liability company or partnership, and it has no address"); *see also* a16z Br. 6-7. Even the authority cited by the CFTC permitting service pursuant to Section 413.30 – which does not address service on an unincorporated association – shows that more is required of a plaintiff attempting service. Opp. Br. 11 n. 9 (citing *United Health Servs., Inc. v. Meyer*, No. 12-cv-6197, 2013 WL 843698, at *1-2 (N.D. Cal. Mar. 6, 2013) (recounting plaintiff's attempts to

locate and serve defendant, including use of private investigator, before authorizing service via email address that defendant frequently used)).[1]

*Second*, the CFTC asserts that on an "antecedent motion[] for alternative service," there is no need to make a "robust showing[]" that a defendant is "the type of entity covered by" a particular service provision. Opp. Br. 16. According to the CFTC, that inquiry into whether a prerequisite for valid service has been satisfied should not be resolved until the motion to dismiss stage – in other words, it wishes the Court to approve alternative service now and determine whether that service was appropriate later. But a court considering a motion for alternative service has an independent, threshold obligation to ensure that a proposed method of service complies with state law. *See, e.g.*, *Caldera Med., Inc.*, 2015 WL 12655601, at *2. By alleging that the Ooki DAO is an unincorporated association and attempting to serve it as such, the CFTC has put the Complaint's allegations bearing on the "legal status of the party being served" at issue now. 5C *Federal Practice and Procedure* § 1363 (3d ed., Apr. 2022 update). And delaying resolution of the validity of service until a motion to dismiss makes particularly little sense here, because a lack of valid service might mean there will never be a motion to dismiss. If no defendant ever appears, the Court will have to resolve important and novel questions of law in the context of a motion for default judgment, without adversarial testing – precisely what service rules aim to avoid.

The CFTC's cited authority, Opp. Br. 16, is not to the contrary. The decisions cited by the CFTC authorized service on individuals in foreign countries pursuant to Rule 4(f)(3), which permits service by "means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). In those cases, there was no dispute about whether the legal status of any defendant affected the permissibility of a method of service. The relevant prerequisite for valid service in those cases was the absence of an internationally agreed rule prohibiting the type of service requested – a prerequisite that was undisputedly satisfied in both cases. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002); *Michael Kors, LLC v. Individuals, P'ships, &*

---

[1] The CFTC notes that the federal district court decision in *Meyer* "catalogued cases" permitting alternative service by email, such as *Facebook, Inc. v. Banana Ads, LLC*, No. 11-cv-3619, 2012 WL 1038752, at *3 (N.D. Cal. Mar. 27, 2012), but the California appellate court in *Searles* rejected that line of cases. 60 Cal. App. 5th at 53 (citing *Banana Ads* and declining to follow its approach).

*Unincorporated Ass'ns Identified on Schedule "A"*, No. 20-cv-62455, 2020 WL 8231117, at *1 (S.D. Fla. Dec. 4, 2020). Neither decision suggests that, if such a prohibition existed, the proper course would have been to authorize service under a different standard and await litigation of the question on a subsequent motion to dismiss, as the CFTC would have the Court do here under Rule 4(e)(1). That sufficiency of service *can* be litigated on a motion to dismiss does not warrant setting service requirements aside when considering a motion for alternative service.

*Third*, the CFTC argues that a federal definition of unincorporated association can overcome a failure to meet state-law service requirements. Opp. Br. 17-18. To support this view, the CFTC cites Federal Rule of Civil Procedure 17, which states that an unincorporated association may have "[c]apacity to sue or sued" even if it does not meet state law requirements that ordinarily govern an unincorporated association's capacity to sue. Fed. R. Civ. P. 17(b)(3) (providing that, "for all other parties" that are not individuals or corporations, capacity is governed "by the law of the state where the court is located"). This is because "a partnership or other unincorporated association with no such capacity under [a forum] state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A). Even if the CFTC establishes that its action enforces a "substantive right," the question here is not about capacity but rather about service of process. None of the cases cited by the CFTC (Opp. Br. 17 n.16) suggests that a capacity determination "governed by Federal Rule of Civil Procedure 17(b)," *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 926 (9th Cir. 2014), overrides Rule 4(e)(1)'s requirement to follow state law for purposes of service. *See Black v. Dublin EMS, LLC*, No. 16-cv-1340, 2017 WL 1150661, at *4 (M.D. Pa. Mar. 28, 2017) ("a party cannot pick and [choose] individual provisions from the '[F]ederal and [State R]ules to manufacture proper service'" (citation omitted)). Rule 4 and Rule 17 place independent restrictions on a plaintiff; simply showing that the DAO may have capacity to be sued under Rule 17 does not establish that it can be served pursuant to Rule 4 as an unincorporated association without regard to state law.[2] The CFTC has provided no basis to ignore a requirement that is

