Thomas L. Simek (DC Bar #57268)
Anthony C. Biagioli (MO Bar # 72434)
Attorneys for Plaintiff
COMMODITY FUTURES TRADING COMMISSION
2600 Grand Boulevard, Suite 210
Kansas City, MO  64108
Telephone: (816) 960-7700
tsimek@cftc.gov
abiagioli@cftc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

|  |  |
|---|---|
| Commodity Futures Trading Commission,<br><br>Plaintiff,<br><br>v.<br><br>Ooki DAO (formerly d/b/a bZx DAO), an unincorporated association,<br><br>Defendant. | **CIVIL ACTION NO:  3:22-cv-05416-WHO**<br><br>**Hon. William H. Orrick**<br><br>**PLAINTIFF'S MOTION FOR ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTIES, AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANT OOKI DAO**<br><br>NOTICED HEARING<br>DATE AND TIME:    Wednesday, May 17, 2023, at 2:00 p.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

POINTS AND AUTHORITIES...................................................................................- 1 -

I.      Statement of Issue To Be Decided ...........................................................- 1 -

II.     Statement of Facts.....................................................................................- 1 -

III.    Argument ...................................................................................................- 2 -

        A.  This Court is Empowered to Enter a Default Judgment. ...........................- 2 -

        B.  The CFTC Has Established Jurisdiction and Venue. .................................- 3 -

        C.  The CFTC Has Satisfied the Necessary Procedural Requirements for Default
            Judgment. ....................................................................................................- 4 -

        D.  The *Eitel* Factors Weigh in Favor of Entering Default Judgment Against the Ooki
            DAO. ............................................................................................................- 4 -

        E.  Defendant Is Liable for Violations of the Act and Regulations as Alleged in the
            Complaint.....................................................................................................- 7 -

            1.  Defendant Engaged in Unlawful Off-Exchange Leveraged and Margined Retail
                Commodity Transactions in Violation of Section 4(a) of the Act, 7 U.S.C. § 6(a)
                (Count One). ..........................................................................................- 7 -

            2.  Defendant Engaged in Activities That Can Only Lawfully Be Performed By a
                Registered Futures Commission Merchant in Violation of Section 4d of the Act,
                7 U.S.C. § 6d (Count Two). ..................................................................- 11 -

            3.  Defendant Failed To Implement a Customer Information Program and Failed To
                Implement Know Your Customer and Anti-Money Laundering Procedures in
                Violation of Regulation 42.2, 17 C.F.R. § 42.2 (2022) (Count Three)...................- 13 -

IV.     Remedies ...................................................................................................- 13 -

        A.  The Court Should Permanently Enjoin the Defendant. ...........................- 14 -

        B.  The Court Should Impose Civil Monetary Penalties Against Defendant. ..............- 14 -

        C.  The Court Should Order Removal of the Ooki DAO's Website. ...........................- 15 -

V.      Conclusion .................................................................................................- 16 -

i

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980). .................................................................. - 3 -

4

5

*CFTC v. Driver*, 877 F. Supp. 2d 968 (C.D. Cal. 2012) ...................................................... - 14 -

6

*CFTC v. HDR Global Trading Limited*, No. 1:20-cv-08132, 2021 WL 3722183

7

(S.D.N.Y. Aug. 10, 2021) .......................................................................- 12 -, - 13 -

8

*CFTC v. Hunt*, 591 F.2d 1211 (7th Cir. 1979)...................................................................... - 14 -

9

*CFTC v. Hunter Wise Commodities, LLC*, 749 F.3d 967 (11th Cir. 2014) ............................. - 8 -

10

*CFTC v. J & K Futures, Inc.*, No. 11-00091-CV-W-FJG, 2011 WL 4729741

11

(W.D. Mo. Oct. 6, 2011)................................................................................................. - 16 -

12

*CFTC v. Laino Group Ltd. d/b/a PaxForex*, No. 4:20-cv-03317, 2021 WL

13

4059385 (S.D. Tex. June 30, 2021) .........................................................- 5 -, - 15 -

14

*CFTC v. McDonnell*, 287 F. Supp. 3d 213 (E.D.N.Y. 2018)..................................................... - 7 -

15

*CFTC v. Mintco LLC*, No. 15-cv-61960-BLOOM, 2017 WL 7736138 (S.D. Fla.

16

Dec. 19, 2017).................................................................................................................... - 8 -

17

*CFTC v. My Global Leverage, LLC*, No. 2:15-cv-00745-APG-PAL, 2016 WL

18

8257337 (D. Nev. Aug. 26, 2016) ................................................................................... - 10 -

19

*CFTC v. Ortiz*, No. 11-14063-CIV, 2011 WL 2607106 (S.D. Fla. June 30, 2011)............... - 16 -

20

*CFTC v. Rosenberg*, 85 F. Supp. 2d 424 (D. N.J. 2000) ........................................................ - 12 -

21

*CFTC v. Trimble*, No. 11–cv–02887-PAB-KMT, 2013 WL 317576 (D. Colo. Jan.

22

28, 2013) ........................................................................................................................... - 15 -

23

*CFTC v. Vault Options, Ltd.*, No. 1:16-CV-01881, 2016 WL 5339716 (N.D. Ill.

