Thomas L. Simek (DC Bar #57268)
Anthony C. Biagioli (MO Bar # 72434)
Attorneys for Plaintiff
COMMODITY FUTURES TRADING COMMISSION
2600 Grand Boulevard, Suite 210
Kansas City, MO  64108
Telephone: (816) 960-7700
tsimek@cftc.gov
abiagioli@cftc.gov

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>           Plaintiff,<br><br>   v.<br><br>Ooki DAO (formerly d/b/a bZx DAO), an unincorporated association,<br><br>           Defendant. | CIVIL ACTION NO:  3:22-cv-05416-WHO<br><br>**Hon. William H. Orrick**<br><br>**PLAINTIFF CFTC'S SUPPLEMENTAL SUBMISSION REGARDING PERSONAL JURISDICTION AND WEBSITE REMOVAL IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT** |

Plaintiff Commodity Futures Trading Commission ("CFTC") submits this supplemental brief and factual declarations per the Court's Order to address personal jurisdiction and website removal (ECF No. 74) related to the CFTC's Motion for Default Judgment (ECF No. 68).

This Court has personal jurisdiction over the Defendant Ooki DAO. The Commodity Exchange Act ("CEA") authorizes nationwide service of process. In such cases, any district court may exercise personal jurisdiction over a defendant who has sufficient minimum contacts with the United States. As set forth below, the Ooki DAO has such minimum contacts.[1]

The Court may order removal of the Ooki DAO's website even though the Complaint does not explicitly request such relief because the request to remove the website is fairly implied from the Complaint allegations (that the Ooki DAO makes a website available to the public that is integral to the alleged unlawful conduct) and demand for relief (that the Court order an injunction prohibiting the Ooki DAO from "engaging in conduct described above"—i.e., among other things, making that website available to the public).

**FACTS**

Facts Relevant to Personal Jurisdiction

1. In its Complaint, the CFTC (a) alleged that "certain transactions, acts, practices, and courses of business in violation of the [CEA] occurred, are occurring, or are about to occur in this District, among other places" (ECF No. 1 ¶ 9); (b) alleged that the Ooki DAO ***offered*** any person anywhere in the world (including in the United States) the ability to trade on the Ooki Protocol (*id.* ¶¶ 35, 41(e), 46) (emphasis added) through its website (*id.* ¶¶ 32, 41(b), 46) and that these complex transactions required the person to interact with the Ooki Protocol by, for example, depositing collateral and specifying transaction details in exchange for which the trader

---

[1] At the May 17, 2023 hearing in this matter, counsel for the CFTC did not direct the Court to this applicable legal standard. The CFTC appreciates the opportunity to clarify the standard.

would receive back a token reflecting the newly opened leveraged trading position (*id.* ¶¶ 28, 41(a), 46); (c) charged that this mere ***offering*** of such transactions, among other conduct, violated the law (*id.* ¶ 56(a)) (emphasis added); (d) alleged that during the DAO Relevant Period (Aug. 23, 2021 to the present), multiple Ooki DAO members have resided in the United States and have conducted Ooki DAO business from within the United States (*id.* ¶ 49); and (e) alleged that the bZx Founders and others, on behalf of the Ooki DAO, conducted Ooki DAO business such as marketing and soliciting orders for the Ooki Protocol (*id.* ¶¶ 32, 41(b), 46) and making governance proposals that were subsequently enacted (*id.* ¶ 44).

    2.    In addition, newly submitted factual declarations from the bZx Founders make clear that the bZx Founders acted in the United States for the bZx DAO (later renamed the Ooki DAO) during the DAO Relevant Period.  For example, **in the United States** during the DAO Relevant Period:  the bZx Founders caused bZeroX to transfer control of the bZx Protocol to the bZx DAO with an explicit goal of avoiding legal accountability; made and/or advocated for a critical governance proposal in the bZx DAO's online discussion forum ("bZx Forum") to authorize funding for the bZx DAO's operations, which the bZx DAO subsequently voted to enact; one participated in a call with bZx DAO community members where the bZx Founder advised the community regarding the bZx DAO's planned next steps, including protocol development and the "rebrand" to the Ooki DAO; and the other performed programming work for the bZx DAO in connection with the bZx DAO's deployment of the bZx Protocol more broadly to the public and retweeted Ooki DAO advertisements from his personal Twitter account.  *See* Declarations of Kyle Kistner (Exh. 1 ¶¶ 6-11) and Tom Bean (Exh. 2 ¶¶ 6-11).[2]

---

[2]    As alleged in the Complaint, the bZx DAO and the Ooki DAO were the same DAO, simply rebranded and doing business under different names, and operated as a single DAO during the DAO Relevant Period.  ECF No. 1 ¶ 4 & nn. 2-3, ¶ 46.

3.  The Ooki DAO has engaged in targeted advertising campaigns directed at the United States during the DAO Relevant Period—specifically, at least two massive video advertisements visible on giant screens from the streets of Times Square in New York City. Declaration of Brittne Snyder (Exhibit 3 ¶ 3).

4.  From February 24 to March 2, 2021, over 27% of the bZx Protocol's users and over 38% of its transaction volume came from the United States. *Id.* ¶ 4. From that time and into the DAO Relevant Period, bZeroX (and then the Ooki DAO) continued to offer the bZx Protocol (and then the Ooki Protocol) without restriction to the U.S. public. *See supra* ¶ 1(b).