---

[2] The CFTC argues in a footnote that following Rule 4 here would allow service requirements to "veto" capacity determinations. Opp. Br. 18 n.17. That simply does not follow. A capacity to be sued is

1  "essential to establish[ing] that personal jurisdiction exists over the defendant." *Recouvrer v.*
2  *Carreon*, No. 12-cv-3435, 2012 WL 12920768, at *1 (N.D. Cal. 2012).

3  Thus, none of the CFTC's arguments supports its immediate effort to rely on alternative
4  service, when California law specifies a mechanism for serving an unincorporated association and
5  the CFTC has not met its requirements.

**III.   The CFTC's Opposition Brief Does Not Overcome Its Failure To Allege Lawful Purpose**

The Opposition's fallback arguments do not fulfill the requirements for serving the Ooki DAO as an unincorporated association. As to the lawful purpose requirement, the CFTC's brief describes lawful purposes it believes can be ascribed to the Ooki DAO. Opp. Br. 18 n.17. These statements appear to be an important acknowledgement by the CFTC that participation in DAO governance is not inherently unlawful, even if the DAO becomes associated with a protocol that can be used to engage in allegedly unlawful transactions. But these statements in the CFTC's brief contrast sharply with the Complaint's allegations. The Opposition states that the Ooki DAO's trading platform "is not intrinsically unlawful" because "leveraged and margined retail commodity transactions" could be offered "in accordance with the CEA and CFTC Regulations." *Id.* But the Complaint, of course, does not allege that the Ooki DAO had the purpose of "operat[ing] in accordance with the CEA and CFTC Regulations." *Id.* It alleges the opposite. Compl. ¶¶ 41, 46. The Complaint is unequivocal in its assertions about the unlawful design of the Ooki DAO. *See id.* at ¶ 3 ("A key bZeroX objective in transferring control of the bZx Protocol (now the Ooki Protocol) to the bZx DAO (now the Ooki DAO) was to attempt to render the bZx DAO, by its decentralized nature, enforcement-proof.").

The Opposition also states that the Ooki DAO "engages in other perfectly lawful activities related to the business it runs, such as voting to release funds from its Treasury to compensate victims of a security breach and theft of funds." Opp. Br. 18 n.17 (citing Compl. ¶ 45). But the Complaint asserted that this distribution of funds was necessary because of the DAO's lack of

---

not coextensive with the law governing service. In fact, the CFTC's position would "veto" Rule 4's service requirements by substituting a federal definition of unincorporated association, contrary to Rule 4's instruction and the CFTC's own position that California law governs the service inquiry. *Id.* at 10-11.

compliance with "rules applicable to registered entities" that "are designed to prevent and/or mitigate the risk of such incidents" and resulting "customer harm." Compl. ¶ 45. Thus, the CFTC did not mention the vote in the Complaint to show lawful purpose, but rather to "illustrate[] why retail commodity transactions may only lawfully be offered on regulated exchanges, and why only registered [futures commission merchants] may accept customer funds to margin such transactions." *Id.*