24

July 20, 2016)...................................................................................................- 11 -, - 12 -

25

*CFTC v. Wilson*, No. 11CV1651, 2011 WL 6398933 (S.D. Cal. Dec. 20, 2011) ................ - 14 -

26

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ........................................... - 3 -, - 4 -, - 6 -, - 7 -

27

*Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002). .................................................. - 3 -

28

ii

*Halsey v. Colonial Asset Mgmt.*, No. 5:13-cv-02025, 2014 WL 12601015 (C.D.
Cal. July 17, 2014) ................................................................................................- 4 -, - 6 -

*In re Coinflip, Inc.,* CFTC No. 15-29, 2015 WL 5535736 (Sept. 17, 2015) ........................... - 7 -

*In re Payward Ventures, Inc. (d/b/a Kraken)*, CFTC No. 21-20, 2021 WL
4501468 (Sept. 28, 2001) ....................................................................................- 5 -, - 15 -

*In re Tuli*, 172 F.3d 707 (9th Cir. 1999). ................................................................................ - 3 -

*Kloepping v. Fireman's Fund*, No. C 94-2684, 1996 WL 75314 (N.D. Cal. Feb.
13, 1996) ............................................................................................................................. - 7 -

*Miller v. CFTC*, 197 F.3d 1227 (9th Cir. 1999)................................................................... - 15 -

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) .............................. - 6 -

*PepsiCo, Inc. v. Los Potros Dist. Ctr., LLC*, No. CV-07-2425, 2008 WL 942283
(D. Ariz. Apr. 7, 2008)........................................................................................................ - 5 -

*PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431 (C.D. Cal. 1999). ................................. - 3 -

*SEC v. Fortitude Grp.,* No. 16-50 Erie, 2017 WL 818604 (W.D. Pa. Feb. 10,
2017) ................................................................................................................................... - 5 -

*Siwiec v. Shyun Sun*, No. CV 12-6410-CBM (MANx), 2013 WL 12130002 (C.D.
Cal. Feb. 20, 2013)............................................................................................................. - 7 -

*Sky Billiards, Inc. v. Loong Star, Inc.*, No. EDCV 14-921 JGB (SPx), 2016 WL
6661175 (C.D. Cal. Mar. 17, 2016) ................................................................ - 4 -, - 5 -, - 6 -

*Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251 (9th Cir. 2004)........................... - 6 -

*United States v. Reed*, No. 20-cr-500 (JGK), 2022 WL 597180 (S.D.N.Y. Feb. 28,
2022) ............................................................................................................................- 7 -, - 11 -

**ADMINISTRATIVE GUIDANCE**

Retail Commodity Transactions Involving Certain Digital Assets, 85 FR 37734-
01 (June 24, 2020)............................................................................................................. - 9 -

**REGULATIONS, STATUTES, AND RULES**

17 C.F.R. pts. 1-190 (2022) ................................................................................................... - 2 -

iii

17 C.F.R. § 42.2 (2022) ........................................................................................ - 1 -, - 13 -

17 C.F.R. § 143.8 (2022) ........................................................... - 5 -, - 14 -, - 15 -

7 U.S.C. § 1-27f ........................................................................................................ - 2 -

7 U.S.C. § 1a(13) ...................................................................................................... - 9 -

7 U.S.C. § 1a(18)(xi) ................................................................................................ - 7 -

7 U.S.C. § 1a(28) ........................................................................................... - 11 -, - 12 -

7 U.S.C. § 1a(38) .................................................................................................... - 10 -

7 U.S.C. § 2(c)(2)(D) ................................................................... - 7 -, - 8 -, - 9 -

7 U.S.C § 2(c)(2)(D)(i) ............................................................................................ - 7 -

7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa) ............................................................................. - 9 -

7 U.S.C. § 2(c)(2)(D)(iii) ......................................................................................... - 9 -

7 U.S.C. § 6(a) ................................................................................................... passim

7 U.S.C. § 6d ................................................................................... - 1 -, - 11 -, - 13 -

7 U.S.C. § 13a-1 .............................................................................................. - 3 -, - 13 -

7 U.S.C. § 13a-1(d)(1) ........................................................................................... - 14 -

7 U.S.C. § 13a-1(d)(3) ........................................................................................... - 15 -

7 U.S.C. § 13a-1(e) ................................................................................................... - 4 -

28 U.S.C. § 1331 ....................................................................................................... - 3 -

28 U.S.C. § 1345 ....................................................................................................... - 3 -

28 U.S.C. § 1961(a) ................................................................................................ - 15 -

Fed. R. Civ. P. 55(a) ................................................................................................. - 2 -

Fed. R. Civ. P. 55(b)(2) ...................................................................................... - 3 -, - 4 -

iv

Plaintiff Commodity Futures Trading Commission ("Commission") hereby gives notice that a hearing on its Motion for Order for Final Judgment by Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief Against Defendant Ooki DAO ("Motion") will take place on Wednesday, May 17, 2023 at 2:00 p.m. at the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 2, 17th Floor.

The Motion requests that the Court enter an Order for Final Judgment By Default, Permanent Injunction, Civil Monetary Penalties, and Other Statutory and Equitable Relief Against Defendant Ooki DAO.