Facts Relevant to Website Removal

5.  The Complaint references the Ooki DAO website seven times. For example, it alleges that the Ooki DAO markets, solicits orders for, and facilitates access to the Ooki Protocol through its website, which "enabled users, through the click of a few buttons," to transact on the Ooki Protocol. *E.g.*, ECF No. 1 ¶¶ 32, 41(b), 46. The Complaint further alleges that the Ooki DAO, "through its front-end website" advertised the lack of KYC and "offered users anywhere in the world (including in the United States) the ability to trade" on the Ooki Protocol. *E.g.*, *id.* ¶¶ 41(e), 46. In addition, the Complaint alleges that the "Ooki DAO website describes . . . procedures for proposing and voting on Ooki DAO governance proposals . . . ." *Id.* ¶ 48.

6.  The Complaint requests "[a]n order of permanent injunction prohibiting Defendant Ooki DAO . . . from engaging in conduct described above . . . ." *Id.* § VII ¶¶ B.

## ARGUMENT

**I.   The Court Has Personal Jurisdiction Over the Ooki DAO.**

Because the CEA authorizes nationwide service of process in CFTC enforcement actions, any U.S. District Court may exercise personal jurisdiction over the Ooki DAO so long as the Ooki DAO has sufficient minimum contacts with the United States (not with any particular

forum state). *See* 7 U.SC. § 13a-1(e) (providing that in CFTC enforcement actions, "process in such cases may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found"); *see, e.g.*, *Secs. Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1315-16 (9th Cir. 1985) (holding national contacts analysis applicable to Section 27 of the Securities Exchange Act, which provided, just like the CEA, that "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found"); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414-17 (9th Cir. 1989) (reaffirming *Vigman* and holding such framework applicable to Section 12 of the Clayton Act, which likewise provides for nationwide service of process); *CFTC v. Oakmont Financial, Inc.*, 191 F. Supp. 3d 1347, 1350-51 (S.D. Fla. 2016) (holding same with respect to CEA).

Where a statute provides for nationwide service of process, a defendant has minimum contacts with the United States if the defendant "acted within any district of the United States or sufficiently caused foreseeable consequences in this country." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Vigman*, 764 F.2d at 1316); *see Go-Video*, 885 F.2d at 1415 ("[A] court must [also] consider whether . . . exercise of personal jurisdiction . . . offends traditional notions of fair play and substantial justice[.]"). Here, the Ooki DAO had sufficient minimum contacts with the United States. Most importantly, it violated the law in the United States by offering transactions via its website to every U.S. citizen—the *offers themselves* violated the law. *See* 7 U.S.C. § 6(a) (prohibiting the mere offering of the transactions at issue, in addition to other conduct). In addition, it advertised in the United States, at minimum, on massive billboards in Times Square. The bZx Founders engaged in significant activities on the Ooki DAO's behalf in the United States. And during at least one period historically, the United States comprised at least 27% of the bZx Protocol's user base. All of these activities directly gave rise to the CFTC's claims, which are predicated on the Ooki

DAO unlawfully making transactions available to the public without registering with the CFTC or complying with related requirements.  Exercising personal jurisdiction over the Ooki DAO does not offend notions of fair play and substantial justice—to the contrary, the Ooki DAO structured its business with evasive purpose, has no physical presence, and strategically defaulted; it would be unjust to reward that evasion and deprive the CFTC of a forum to redress the Ooki DAO's wrongs.  Personal jurisdiction over the Ooki DAO is thus appropriate.

## II. The Court May Order Removal of the Ooki DAO's Website.

Under FRCP 54(c), a Court may order relief that is not explicitly requested, so long as it is implied by the relief that is explicitly requested.  *See, e.g.*, *Rasmussen v. Central Fla. Council Boy Scouts of Am., Inc.*, 412 Fed. Appx. 230, 233 (11th Cir. 2011) (awarding monetary damages when only an accounting was explicitly requested, since "an action for an accounting is an equitable remedy for which monetary relief is appropriate"); *Ditech Financial, LLC v. Naumann*, 742 Fed. Appx. 810, 812-16 (5th Cir. 2018) (holding that demand for judicial foreclosure gave meaningful notice that, in the event of default, a writ of possession would issue because the applicable state's process of enforcing a judicial foreclosure entailed issuance of the writ; and noting that the "reason for [FRCP 54(c) is to] ensure a party pondering default has meaningful notice, based on the complaint alone, of her exposure in the event of default").  Here, the Complaint alleged that the Ooki DAO operated a website that made unlawful transactions available to the public and requested an injunction prohibiting the Ooki DAO from "engaging in conduct described above."  The Ooki DAO could not reasonably have believed, in the event the Court ordered an injunction prohibiting it from making unlawful transactions available to the public, that it could have simply left up its website to continue to allow the public to engage in those unlawful transactions as if the Court had not spoken at all.  The CFTC thus respectfully asserts that its relief related to website removal is appropriate and consistent with FRCP 54(c).

| | |
|---|---|
| Dated: June 2, 2023 | Respectfully submitted,<br><br>**COMMODITY FUTURES TRADING COMMISSION**<br><br>By: /s/ Anthony C. Biagioli<br>Tom Simek (DC Bar # 57268), tsimek@cftc.gov<br>TRIAL COUNSEL<br>Anthony C. Biagioli (MO Bar # 72434), abiagioli@cftc.gov<br>Attorneys for Plaintiff<br>COMMODITY FUTURES TRADING COMMISSION<br>2600 Grand Boulevard, Suite 210<br>Kansas City, MO  64108<br>(816) 960-7700 |

## Certificate of Service

I hereby certify that on June 2, 2023, I caused a copy of the foregoing to be filed with the Clerk of the Court via the CM/ECF system as well as provided to the Defendant Ooki DAO through the Ooki DAO's Help Chat Box on the Ooki DAO website as well as by posting the foregoing to the Ooki DAO's Online Forum.

/s/ Anthony C. Biagioli
Counsel for Plaintiff