The Opposition thus highlights the Complaint's failure to allege a lawful purpose distinct from the alleged wrongdoing. It is this deficiency in the CFTC's allegations – not the Ooki DAO's "lack of a 'lawful purpose,'" Opp. Br. 13 n.11 – that undercuts the CFTC's attempted service. The CFTC's assertion in its Opposition that the Ooki DAO has lawful purposes shows that it likely can satisfy this requirement of California law for serving the DAO as an unincorporated association. But it is well-settled that a party cannot amend its complaint through briefing or oral advocacy. *See Ellawendy v. Wormuth*, No. 21-cv-6618, 2022 WL 7475916, at *5 (N.D. Cal. Sept. 16, 2022) (citing *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980, 1020 (N.D. Cal. 2020)). The lawful purpose requirement provides an important check on expansive theories that threaten individuals with liability without regard for their role in alleged wrongdoing. *See supra* at 1-2; a16z Br. 7-8. Because the CFTC has not satisfied this requirement, its effort to serve the Ooki DAO as an unincorporated association does not comply with California law.

### IV. The CFTC Cannot Skip the Additional Requirement To Identify and Serve an Individual Member of the DAO

The CFTC also seeks to avoid the additional requirement of California law to identify an individual member of the alleged unincorporated association who can be served. The CFTC's motion states that it checked public registries for the Ooki DAO, Mot. for Alt. Serv. 5, even though it knew the Ooki DAO was not registered in any jurisdiction. But the agency has not described adequate efforts to identify individual members, despite its extensive investigatory powers, which include, for example, the ability to analyze and track blockchain transactions and request records from cryptocurrency platforms or financial institutions that may have information associated with specified wallet addresses. *See also* DEF Br. 9-10; LeXpunK Br. 14-15. The Opposition also

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

8

ANDREESSEN HOROWITZ'S REPLY *AMICUS* BRIEF
REGARDING MOT. FOR ALT. SERV.
CASE NO. 3:22-cv-5416-WHO

ignores that the CFTC has already identified two alleged members of the DAO. *See In re bZeroX, LLC, Tom Bean, and Kyle Kistner*, CFTC No. 22-31, 2022 WL 4597664, at *2 (Sept. 22, 2022); a16z Br. 9. The CFTC has not shown that it has used, let alone exhausted, its tools to identify individual members or a proper location for service of process.

Further, the CFTC's attempt to serve the DAO through a message to an online help chat box and a post in an online forum, Opp. Br. 7-8, has not satisfied the requirement to identify a member of the DAO to be served and does not constitute "actual notice," *id.* 10-13. The CFTC defines the Ooki DAO as "governance token holders who have voted those tokens to govern (e.g., to modify, operate, market to the public, and take other actions with respect to) the Ooki Protocol." Opp. Br. 10. A tweet by an unidentified person and a discussion thread in an online forum open to anyone, not just DAO members, does not establish that voting token holders (let alone any identified persons) received notice of the action. Similarly, sending the Complaint to a help chat box – which has not elicited a response, Opp. Br. 10; Snyder Decl. in Support of Mot. for Alt. Serv., Dkt. 11-1 ¶ 12 (stating that "the Ooki DAO has not responded to the request to contact the [CFTC]") – does not establish that voting token holders received the Complaint. Nor do statistics about how many messages or views there have been in a public forum fill this gap – especially where that forum has attracted significant media attention. *See* Opp. Br. 8; Mot. for Alt. Serv. 6. Neither a discussion in the forum about how to respond to the CFTC's action, Opp. Br. 8, nor the October 10 snapshot vote described by the CFTC, Opp. Br. 9, establishes that the CFTC's method of service was "reasonably calculated" to "actually inform[]" voting token holders (let alone any identified persons) about the Complaint, as due process requires. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950) (rejecting sufficiency of service by publication with respect to persons who could be identified through exercise of due diligence). Public discussion about this case – or about *comments about* this case – do not meet the requirement to identify one or more individuals through whom the alleged unincorporated association can be served.

The CFTC also suggests that service on an individual member should not be required because "that approach appears far less likely to achieve actual notice to the Ooki DAO." Opp. Br. 12. The CFTC offers no support for this assertion. And if it were true that service on a member

were not an adequate form of notice, that may suggest the problem lies with the CFTC's treatment of the Ooki DAO as an unincorporated association, not with California law's methods for service on such entities.  California law provides that delivery to an individual member along with mailing to a valid address constitutes adequate service on an unincorporated association.  Cal. Corp. Code § 18220.  The CFTC's statements questioning the adequacy of California's established modes of service provide no reason to disregard state law.