## POINTS AND AUTHORITIES

### I.     STATEMENT OF ISSUE TO BE DECIDED

This Motion presents the following issue to be decided by the Court:

1.     Whether a default judgment is appropriate against an entity that transformed itself from an LLC into a DAO with the express goal of continuing to offer an unlawful trading platform without legal accountability, when that DAO acknowledged receipt of the Complaint in this action, publicly debated whether and how to respond, and (as this Court has ruled) has been served pursuant to applicable rules, yet ultimately chose not to appear to defend this action.

### II.    STATEMENT OF FACTS

In support of its Motion, the Commission states the following facts:

1.     On September 22, 2022, the Commission filed a Complaint against the Ooki DAO (formerly doing business as the bZx DAO), alleging violations of Sections 4(a) and 4d(a)(1) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6(a), 6d(a)(1), and Commission Regulation ("Regulation") 42.2, 17 C.F.R. § 42.2 (2021).  ECF No. 1.

2.     The Commission incorporates by reference the facts as alleged in the Complaint.

1   ECF No. 1 ¶¶ 10-50.

2          3.      For example, as alleged in the Complaint, the founders ("bZx Founders") of

3   bZeroX, LLC ("bZeroX") stated publicly that an objective in transferring control of bZeroX's

4   trading platform (the "bZx Protocol," later renamed the "Ooki Protocol") to the bZx DAO

5   (which later renamed itself the Ooki DAO) was to circumvent regulatory enforcement:

6                  It's really exciting.  We're going to be really preparing for the new
                   regulatory environment by ensuring bZx is future-proof.  So many people
7                  across the industry right now are getting legal notices and lawmakers are
                   trying to decide whether they want DeFi companies to register as virtual
8                  asset service providers or not – and really what we're going to do is take
                   all the steps possible to make sure that when regulators ask us to comply,
9                  that we have nothing we can really do because we've given it all to the
                   community.
10

11  ECF No. 1 ¶ 3.

12         4.      On January 17, 2023, pursuant to Fed. R. Civ. P. 55(a), a Clerk's Entry of Default

13  was entered against the Ooki DAO.  ECF No. 65.

14  **III.    ARGUMENT**
15
16         The Court should grant the Motion.  This Court is empowered to do so taking well-

17  pleaded Complaint allegations as true and without a hearing on damages.  The CFTC has

18  established subject matter and personal jurisdiction, venue, and all other procedural requirements

19  to enter a default judgment.  The CFTC has also established Defendant's violations of the

20  Commodity Exchange Act ("Act"), 7 U.S.C. § 1-27f, and Commission Regulations

21  ("Regulations"), 17 C.F.R. pts. 1-190 (2022).  Given this, Ninth Circuit law strongly favors a

22  default judgment.  Finally, the CFTC's requested remedies are adequately supported and fall

23  squarely within those authorized by the Act and Regulations.
24
25         **A.    This Court is Empowered to Enter a Default Judgment.**
26
           After a defendant has failed to plead or otherwise defend an action, and the clerk has
27
28  entered default against the defendant, a plaintiff may apply to the court for a judgment by

- 2 -

default.  *See* Fed. R. Civ. P. 55(b)(2).  In considering such a motion, a court must first determine that it possesses "jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  The decision to enter default judgment is then left to the sound discretion of the court.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

In exercising such discretion, courts in this circuit may consider the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  These factors include: (1) the possibility of prejudice to the plaintiff if the motion is denied; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning any material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Id.*  Applying these factors, "default judgments are more often granted than denied."  *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

In assessing requests for default judgments, the well-pleaded factual allegations of the complaint are taken as true.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

## B.     The CFTC Has Established Jurisdiction and Venue.

This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1345 (jurisdiction over civil actions commenced by the United States or by any agency authorized to sue by Act of Congress).  The CFTC is authorized to seek injunctive and other relief in a U.S. district court whenever it appears that any person has violated the Act or Regulations.  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a).

The Court has personal jurisdiction over all parties because they transacted business within this District and otherwise engaged in acts and practices in violation of the Act and Regulations (for example, by unlawfully offering unregistered transactions) in this District, among other places.

1    Venue is proper in this District for the same reasons.  Section 6c(e) of the Act, 7 U.S.C. §

2    13a-1(e).

3    **C.  The CFTC Has Satisfied the Necessary Procedural Requirements for Default
     Judgment.**

4

5    The Clerk of this Court has entered a default against the Ooki DAO.  ECF No. 65.  The

6    Ooki DAO has not appeared personally or by a representative, so the requirement in FRCP

7    55(b)(2) to serve the Ooki DAO or its representative with written notice of the Motion at least

8    seven days before the hearing does not apply.  Nevertheless, as set forth in the Certificate of

9    Service accompanying this Motion, the CFTC has served the Ooki DAO with this Motion as well

10   as related papers.

11

12   **D.  The *Eitel* Factors Weigh in Favor of Entering Default Judgment Against the
     Ooki DAO.**

13

14   Each *Eitel* factor (set forth above) weighs in favor of granting the CFTC's request for

15   default judgment.