In sum, the CFTC has not shown that the identities and locations of the Ooki DAO's alleged members are beyond reach, and this Court should not permit the CFTC to avoid California law's requirement to identify and serve an individual to effect service on an unincorporated association.  That obligation ensures that a plaintiff identifies a particular party responsible for alleged wrongdoing, rather than attaching liability to a group based on proximity to alleged misconduct.  This requirement of California law should be enforced here.[3]

V.   **The CFTC's Effort To Recast the Complaint, While Helpful, Does Not Overcome the Service Deficiency that Will Set This Case on an Untenable Path**

In response to the points raised by *amici*, the CFTC tries to minimize the stark implications of its Complaint through a series of concessions.  In addition to attempting to posit lawful purposes of the Ooki DAO and seeming to clarify that the CFTC does not view decentralized finance as inherently unlawful, *see supra* at 7-8, the CFTC's Opposition seeks to amend its Complaint in two other fundamental ways.

---

[3]   The Court does not need to assess the writings of Andreessen Horowitz team members to determine whether the Ooki DAO is an unincorporated association (or any other type of entity) for purposes of evaluating the CFTC's motion for alternative service.  But because the CFTC has cited these works, it is important to note that the CFTC urges conclusions that find no support in them or those by other members of the Web3 legal community.  In particular, the CFTC's statement that "Andreessen Horowitz has recommended various entity structures that DAOs might adopt," Opp. Br. 19, omits the conclusion of those writings, namely, that only a specific type of unincorporated association is appropriate for the vast majority of DAOs, *see* M. Jennings & D. Kerr, *A Legal Framework for Decentralized Autonomous Organizations* (June 2, 2022), at 23, 25, https://a16zcrypto.com/wp-content/uploads/2022/06/dao-legal-framework-part-2.pdf, a type of structure the CFTC has not alleged to be at issue here.  Further, both Andreessen Horowitz's work, *see id.* at 31, and the work of others, *see* Jordan Teague, *Starting a DAO in the USA? Steer Clear of DAO Legislation*, The Defiant (June 7, 2022), https://thedefiant.io/starting-a-dao-in-the-usa-steer-clear-of-dao-legislation, show that the LLC entity forms suggested by the CFTC, Opp. Br. 19-20, are not appropriate for many DAOs.

*First*, the Opposition recasts the Complaint's view of who is liable. The Opposition states that any money judgment against the Ooki DAO in this case could be enforced "only against the Ooki DAO's assets" and that, if the CFTC sought to enforce it against "any alleged individual Ooki DAO member," it would have to "institute a subsequent action against, serve, and obtain a judgment against that alleged individual member." Opp. Br. 14. But the Complaint defines the Ooki DAO as the "holders of Ooki Tokens" "who have voted those tokens to govern (e.g., to modify, operate, market, and take other actions with respect to) the Ooki Protocol . . . during the DAO Relevant Period." Compl. ¶ 11. The Opposition thus limits the reach of its claims in a way the Complaint does not. *See id.*, Prayer for Relief ¶ B (seeking injunctive relief against "Defendant Ooki DAO, including all members of the Ooki DAO"); *id.*, Prayer for Relief ¶¶ D, F, G (using the previously defined phrase "Defendant Ooki DAO" in requests for monetary relief).

This concession in the Opposition hardly renders the CFTC's requested relief modest. Though the CFTC has not yet pursued an action against individual members, it makes clear that it may seek to use any judgment in this action against potential individual defendants. The CFTC states that "any alleged individual member would have the opportunity to present any applicable defense to his or her alleged membership in the Ooki DAO." Opp. Br. 14. But it appears the CFTC has in mind that an individual member could argue that they, for example, did not meet the criteria of associational membership established in this action, *not* that they would have the opportunity to argue the association was *wrongly defined in the first place* as encompassing all "token holders who have voted those tokens to govern . . . the Ooki Protocol." *Id.* at 10. In other words, the CFTC does not deny that it may seek, in a subsequent action, to hold an individual member jointly and severally liable for the DAO's alleged wrongdoing, simply because that individual undertook the "perfectly lawful" act of voting their governance tokens for a benign purpose. *See* 50 C.J.S. *Judgments* § 1107 (explaining that members of an unincorporated association may be "bound by a judgment against the association"); *Sumaron v. Int'l Longshoremen's & Warehousemen's Union*, 450 F. Supp. 1026, 1029 (C.D. Cal. 1978) (holding that union member plaintiffs were bound by results of NLRB decisions involving union). Proper service here is necessary to ensure procedural fairness for DAO members and full analysis of the

Complaint's (extraordinary) position that every token holder who has voted on any proposal is liable for violating the CEA.