16   Regarding the first *Eitel* factor, the CFTC will be prejudiced if default judgment is not

17   entered because it "will be deprived of the opportunity to obtain judicial resolution of its

18   claim[s]."  *Sky Billiards, Inc. v. Loong Star, Inc.*, No. EDCV 14-921 JGB (SPx), 2016 WL

19   6661175, at *5 (C.D. Cal. Mar. 17, 2016); *see also Halsey v. Colonial Asset Mgmt.*, No. 5:13-cv-

20   02025, 2014 WL 12601015, at *4 (C.D. Cal. July 17, 2014) (concluding plaintiff lacked remedy

21   in absence of default judgment where defendant failed to file responsive pleading).  The CFTC

22

23   has strong, congressionally mandated interests in enforcing the Act and Regulations, ensuring

24   compliance with registration obligations to protect members of the public from harm, and

25   deterring future wrongdoing through penalties, among other monetary relief.  Yet the Ooki

26   DAO's refusal to appear and defend will continue to deprive the CFTC of the opportunity to

27   obtain judgment on the merits.  This factor thus supports a default judgment.  *See SEC v.*

28

- 4 -

*Fortitude Grp.,* No. 16-50 Erie, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017) (granting SEC's motion for default judgment because SEC would "be prejudiced by its inability to effectively enforce federal securities laws" if motion were denied).

The second and third factors also weigh in favor of default judgment.  As discussed below (*see infra* Section III.E), the CFTC's claims are meritorious, and the Complaint is sufficient on its face to state the claims set forth therein.

Fourth, "the amount of money at stake in relation to the seriousness of the defendant's conduct" weighs in favor of a default judgment.  *PepsiCo, Inc. v. Los Potros Dist. Ctr., LLC*, No. CV-07-2425, 2008 WL 942283, at *3 (D. Ariz. Apr. 7, 2008).  The civil monetary penalties the CFTC seeks from the Ooki DAO are consistent with awards and penalties in similar enforcement actions.  *See, e.g.*, *CFTC v. Laino Group Ltd. d/b/a PaxForex*, No. 4:20-cv-03317, 2021 WL 4059385, at *8 (S.D. Tex. June 30, 2021), ECF No. 21 (default order) (imposing $374,864 CMP on defendant who committed similar registration violations to those in this case, reflecting, as here, imposition of inflation-adjusted per-violation CMPs, in amounts specified by 17 C.F.R. § 143.8); *see also, e.g.*, *In re Payward Ventures, Inc. (d/b/a Kraken)*, CFTC No. 21-20, 2021 WL 4501468 (Sept. 28, 2001) (imposing $1.25 CMP in connection with similar registration violations to those in this case).  Moreover, the Ooki DAO's registration violations are significant and go to the heart of a regulatory regime aimed at protecting U.S. commodity markets and their users.  The CFTC's requested relief is therefore reasonable.  *See Sky Billiards*, 2016 WL 6661175, at *5 (entering default judgment and noting that the "award [was] consistent with other default judgment awards in the context of [similar cases]").

Fifth, the remote possibility of a dispute as to material facts weighs in favor of a default judgment.  The Complaint details the Ooki DAO's violations of law and transformation into a DAO in an effort to avoid compliance obligations and regulatory enforcement.  The Complaint

alleges facts not disputed by bZeroX or the bZx Founders in the bZeroX Administrative Order and which are largely reflected in public materials such as the Ooki DAO's website.  Given this, the likelihood of a factual dispute on a material issue is remote.  *See also Sky Billiards*, 2016 WL 6661175, at *5 (recognizing that the defendant's failure to respond "supports the conclusion that the possibility of a dispute as to the material facts is minimal").

Sixth, there was no excusable neglect for the default because the Ooki DAO was properly served with the Summons and Complaint, publicly discussed whether and how to respond, and chose not to appear and defend itself.  *See* ECF No. 63 at 8-9 (Order in which this Court concluded that "[i]f the DAO fails to appear, it will be because of its strategic decision, not because it was unaware of the lawsuit"); *Halsey*, 2014 WL 12601015, at *4 (recognizing that proper service of process supports a finding that default is not due to excusable neglect).  Thus, the Ooki DAO's default cannot be excused.

Finally, the seventh *Eitel* factor—the general preference for deciding cases on the merits—does not counsel against a default judgment here because "[d]efendant[s'] failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (noting the on-the-merits "preference, standing alone, is not dispositive") (citation omitted).  In addition, countervailing interests outweigh any residual interest in preserving the remote potential for a merits decision.  "[T]he CFTC is the statutory guardian entrusted with the enforcement of the congressional scheme for safeguarding the public interest in commodity futures markets." *See Stephen Bronte, Advisors, LLC v. CFTC*, 90 F. App'x 251, 252 (9th Cir. 2004) (internal quotations and citations omitted).  Absent a default judgment and the concomitant penalties and injunctive relief, the CFTC will be unable to address and deter the misconduct at issue.  This weighs in favor of a default judgment.

1

2

E.     **Defendant Is Liable for Violations of the Act and Regulations as Alleged in the Complaint.**

3

As discussed above, the second and third *Eitel* factors "require that plaintiffs' allegations

4

'state a claim on which the [plaintiff] may recover.'"  *Siwiec v. Shyun Sun*, No. CV 12-6410-

5

CBM (MANx), 2013 WL 12130002, at *2 (C.D. Cal. Feb. 20, 2013) (quoting *Kloepping v.*

6

*Fireman's Fund*, No. C 94-2684, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)).  Here, the

7

CFTC's Complaint clearly states a claim.