*Second*, the Opposition tries to cabin the sweeping injunctive relief requested in the Complaint. The Opposition states that "any injunctive relief ultimately sought by the CFTC will be crafted as narrowly tailored as possible to best ensure the Ooki DAO's compliance with any final order." Opp. Br. 15 n.12. Such a "narrowly tailored" injunction, the Opposition asserts, "will apply to individual Ooki DAO members, if at all, only to the extent those members control the DAO and are in position to ensure its compliance with any final order." *Id.* But the Complaint's request for injunctive relief is anything but "narrowly tailored." The Complaint casts a wide net, seeking to prohibit "all members of the Ooki DAO" – *i.e.*, all token holders who have voted on anything – from engaging in the allegedly unlawful conduct. Compl., Prayer for Relief ¶ B. The Complaint also seeks to impose a broad trading ban on "Defendant Ooki DAO and any of its affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert or participation with Defendant." *Id.*, Prayer for Relief ¶ C.[4] The Opposition's effort to narrow the reach of such relief underscores the futility of pursuing injunctive relief according to the Complaint's broad terms. *See* a16z Br. 14-15. But as noted above, *see supra* at 1, 8, a party cannot amend its complaint through briefing. *See Ellawendy*, 2022 WL 7475916, at *5. If the CFTC wishes to reframe its case to avoid the fundamental problems that *amici* have identified, it should do so by filing an amended complaint.

In short, this Court does not need to bend the requirements of Rule 4 or California law to permit the CFTC to pursue this action. Rather, the CFTC may amend its Complaint to allege lawful purposes of the Ooki DAO and seek to serve individual members in accordance with California's statutory requirements. As the CFTC's Opposition suggests, there is no obstacle to

---

[4] As noted above, this theory of liability would sweep in a token holder whose only vote was to approve a "perfectly lawful" activity such as releasing treasury funds to compensate victims of a cyberattack. Opp. Br. 18 n.17. The CFTC also notes that there was recently a proposal for modifying activities associated with the Ooki protocol. *See* Snyder Decl., Dkt. 53-1, Ex. C (October 2022 snapshot vote). Under the approach of the existing Complaint (if not the CFTC's Opposition), every token holder who voted on this recent measure – whichever way they voted – may now be liable for everything the Ooki DAO has done or will do in the future.

the CFTC pleading a theory that will match its service of process argument and the more limited relief the CFTC now says it seeks.

## CONCLUSION

For the foregoing reasons, *amicus curiae* a16z respectfully submits that the Court should reconsider its order granting the CFTC's motion for alternative service and decline to approve the CFTC's request for alternative service on the current record.

Dated: November 21, 2022

Respectfully submitted,

*/s/ Douglas K. Yatter*

| | |
|---|---|
| Matthew Rawlinson (Bar No. 231890) | Douglas K. Yatter (Bar No. 236089) |
| LATHAM & WATKINS LLP | Benjamin Naftalis (*admitted pro hac vice*) |
| 140 Scott Drive | Samir Deger-Sen (*admitted pro hac vice*) |
| Menlo Park, CA 94025 | LATHAM & WATKINS LLP |
| Telephone: +1.650.463.3076 | 1271 Avenue of the Americas |
| Email: matt.rawlinson@lw.com | New York, NY 10020 |
| | Telephone: +1.212.906.1200 |
| | Email: douglas.yatter@lw.com |
| | benjamin.naftalis@lw.com |
| | samir.deger-sen@lw.com |

*Counsel for* Amicus Curiae *Andreessen Horowitz*