8

9

10

1.     **Defendant Engaged in Unlawful Off-Exchange Leveraged and Margined Retail Commodity Transactions in Violation of Section 4(a) of the Act, 7 U.S.C. § 6(A) (Count One).**

11

Virtual currencies such as ETH, DAI, and others traded on the Ooki Protocol are

12

"commodities" under the Act.  *See, e.g.*, *United States v. Reed*, No. 20-cr-500 (JGK), 2022 WL

13

597180, at *3-5 (S.D.N.Y. Feb. 28, 2022); *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228-29

14

(E.D.N.Y. 2018); *In re Coinflip, Inc.,* CFTC No. 15-29, 2015 WL 5535736, at *2 (Sept. 17,

15

2015).

16

17

The transactions offered on the Ooki Protocol fall within Section 2(c)(2)(D) of the Act,

18

7 U.S.C. § 2(c)(2)(D).  That section applies to "any agreement, contract, or transaction in any

19

commodity that is . . . entered into with, or offered to (even if not entered into with), a [non-

20

eligible contract participant ("non-ECP")][1] . . . on a leveraged or margined basis . . . ." and which

21

does not result in actual delivery within 28 days (hereafter, "leveraged or margined retail

22

commodity transactions").  Act § 2(c)(2)(D)(i), (ii)(III)(aa), 7 U.S.C § 2(c)(2)(D)(i), (ii)(III)(aa).

23

Therein, "leveraging refers generally to the ability to control high-value amounts of a commodity

24

25

26

27

28

---

[1]     An eligible contract participant ("ECP") is, in general, an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of $10 million, or $5 million if the individual enters into the transaction "in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."  Section 1a(18)(xi) of the Act, 7 U.S.C. § 1a(18)(xi).  As used herein, a "non-ECP" is an individual who does not meet that definition.

or a security with a comparatively small value of capital, known as the margin." *CFTC v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 976 (11th Cir. 2014). Transactions on the Ooki Protocol were leveraged and margined: traders can transfer to Ooki Protocol smart contracts "a comparatively small volume of capital" (the margin) to "control high-value amounts of a commodity" (the leverage); and, notably, the Ooki DAO refers to its own products as leveraged and margined.[2]

Transactions on the Ooki Protocol are "offered to" and "entered into with" non-ECPs within the meaning of 7 U.S.C. § 2(c)(2)(D). A transaction falls within that section regardless of who "offers" the transaction to, or "executes" the transaction with, a non-ECP; it is the existence of the transactions themselves, not the identity of their offerors or executors, which triggers application of the Act. *See, e.g.*, *Hunter Wise*, 749 F.3d at 978 (noting that even if Hunter Wise had not engaged in the retail commodity transactions at issue, and instead had merely provided a platform to facilitate leveraged and margined retail commodity transactions between customers and third-party dealers, the CFTC would still have jurisdiction over the transactions under 7 U.S.C. § 2(c)(2)(D) because "the Commission's jurisdiction is over the transactions themselves"). Here, such transactions are offered to and entered into with non-ECPs because they are offered to and entered into with anyone and everyone who wishes to transact on the Ooki Protocol—for example, the Ooki DAO website does not limit access to the Ooki Protocol to ECPs.[3]

---

[2]   *See, e.g.*, https://docs.ooki.com/protocol/trade/leverage (last visited April 5, 2023) (discussing "leverage in . . . margin trading" available on the Ooki Protocol).

[3]   While the CFTC need not establish the following to trigger 7 U.S.C. § 2(c)(2)(D), it is, indeed, the Ooki DAO who offers and enters into such transactions. The Ooki DAO "offers" such transactions to non-ECPs by soliciting members of the public to utilize its website to access the Ooki Protocol to engage in such transactions. *See, e.g.*, *CFTC v. Mintco LLC*, No. 15-cv-61960-BLOOM, 2017 WL 7736138, at *3-5 (S.D. Fla. Dec. 19, 2017) (consent order) (finding that Mintco offered leveraged or margined retail commodity transactions under 7 U.S.C. § 2(c)(2)(D) even when it merely acted as an "introducer" or "retailer" to third-party providers of metals, marketed such transactions, accepted customer orders and funds, charged a commission on the transaction, and forwarded the

- 8 -

1   Finally, the "actual delivery" exception is facially inapplicable to the transactions on the

2   Ooki Protocol.  That exception only applies to transactions involving an antecedent "contract of

3   sale" that results in actual delivery of the underlying commodity within 28 days.  Act

4   § 2(c)(2)(D)(ii)(III)(aa); *see* Act § 1a(13), 7 U.S.C. § 1a(13) ("The term 'contract of sale'

5   includes sales, agreements of sale, and agreements to sell.").  Here, the Ooki Protocol does not

6   involve the *sale* of any commodity, but rather merely enables participants to establish a

7   leveraged position on the predicted price difference between two commodities.  The Ooki

8   Protocol does not require the delivery of any purchased commodity, either within 28 days or

9   otherwise.  Second, and separately, the actual delivery exception does not apply where a

10  customer's position can be subject to forced liquidation or where the customer's position merely

11  rolls over after 28 days.  *See* Retail Commodity Transactions Involving Certain Digital Assets,

12  85 FR 37734-01 at 37743-37744 (June 24, 2020).  Here, the Ooki DAO subjects customer

13  positions to forced liquidation as well as rolled over customer positions every 28 days.  Thus, the

14  actual delivery exception does not apply, and transactions offered on the Ooki Protocol fall

15  within 7 U.S.C. § 2(c)(2)(D).

16      In light of the Ooki DAO's conduct relating to the leveraged or margined retail

17  commodity transactions described above, the Ooki DAO violated 7 U.S.C. § 6(a), which applies

18  to leveraged or margined retail commodity transactions (as defined by 7 U.S.C. § 2(c)(2)(D)) as

19  if those transactions were contracts of sale of a commodity for future delivery.  Act §

20  2(c)(2)(D)(iii).  Because the transactions offered on the Ooki Protocol are leveraged or margined

21  retail commodity transactions under 7 U.S.C. § 2(c)(2)(D), 7 U.S.C. § 6(a) applies to such

---

orders and funds to third parties).  Similarly, the Ooki DAO enters into such transactions by controlling the Ooki Protocol with which traders transact; because traders transact directly with the Ooki Protocol, whoever controls the Ooki Protocol (i.e., the Ooki DAO) enters into such transactions.

- 9 -

transactions.

Under 7 U.S.C. § 6(a), it is unlawful for any "person" to offer to enter into, enter into, execute, confirm the execution of, or conduct an office or business in the United States for the purpose of soliciting, or accepting any order for, or otherwise dealing in any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery [i.e., the leveraged and margined retail commodity transactions at issue here], unless such transaction is made on or subject to the rules of a board of trade that has been designated or registered by the CFTC as a contract market for the specific commodity (i.e., a DCM).

The Ooki DAO is a "person" under the Act and thus is subject to 7 U.S.C. § 6(a).  As previously detailed extensively, the Ooki DAO is an unincorporated association.  *See, e.g.*, ECF No. 53 at 16-23 (CFTC's previously filed brief detailing the strong legal bases for classifying the Ooki DAO as an unincorporated association under both federal and applicable state law); *see also* ECF No. 60 at 13 (holding that the Ooki DAO has the capacity to be sued as an unincorporated association under applicable law).  The term "person" under the Act by its plain terms includes all "associations" and does not exclude unincorporated associations.  *See* 7 U.S.C. § 1a(38) (broadly defining "person" to include "individuals, **associations**, partnerships, corporations, and trusts") (emphasis added); *see, e.g.*, *CFTC v. My Global Leverage, LLC*, No. 2:15-cv-00745-APG-PAL, 2016 WL 8257337, at *4 (D. Nev. Aug. 26, 2016) (default order) (holding an LLC—which is neither an individual, *incorporated* association, partnership, corporation, or trust—liable for violations of 7 U.S.C. § 6(a)).  Here, the Ooki DAO, as an unincorporated association, runs the same for-profit business as its predecessor LLC.  Despite changing its business structure in an attempt to evade the law, the Ooki DAO remains a "person" subject to the Act and Regulations and cannot violate the law with impunity.

The Ooki DAO engaged in conduct that violated 7 U.S.C. § 6(a).  For example, the Ooki

DAO "offered to enter into," "entered into," and "confirmed the execution of" transactions on

the Ooki Protocol.  A defendant does so when it solicits customers to enter into such transactions

through a website the defendant controls which enables and confirms those transactions.  *See,*

*e.g.*, *CFTC v. Vault Options, Ltd.*, No. 1:16-CV-01881, 2016 WL 5339716, at *2-3, *6 (N.D. Ill.

July 20, 2016) (default order) (defendants who solicited customers to trade binary options

transactions—there, predictive trades on the price movement of certain commodities, indices,

and foreign currencies—through websites, emails, and other communications, and enabled those

customers to enter into such transactions through websites they operated, offered to enter into,

entered into, and confirmed the execution of such transactions within the meaning of 7 U.S.C. §

6(a)).  Similarly, the Ooki DAO executes such transactions with non-ECPs by controlling the

Ooki Protocol that executes such transactions.  In addition, more generally, the Ooki DAO

conducted business in the United States for the purpose of soliciting and accepting orders for,

and otherwise dealing in, the transactions at issue (for example, through the business activities of

U.S.-based Ooki DAO members and making such transactions available to U.S.-based persons).

Because such transactions did not occur on a registered DCM, the Ooki DAO violated 7 U.S.C. §

6(a).

> **2.      Defendant Engaged in Activities That Can Only Lawfully Be
> Performed By a Registered Futures Commission Merchant in
> Violation of Section 4d of the Act, 7 U.S.C. § 6d (Count Two).**

Section 1a(28) of the Act, 7 U.S.C. § 1a(28), in relevant part, defines an FCM as any

individual, association, partnership, corporation or trust that engages in soliciting or in accepting orders

for "any agreement, contract, or transaction described in… section (2)(c)(2)(D)(i)" and, in connection

therewith, "accepts any money… or property (or extends credit in lieu thereof) to margin . . . trades or

contracts that result or may result therefrom."  *See, e.g.*, *Reed*, 2022 WL 597180, at *2-3 (holding

indictment sufficiently alleged that entity operated as an unregistered FCM where entity solicited

and accepted orders for trades in futures contracts and other derivative products tied to the value

of virtual currencies, accepted virtual currency to margin and guarantee its derivative products,

and offered leverage to customers on certain products).

Under 7 U.S.C. § 1a(28), a person:  (1) solicits orders by, among other things, operating a

website and otherwise making public statements encouraging the public to visit the website to enter

into relevant transactions; (2) accepts orders by, among other things, operating a website that customers

use to submit and enter into relevant transactions; and (3) accepts money or property to margin trades

when such money or property is transferred to some repository that the person controls. *See, e.g.*,

*CFTC v. HDR Global Trading Limited*, No. 1:20-cv-08132, 2021 WL 3722183, at ¶ 36 (S.D.N.Y.

Aug. 10, 2021) (consent order) (finding defendant unlawfully acted as an unregistered FCM where

defendant solicited non-ECPs on defendant's website and on social media to engage in leveraged

trading of virtual currency derivatives through defendant's website, mobile application, and by direct

connection to its trading engine servers; and accepted bitcoin and other property to margin

transactions); *Vault Options*, 2016 WL 5339716, at *2, *7 (finding that defendants unlawfully

operated as an unregistered FCM when they solicited orders through their websites, emails, and

other communications; accepted orders by facilitating customer transactions through their

website; and accepted funds to margin trades by having customers transfer such funds to bank

accounts they controlled); *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 451 (D. N.J. 2000) (holding that

defendant "accepted" funds to margin trades within the meaning of 7 U.S.C. § 1a(28) where the victim

transferred funds to an account in the defendant's name).

Here, during the DAO Relevant Period, the Ooki DAO solicited orders for leveraged or

margined retail commodity transactions through its website (which marketed and encouraged members

of the public to enter into leveraged or margined retail commodity transactions through the website)

and through the bZx Founders (who wrote articles and made public statements through social media,

Youtube, and other forums); the Ooki DAO accepted orders for such transactions from members of the public who entered into such transactions through the Ooki DAO website; and the Ooki DAO accepted assets used to margin such transactions by possessing and controlling the Keys (as defined and described in the Complaint, *see* ECF No. 1 ¶¶ 34, 38, 41(d), 46) to the Ooki Protocol smart contracts that accepted such assets, which allowed the Ooki DAO to control the disposition of the assets in those smart contracts. Thus, during the DAO Relevant Period, the Ooki DAO acted as an FCM.

Section 4d(a)(1) of the Act, 7 U.S.C. § 6d(a)(1), in pertinent part, makes it unlawful for any person to act as an FCM unless registered with the Commission as an FCM. The Ooki DAO has never been registered as an FCM. Thus, the Ooki DAO violated 7 U.S.C. § 6d(a)(1).

**3.  Defendant Failed To Implement a Customer Information Program and Failed To Implement Know Your Customer and Anti-Money Laundering Procedures in Violation of Regulation 42.2, 17 C.F.R. § 42.2 (2022) (Count Three).**

Regulation 42.2, 17 C.F.R. § 42.2 (2022), provides that every FCM shall comply with the Bank Secrecy Act and related regulations, which require the FCM to adopt a CIP to facilitate KYC diligence on the FCM's customers. Regulation 42.2 applies to individuals and entities acting as unregistered FCMs. *See, e.g.*, *HDR Global Trading Limited*, 2021 WL 3722183 at ¶ 39 (consent order finding defendant who acted as an unregistered FCM liable for failing to adopt a CIP as required by Regulation 42.2).

During the DAO Relevant Period, by acting as an unregistered FCM, the Ooki DAO was required to adopt a CIP but failed to do so, and in fact explicitly marketed the lack of KYC diligence as a positive feature of the Ooki Protocol. In so doing, the Ooki DAO violated Regulation 42.2.

## IV.  REMEDIES

Under Section 6c of the Act, 7 U.S.C. § 13a-1, the CFTC is authorized to seek a permanent injunction, civil monetary penalties, and equitable remedies. Consistent with that

- 13 -

statutory authority and the Court's inherent equitable powers, the CFTC respectfully requests that the Court award a permanent injunction, civil monetary penalties, and an order to remove the Ooki DAO website from the public domain against the Defendant.

### A.    The Court Should Permanently Enjoin the Defendant.

The Court should permanently enjoin Defendant from, among other things, further violating the Act and Regulations; trading on or subject to the rules of any registered entity; soliciting, receiving, or accepting funds from any person for the purpose of purchasing or selling commodity interests; and applying for registration with the CFTC.  The CFTC is entitled to such relief on a showing that "a violation has occurred and is likely to continue unless enjoined." *CFTC v. Driver*, 877 F. Supp. 2d 968, 981 (C.D. Cal. 2012).  Under this standard, "[o]nce a violation is demonstrated, the [CFTC] need show only that there is some reasonable likelihood of future violations." *CFTC v. Wilson*, No. 11CV1651, 2011 WL 6398933, at *2 (S.D. Cal. Dec. 20, 2011) (quoting *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)).  The Court may consider past misconduct in determining the likelihood of future violations.  *Driver*, 877 F. Supp. 2d at 981.

It is highly likely that Defendant will violate the Act and Regulations again unless permanently restrained and enjoined by the Court.  While the Ooki DAO was clearly aware of the CFTC's Complaint—and publicly deliberated whether and how to respond to it—it ultimately chose not to appear.  Instead, it chose to continue to operate its unlawful business. The Court should thus order the proposed permanent injunctive relief.

### B.    The Court Should Impose Civil Monetary Penalties Against Defendant.

Pursuant to Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1), and Regulation 143.8(b)(1), 17 C.F.R. § 143.8(b)(1) (2022), the Commission is authorized to seek a civil

monetary penalty ("CMP") equal to the higher of triple the defendant's monetary gain from each violation of the Act or Regulations, or $214,514 per violation (for violations committed on or after November 2, 2015).  A court may "fashion a civil monetary penalty appropriate to the gravity of the offense and sufficient to act as a deterrent."  *CFTC v. Trimble*, No. 11–cv–02887-PAB-KMT, 2013 WL 317576, at *9 (D. Colo. Jan. 28, 2013) (citing *Miller v. CFTC*, 197 F.3d 1227, 1236 (9th Cir. 1999)).  The civil monetary penalties the CFTC seeks from the Ooki DAO are consistent with awards and penalties in similar enforcement actions.  *See, e.g.*, *CFTC v. Laino Group Ltd. d/b/a PaxForex*, No. 4:20-cv-03317, 2021 WL 4059385, at *8 (S.D. Tex. June 30, 2021), ECF No. 21 (default order) (imposing $374,864 CMP on defendant who committed similar registration violations to those in this case, reflecting, as here, imposition of inflation-adjusted per-violation CMPs, in amounts specified by 17 C.F.R. § 143.8); *see also, e.g.*, *In re Payward Ventures, Inc. (d/b/a Kraken)*, CFTC No. 21-20, 2021 WL 4501468 (Sept. 28, 2001) (imposing $1.25 CMP in connection with similar registration violations to those in this case).

Here, the Ooki DAO violated three separate provisions of the Act and Regulations.  Thus, the Court should impose three times the per-violation CMP—i.e., three times $214,514, or a total of $643,542.  This CMP is warranted to punish and deter future similar misconduct by the Ooki DAO and similarly situated entities.[4]

**C.     The Court Should Order Removal of the Ooki DAO's Website.**

Pursuant to Section 6c(d)(3) of the Act, 7 U.S.C. § 13a-1(d)(3), the Commission may seek equitable remedies ("including," *but not limited to*, restitution or disgorgement) to address violations of the Act.  Courts have entered orders requiring removal of the offending defendant's website where the defendant offered unlawful transactions to the public through the website.

---

[4]     The CFTC is also entitled to post-judgment interest on a civil monetary penalty award ordered by the Court.  Post-judgment interest accrues at the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of judgment.  *See* 28 U.S.C. § 1961(a).

1    *See, e.g.*, *CFTC v. J & K Futures, Inc.*, No. 11-00091-CV-W-FJG, 2011 WL 4729741, at *5-6

2    (W.D. Mo. Oct. 6, 2011) (default order); *CFTC v. Ortiz*, No. 11-14063-CIV, 2011 WL 2607106,

3    at *7-8 (S.D. Fla. June 30, 2011) (default order).  The Court should so order here.  The Ooki

4
     DAO's website is the mechanism the public uses to access the Ooki Protocol.  Thus, the Court
5
     should specifically order that the website be taken down.  Importantly, the Proposed Order
6
7    requires any person providing web-hosting or domain-name registration services for the Ooki

8    DAO to take down the Ooki DAO's website.  While the CFTC hopes that the Ooki DAO will

9    comply with any order from this Court, that language addresses the possibility that the Ooki

10   DAO will simply ignore the Court's order, as it ignored the CFTC's Complaint in this action.

11
12   **V.      CONCLUSION**

13           This case presents a question striking at the heart of the U.S. government's ability to

14   enforce its laws.  The Ooki DAO believed that transforming itself into a DAO would allow it to

15   violate numerous applicable laws without consequence.  That proposition is novel, dangerous,

16   and wrong.  For the reasons above, the CFTC requests a default judgment against the Ooki DAO.
17

18   Dated:  April 7, 2023                     Respectfully submitted,
19
                                               **COMMODITY FUTURES TRADING**
20                                             **COMMISSION**

21

22                                             By:  /s/ Anthony C. Biagioli
                                               Tom Simek (DC Bar # 57268), tsimek@cftc.gov
23                                             TRIAL COUNSEL
                                               Anthony C. Biagioli (MO Bar # 72434),
24                                             abiagioli@cftc.gov
                                               Attorneys for Plaintiff
25                                             COMMODITY FUTURES TRADING
                                               COMMISSION
26                                             2600 Grand Boulevard, Suite 210
                                               Kansas City, MO  64108
27                                             (816) 960-7700

28

1

**<u>Certificate of Service</u>**

2

I hereby certify that on April 7, 2023, I caused a copy of the foregoing to be filed with the

3

Clerk of the Court via the CM/ECF system as well as provided to the Defendant Ooki DAO

4

through the Ooki DAO's Help Chat Box on the Ooki DAO website as well as by posting the

5

foregoing to the Ooki DAO's Online Forum.

6

7

*/s/ Anthony C. Biagioli*
Counsel for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT OOKI DAO