UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OOKI DAO,<br><br>　　　　　Defendant. | Case No. 3:22-cv-05416-WHO<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 68 |

The Commodity Futures Trading Commission ("CFTC") filed this action against a decentralized autonomous organization[1] ("DAO") called Ooki DAO, alleging Ooki DAO is and has been violating the Commodity Exchange Act ("CEA"). The CFTC asserts that Ooki DAO provides a platform and "protocol" by which users can engage in retail commodity transactions but does not provide protections and other requirements prescribed by the CEA. The CFTC now moves for default judgment. For the following reasons, its motion is GRANTED.

## BACKGROUND

The background facts of this case are detailed at length in my prior order concluding that service had been achieved. ("Order") [Dkt. No. 63]. This order assumes familiarity with those facts, with pertinent allegations provided again below. I assume the following well-pleaded facts are true on this motion for default judgment.

---

[1] A DAO is a "decentralized autonomous organization" which is "a way to organize people, a social-coordination technology that relies on blockchain-based smart contracts and incentives" to facilitate collaboration and collective action. Paradigm Operations LP Brief ("Para. Amicus Br.") [Dkt. No. 31] 2:16-18. Put differently, DAOs allow "unrelated parties" to use software code on a blockchain without needing a "centralized coordinating authority," and permit users "to take actions to edit open-source software." DeFi Education Fund Brief ("DEF Amicus Br.") [Dkt. No. 22] 3:24-4:1, 7:7-8.

bZeroX, LLC operated a blockchain-based software called the "bZx Protocol" from 2019 until August 23, 2021. ("Compl.") [Dkt. No. 1] ¶ 1. The bZx Protocol operated on the Ethereum blockchain through the use of "smart contracts"[2] that permitted anyone with "an Ethereum wallet" to, essentially, make investments and bet on the relative rise and fall of particular virtual currencies. *See id.* ¶¶ 25-28, 31. As the CFTC explains it, these investments and bets allowed users to "contribute margin (collateral) to open leveraged positions whose ultimate value was determined by the price difference between two digital assets from the time the position was established to the time it was closed."[3] *Id.* ¶ 28. This technology is functionally the same as using a trading platform and, according to the CFTC, constitutes an "exchange" for commodity derivative transactions. *See id.* ¶¶ 1, 13-15, 52-60.

bZeroX LLC had a website to market its technology to prospective users, solicit orders, and facilitate access to the software Protocol. *Id.* ¶ 32. bZeroX LLC also charged and collected fees for access to its technology. *Id.* ¶ 33. Additionally, bZeroX LLC had a "liquidity pool" that contained assets supplied by "liquidity providers." *Id.* ¶ 28(b). In exchange for supplying liquidity, these providers received both "interest-generating tokens" and "BZRX Tokens," the latter of which conferred voting rights on the holders ("Token Holders") for certain questions related to governance of the Protocol. *Id.* Finally, bZeroX LLC had "Administrator Keys" which allowed bZeroX to "access and control" the operation of the smart contracts (pieces of software code) and the funds held in those smart contracts, including by updating code, pausing or suspending trading, and directing deposits of funds to users. *Id.* ¶ 34.

In August 2021, bZeroX LLC "transferred control" of the software Protocol[4] to "the bZx

---

[2] I assume as true that smart contracts are, as alleged by the CFTC and contextualized by the amici, pieces of computer or software code, not necessarily contracts as understood in the legal sense. *See* Compl. ¶ 25; Order at 2 n.1.

[3] For related context, *see U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 969 (9th Cir. 2019) ("Through [the defendant company], investors can purchase commodities on 'margin.' Also known as 'leverage,' the concept is simple: A customer buys [the commodity] by paying only a portion of the full price. The remaining amount is financed through [the defendant].").

[4] The "bZx Protocol" was later renamed the "Ooki Protocol." Compl. ¶ 46.

2

DAO," which was subsequently renamed "Ooki DAO." *Id.* ¶¶ 38, 46. The CFTC alleges that "the bZx Founders believed that transition to a DAO would insulate the bZx Protocol from regulatory oversight and accountability for compliance with U.S. law" due to its structure and built-in anonymity of users. *Id.* ¶ 40. The DAO continued operating the underlying Protocol software in the same way as the LLC had, permitting users to engage in the same retail commodity transactions and continuing the collection of user fees. *See id.* ¶ 41. Those fees and revenue were collected in a central DAO Treasury. *See id.* ¶¶ 44-45.

Ooki DAO never registered with the CFTC, as required by the CEA for most exchanges that enable commodity derivative transactions. *See id.* ¶¶ 52-67. Ooki DAO also did not implement a Customer Information Program ("CIP") or conduct Know Your Customer ("KYC") or anti-money laundering procedures, all allegedly in violation of the CEA. *See id.* ¶¶ 68-72.

I previously entered an Order permitting alternative service and concluding service had been achieved, finding that Ooki DAO was an unincorporated association as defined by California and federal law. *See* Order. That Order considered four amicus briefs and replies filed by various interested parties. *See* DEF Amicus Br.; Para. Amicus Br.; LeXpunK Amicus Br. [Dkt. No. 36]; a16z Amicus Br. [Dkt. No. 45].

Ooki DAO failed to appear or respond in this court. Subsequently, the CFTC moved for entry of default, [Dkt. No. 64], which the Clerk's office entered, [Dkt. No. 65]. The CFTC then filed its Motion for Default Judgment. ("Mot.") [Dkt. No. 68]. The four amici moved to file an amicus brief responding to the CFTC's motion, [Dkt. No. 70], which I granted, [Dkt. No. 72]. The amicus response is attached as Exhibit A to the motion to file. ("Oppo.") [Dkt. No. 70 Ex. A].

I held a hearing at which counsel for the CFTC and counsel for amici appeared. After the hearing, I ordered the CFTC to submit supplemental briefing on personal jurisdiction and on its requested relief for removal of Ooki DAO's website. [Dkt. No. 74]. The CFTC submitted a supplemental brief. ("Supp. Br.") [Dkt. No. 75].

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("FRCP") 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*,

3

194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* (citing *Draper v. Coombs,* 792 F. 2d 915, 924-25 (9th Cir. 1986) (subsequent citation omitted)).

Before assessing the merits of a default judgment, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citation omitted). If the court finds that it may exercise jurisdiction over the defendant, it turns to the following factors (the "*Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F. 2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).

Upon entry of default, "the general rule is that well-pled allegations in the complaint regarding liability are deemed true," and district courts are "not required to make detailed findings of fact." *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citations omitted). Where a default judgment is granted, the scope of relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. Proc. 54(c).

## DISCUSSION

### I. JURISDICTION

First, I note that I previously found service of process was proper. *See CFTC v. Ooki DAO*, No. 3:22-CV-05416-WHO, 2022 WL 17822445 (N.D. Cal. Dec. 20, 2022).

Second, I have federal question jurisdiction under 28 U.S.C. §§ 1331, 1345, given that the complaint is brought by a federal agency authorized to sue by 7 U.S.C. § 13a-1.

Third, with respect to personal jurisdiction, the CFTC states in the complaint that "the Ooki DAO transacted business in this District and certain transactions, acts, practices, and courses of business in violation of the Act occurred, are occurring, or are about to occur in this District, among other places." Compl. ¶ 9. The CFTC also asserts that Token Holders resided in the United States during the relevant period and conducted Ooki DAO business in the U.S. during that

4

period by voting to govern the Protocol and operating the protocol. Compl. ¶ 49. A declaration submitted with the CFTC's supplemental brief also explains that one of the bZeroX's co-founders, Kyle Kistner, took actions on behalf of Ooki DAO while Kistner was in the United States and during the period alleged in the complaint, and that Kistner knew that the Protocol was being offered to every person in the United States. Supp. Br. Ex. 1 ¶¶ 7-11. Another declaration states that the other co-founder, Tom Bean, advertised the Ooki Protocol via his Twitter account while he was in the United States and during the relevant time period. Supp. Br. Ex. 2 ¶¶ 9-10. The CFTC contends that these allegations are sufficient to establish personal jurisdiction over Ooki DAO because the CEA provides for nationwide service of process and so the CFTC need only show minimum contacts with the United States as a whole. *See* Supp. Br. 3:24-5:7.

The exercise of personal jurisdiction must comply with constitutional considerations of due process, fair play, and substantial justice. *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citations omitted). "[D]ue process is satisfied when the forum state has 'minimum contacts' with a defendant," and where the underlying statute provides for nationwide service, "the inquiry to determine "minimum contacts" is thus "whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country." *Id.* at 1180 (citing *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315-16 (9th Cir. 1985)). This rule stems from the Ninth Circuit's holding in 1985 that "[w]here a federal statute . . . confers nationwide service of process, 'the question [of personal jurisdiction] becomes whether the party has sufficient contacts with the United States, not any particular state.'" *Vigman*, 764 F.2d at 1315. That case held that "so long as a defendant has minimum contacts with the United States, [Section 27 of the Securities Exchange Act] confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

The Ninth Circuit later explained that this "national contacts analysis" for personal jurisdiction also applied to suits brought under the Clayton Act because Congress authorized nationwide service and because the language of the Clayton Act's service provision in the act was nearly identical to that of the Exchange Act in *Vigman*. *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1414-15 (9th Cir. 1989) (first citing the Clayton Act, 15 U.S.C. § 22 (". . . all process in

such cases may be served in the district of which [the defendant] is an inhabitant, or wherever it may be served"); and then citing the Securities Exchange Act, 15 U.S.C. § 78aa(a) (". . . process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found"). And in *Action Embroidery*, 368 F.3d at 1179-80, the Ninth Circuit reaffirmed the holdings of *Go-Video* and *Vigman* and explained that "the existence of personal jurisdiction . . . does not depend upon there being proper venue in that court."

Here, the CFTC sued under the CEA, 7 U.S.C. § 13a-1, which provides in relevant part:

> (e) Venue and process
> Any action under this section may be brought in the district wherein the defendant is found or is an inhabitant or transacts business or in the district where the act or practice occurred, is occurring, or is about to occur, and **process in such cases may be served in any district in which the defendant is an inhabitant or wherever the defendant may be found**.

7 U.S.C. § 13a-1(e) (emphasis added). The service provision in this section is nearly identical to the provisions in the Clayton Act and the Exchange Act, and for the same reasons as explained in *Go-Video*, 885 F.2d at 1414-15, here too the CEA provides for nationwide service of process. *See also U.S. Commodity Futures Trading Comm'n v. Oakmont Fin., Inc.*, 191 F. Supp. 3d 1347, 1350 (S.D. Fla. 2016) (reasoning that the CEA provides for nationwide service of process and applying the national contacts analysis).

Personal jurisdiction therefore depends on the "existence of sufficient national contacts." *Go-Video*, 885 F.2d at 1415. The complaint and supplemental brief allege that the DAO offers the Protocol to users in the United States; that Token Holders voted their tokens while in the United States; and that the founders of Ooki DAO's predecessor LLC engaged in acts on behalf of the DAO during the relevant period, including advertising Ooki DAO on Twitter while they were in the United States. *See* Compl. ¶ 49; Supp. Br. Exs. 1-2. Taken together, this is more than enough to show that Ooki DAO acted in the United States and caused "foreseeable contacts in this country," establishing minimum contacts with the United States. *Action Embroidery*, 368 F.3d at 1180. Accordingly, I have personal jurisdiction over Ooki DAO.

Because the jurisdiction and service requirements are met, I next turn to the *Eitel* factors.

## II. EITEL FACTORS

### A. Possibility of Prejudice

This factor favors granting default judgment: If the CFTC's motion is not granted, both the CFTC and the affected public "will likely be without other recourse for recovery." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also Lawrence v. Commodity Futures Trading Comm'n*, 759 F.2d 767, 776 (9th Cir. 1985) ("The [CFTC] . . . is the 'statutory guardian' entrusted with the enforcement of the congressional scheme for safeguarding the public interest in commodity futures markets." (citation omitted)). The harm suffered by the CFTC—which is tasked with protecting the public from operations that defy the CEA and federal consumer protection regulations, exactly like this one—outweighs any harm suffered by Ooki DAO in having default judgment entered against it, particularly following a strategic decision to not appear. *See Ooki DAO*, 2022 WL 17822445, at *5 ("If the DAO fails to appear, it will be because of its strategic decision, not because it was unaware of the lawsuit.").

### B. Merits of the Substantive Claims and Sufficiency of the Complaint

The CFTC alleges that Ooki DAO violated the CEA in three ways: (1) engaging in unlawful off-exchange leveraged and margined retail commodity transactions in violation of 7 U.S.C. § 6(a); (2) engaging in activities that can only lawfully be performed by a registered futures commission merchant, in violation of 7 U.S.C. § 6d; and (3) failing to implement a CIP, KYC, and anti-money laundering procedures, in violation of 17 C.F.R. § 42.2. As discussed in my prior Order on service, the amici previously contested whether Ooki DAO could be subject to liability under the CEA, a question I found went to the merits of the case. *See Ooki DAO*, 2022 WL 17822445, at *5.

The CEA assigns liability to "[a]ny person" who takes particular actions, 7 U.S.C. § 13c(a)-(b), and defines "person" to include "individuals, associations, partnerships, corporations, and trusts," *id.* § 1a(38); *see also id.* § 2(a)(1)(B). The CFTC alleges that Ooki DAO is an unincorporated association and therefore falls within the definition of "person" in the CEA, which encompasses "association." The amici disagree. *See* DEF Amicus Br. 7:14-9:5 (arguing that the California definition of unincorporated association applies but is not met); LeXpunK Amicus Br.

7

9:6-19 & n.31 (reasoning that federal rules of statutory interpretation should apply and that the court should "adopt a rule that best comports with the CEA's regulatory scheme" (first citing *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021); and then citing *PM Grp. Life Ins. Co. v. W. Growers Assurance Tr.*, 953 F.2d 543, 546 (9th Cir. 1992)); Para. Amicus Br. 5:23-8:3 (applying the federal definition of unincorporated association); a16z Amicus Br. 3:14-8:9 (arguing Ooki DAO is not an unincorporated association under California service law).

The CEA does not further define "association[]" and as noted, the CFTC and amici previously briefed what they believe the proper definition is under the law. Regardless of whether the state or federal definition applies, it is met here. I previously found that the CFTC sufficiently pleaded facts showing that Ooki DAO is an unincorporated association under California law, *Ooki DAO*, 2022 WL 17822445, at *5-8, and also under federal law, *id.* at *8 n.10. Those definitions are not limited to service provisions; they are the definitions provided by each set of laws. Consequently, for those same reasons, the CFTC's complaint contains sufficient well-pleaded factual allegations that, assuming they are true, establish Ooki DAO as an unincorporated association under state and federal law.[5] Therefore, given the well-pleaded facts, Ooki DAO is subject to suit under the CEA as an unincorporated association.

Given that the CFTC sufficiently alleged that Ooki DAO may be held liable under the CEA, I turn to the facts pleaded for each cause of action.

### 1. Unlawful Off-Exchange Leveraged and Margined Retail Commodity Transactions

The CFTC sufficiently pleads facts that, assumed to be true, show that Ooki DAO engaged in unlawful off-exchange leveraged and margined retail commodity transactions. *See* 7 U.S.C.

---

[5] The same is true even if, as LeXpunK suggests, I adopt a rule that best comports with the CEA's regulatory scheme, because it seems that LeXpunK argues that the federal definition best comports with the law, and I do not imagine that the LeXpunK believes a third new definition is what should apply here. I also note that for support of this proposition, LeXpunK cites *PM Grp.*, 953 F.2d at 546, which discussed the federal common law associated with ERISA and the resulting authority and obligation of federal courts to adopt federal rules that best complied with ERISA's regulatory scheme. That reasoning is not clearly applicable here, where there is no apparent federal common law associated with the CEA.

8

§ 6(a).[6] Transactions under § 6(a) include retail commodity transactions as defined by § 2(c)(2)(D).[7]

First, the complaint sufficiently establishes that the transactions conducted via the Ooki

---

[6] 7 U.S.C. § 6(a) provides:
> (a) Restriction on futures trading
> Unless exempted by the Commission . . . it shall be unlawful for any person to offer to enter into, to enter into, to execute, to confirm the execution of, or to conduct any office or business anywhere in the United States, its territories or possessions, for the purpose of soliciting or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery (other than a contract which is made on or subject to the rules of a board of trade, exchange, or market located outside the United States, its territories or possessions) unless—
> (1) such transaction is conducted on or subject to the rules of a board of trade which has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity;
> (2) such contract is executed or consummated by or through a contract market; and
> (3) such contract is evidenced by a record in writing which shows the date, the parties to such contract and their addresses, the property covered and its price, and the terms of delivery . . .

[7] Under 7 U.S.C. § 2(c)(2)(D), a retail commodity transaction is defined as:
> any agreement, contract, or transaction in any commodity that is—
> (I) entered into with, or offered to (even if not entered into with), a person that is not an eligible contract participant or eligible commercial entity; and
> (II) entered into, or offered (even if not entered into), on a leveraged or margined basis, or financed by the offeror, the counterparty, or a person acting in concert with the offeror or counterparty on a similar basis.

The exceptions include:
> (I) an agreement, contract, or transaction described in [certain sections], including any agreement, contract, or transaction specifically excluded from [certain sections];
> (II) any security;
> (III) a contract of sale that—
> (aa) results in actual delivery within 28 days or such other longer period as the Commission may determine . . .; or
> (bb) creates an enforceable obligation to deliver between a seller and a buyer that have the ability to deliver and accept delivery, respectively, in connection with the line of business of the seller and buyer; or
> (IV) an agreement, contract, or transaction that is listed on a national securities exchange registered under [the Securities Exchange Act]; or
> (V) an identified banking product, as defined in section 27(b) of this title.

*Id.*

1  Protocol were retail commodity transactions as defined by 7 U.S.C. § 2(c)(2)(D), and so were
2  subject to regulation under the CEA.  The underlying commodities were digital assets like
3  cryptocurrency tokens, including those on the Ethereum blockchain.  *See* Compl. ¶¶ 15, 26-28.
4  The relevant transactions were the ones conducted via the Ooki Protocol, which functionally
5  served as a trading platform where anyone "with an Ethereum wallet" could bet on the rise or fall
6  of certain virtual currencies by contributing collateral currency via smart contracts to open
7  leveraged positions, borrowing virtual currency from the Protocol's liquidity pool, and exchanging
8  with other currencies.  *Id.* ¶¶ 25-28, 31.  The Protocol user then earned profits or lost their
9  collateral currency based on the actual rise or fall of the other currencies.  *See id.* ¶¶ 28-31.  Users
10 could also open and profit from short positions.  *Id.* ¶ 31.  Ooki DAO, through its Token Holders,
11 controlled the existence and operation of the Ooki Protocol by voting their tokens to take actions
12 such as updating code, pausing and suspending trading, and directing deposits of funds to users.
13 *See id.* ¶¶ 28, 34, 38, 41.

14   Taken together, this is enough to show that the transactions were entered into on a
15 leveraged or margined basis, and perhaps to show that they were financed in part by the offeror
16 Ooki DAO, as defined by 7 U.S.C. § 2(c)(2)(D)(i).  Consequently, they were subject to the CEA.
17 There are also no facts suggesting that the transactions involved securities or contracts of sale (as
18 opposed to, as alleged in the complaint, the establishment of leveraged positions on anticipated
19 price differences between commodities), or that any other exceptions outlined in § 2(c)(2)(D)(ii)
20 apply, and the amici (and CFTC) do not contend otherwise.

21   Taken as true, then, these allegations show that Ooki DAO, via the Protocol, executed (or
22 confirmed the execution of) contracts for the purchase and sale of commodity futures by
23 controlling the Protocol and providing the platform and liquidity pool that allowed these
24 transactions to occur.  *See* 7 U.S.C. § 6(a).  Accordingly, the merits of the first cause of action, as
25 well as the sufficiency of the allegations in the complaint, favor entry of default judgment.

26     **2.**  **Activities That Can Only Lawfully Be Performed by a Registered**
27        **Futures Commission Merchant**

28   Under 7 U.S.C. § 1a(28), in relevant part, a person or association is a futures commission

merchant if it engages in soliciting or accepting orders for any transaction described in 7 U.S.C. § 2(c)(2)(D)(i). It is "unlawful for any person to be a futures commission merchant" unless registered with the CFTC. 7 U.S.C. § 6d(a)(1).

The merits of this claim and the sufficiency of the complaint also favor default judgment. First, as explained in the previous section, the CFTC sufficiently pleaded that the transactions on the Ooki Protocol constituted retail commodity transactions as defined by 7 U.S.C. § 2(c)(2)(D)(i). Second, the CFTC pleaded that Ooki DAO "solicited" these transactions via advertising on the public website and social media and through the statements of its founders, and so constitutes a futures commission merchant. *See* Compl. ¶ 32. Third, Ooki DAO did not register as a futures commission merchant. *See id.* ¶ 65. Together, this shows a violation of 7 U.S.C. § 6d(a)(1).

Accordingly, the merits of this claim and the well-pleaded complaint favor default judgment.

### 3. Failure to Implement CIP, KYC, or Anti-Money Laundering Procedures

Under 17 C.F.R. § 42.2, a futures commission merchant must "comply with the applicable provision of the Bank Secrecy Act" and related regulations, including implementing a CIP, facilitating KYC diligence, and other requirements. As discussed, and assuming the well-pleaded facts in the complaint are true, Ooki DAO is a futures commissions merchant under 7 U.S.C. § 1a(28).

The CFTC sufficiently alleges that Ooki DAO did not implement a CIP, did not facilitate KYC diligence, did not institute the required anti-money laundering program, and otherwise failed to comply with 17 C.F.R § 42.2. Compl. ¶¶ 4, 35-37, 70. Accordingly, the CFTC shows that Ooki DAO violated 17 C.F.R. § 42.2 and so the merits of this claim as well as the complaint favor default judgment.

\*   \*   \*

For those reasons, the merits of the substantive claims favor default judgment.

### C. Sum of Money at Stake

"When the money at stake in the litigation is substantial or unreasonable, default judgment

is discouraged." *Bd. of Trs. of Laborers Health & Welfare Tr. Fund for N. Cal. v. Cazadores Constr., Inc.*, No. 17-CV-05242-WHO, 2018 WL 986020, at *4 (N.D. Cal. Feb. 20, 2018) (citations omitted). But "where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted).

The CFTC requests $643,542 in civil monetary penalties under 7 U.S.C. § 13a-1(d)(1) and 17 C.F.R. § 143.8(b)(1), which authorize a penalty of $214,514[8] per violation of the Act. The CFTC asserts that Ooki DAO violated three separate provisions of the Act and so should be penalized for three separate violations. *See* Mot. 14:26-15:20. Though this sum is not insignificant, it is tailored to Ooki DAO's specific misconduct because it is what the law authorizes in these situations. It also aligns with penalties provided in other CFTC enforcement actions. *See, e.g.*, *Commodity Futures Trading Comm'n v. Laino Grp. Ltd.*, No. 4:20-CV-03317, 2021 WL 4059385, at *8 (S.D. Tex. June 30, 2021) (entering a penalty of $374,864 in a default judgment sought by the CFTC). Accordingly, this factor favors default judgment.

### D. Possibility of Dispute Concerning Material Facts

Ooki DAO intentionally chose to not appear. The various amici do not contest the underlying material facts about the unlawful operations of the trading platform; their arguments are limited almost exclusively to those concerning the definition and legal characterization of DAOs more generally. *See generally* Oppo.; *see also* [Dkt. Nos. 22, 31, 36, 45]. The only fact that amici appear to contest in their opposition concerns whether Ooki DAO had the ability to operate or control the Ooki Protocol, arguing that the voting rights of Token Holders "do not involve the type of activities that the [CFTC] would deem objectionable . . . such as allowing users to open orders or enter positions." Oppo. 6:3-12 (citation omitted). But in my prior Order, I determined otherwise. *See Ooki DAO*, 2022 WL 17822445, at *4 (reasoning that Ooki DAO Token Holders controlled the Keys, which in turn were used to govern and control the Protocol); *see also id.* at *6-7.

There is also a prior settlement where Ooki DAO's founders admitted to the unlawful

---

[8] This penalty is for violations occurring between November 2, 2015 and the present, as determined by the Inflation Adjustment Act of 1990.

operation of the trading platform, *see In the Matter of: bZeroX, LLC; Tom Bean; & Kyle Kistner, Respondents.*, CFTC No. 22-31, 2022 WL 4597664 (Sept. 22, 2022), as well as other civil suits with similar facts about the underlying protocol and trading platform, *see Sarcuni v. bZx DAO*, No. 22-CV-618-LAB-DEB, 2023 WL 2657633, *1-3 (S.D. Cal. Mar. 27, 2023). Taken together, the risk of dispute concerning material facts is low and mitigated by the defendant's intentional choice to not contest litigation.

Additionally, I note that the CFTC submitted a detailed proposed order with a section entitled "Findings of Fact." [Dkt. No. 68-1]. While I take well-pleaded allegations as true, I am not required to make detailed findings of fact on a motion for default judgment, *Fair Hous. of Marin*, 285 F.3d at 906, so I do not adopt those as "findings."

### E. Excusable Neglect

As noted and as I previously found, Ooki DAO's failure to participate in this litigation or this proceeding is due to a "strategic decision" to not appear, not because it was unaware of the litigation. *Ooki DAO*, 2022 WL 17822445, at *5. The basis for its awareness and knowledge was well litigated during prior motions in this case, both by the CFTC and several amici that are apparently powerful players in this field. In that order and those motions, I found the CFTC presented evidence of actual awareness of the litigation and also properly served the DAO. There is no excusable neglect here.

### F. Policy Favoring Decisions on the Merits

Finally, while policy grounds favor a resolution on the merits of this dispute, that policy is outweighed by the resolution of this matter. Ooki DAO has intentionally chosen to not appear, respond, or at all participate in this litigation. Given Ooki DAO's strategic nonparticipation, the CFTC would have no recourse in this matter without default judgment. It also pleads (which I assume to be true for this Order) that Ooki DAO's unlawful behavior continues to this day via operation of the trading platform, and so without default judgment the CFTC would be unable to stop the unlawful acts and protect the public, as it is so charged to do. Accordingly, this factor favors default.

### III.  RELIEF SOUGHT

First, the CFTC requests a permanent injunction to enjoin Ooki DAO from continuing and further violations of the CEA in the ways alleged in the complaint and found by this Order. "The CFTC is entitled to a permanent injunction upon a showing that a violation has occurred and is likely to continue unless enjoined." *U.S. Commodity Futures Trading Comm'n v. Driver*, 877 F. Supp. 2d 968, 981 (C.D. Cal. 2012), *aff'd sub nom Commodity Futures Trading Comm'n v. Driver*, 585 F. App'x 366 (9th Cir. 2014) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)) (subsequent citation omitted). "Determining the likelihood of future violations may involve consideration of past unlawful conduct." *Id.* (citation omitted). Here, the CFTC has shown not only past violations, but also the transfer of control of the unlawful conduct from an LLC to a DAO apparently for the express purpose of avoiding regulation, *see* Compl. ¶ 3, as well as ongoing violations of the CEA. This is sufficient to establish likelihood of future violations absent permanent injunctive relief. Its request is GRANTED.

Second, the CFTC requests $643,542 in civil monetary penalties under 7 U.S.C. § 13a-1(d)(1) and 17 C.F.R. § 143.8(b)(1), which authorize a penalty of $214,514 per violation of the Act. As discussed, the merits of each cause of action regarding each alleged violation favor the CFTC. This aligns with other enforcement cases brought by the CFTC and is in fact much lower than others, such as *Driver*, 877 F. Supp. 2d at 982-83, where the court entered a civil monetary penalty of $31.8 million. Accordingly, the CFTC's requested relief of the statutorily prescribed amount per violation is appropriate for the offense and sufficient as a deterrent. It is GRANTED.

Third, the CFTC requests the removal of Ooki DAO's website, Mot. 15:22-16:10, and it provided supplemental briefing in support, Supp. Br. Amici oppose this request. *See* Oppo. 6:13-20.

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. Proc. 54(c). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that he may make a calculated decision as to whether or not it is in his best interest to answer." *Baskin-Robbins Franchising LLC v. Chun*, No. 18-CV-05476-BLF, 2019 WL 3207777, at *2 (N.D. Cal. July 16, 2019) (citing *Alameda Cnty.*

14

*Elec. Indus. Serv. Corp. v. Banister Elec., Inc.*, No. C 11-04126 LB, 2012 WL 3042696, at *1 (N.D. Cal. July 25, 2012)). "By limiting recoverable damages to what is specified in the pleadings, Rule 54(c) 'ensures that a defendant considering default can look at the damages clause [and] satisfy himself that he is willing to suffer judgment in that amount.'" *Alliant Credit Union v. EAGLE'S REST*, No. C 09-1616 SBA, 2010 WL 3491140, at *2 (N.D. Cal. Sept. 2, 2010) (quoting *Silge v. Merz,* 510 F.3d 157, 159 (2d Cir. 2007)). The Ninth Circuit has affirmed the denial of fees and costs requested under a state statute where the complaint "lack[ed] the requisite specificity to put the defendants on notice" that fees and costs would be sought on default. *In re Ferrell*, 539 F.3d 1186, 1192-93 (9th Cir. 2008).

This case differs from others in the Northern District where my colleagues found that the requested relief differed in kind from the requested relief. For example, in *Alliant Credit*, 2010 WL 3491140, at *3, the court reasoned that the complaint gave the defendant notice that a judgment may be entered against him where the sale of a vessel failed to satisfy the outstanding mortgage, but it did not give the defendant notice that the plaintiff might forgo the sale of the vessel and hold the plaintiff personally liable for the full balance of the mortgage. The requested relief was different in kind from that in the complaint and so was denied. *Id.* And in *Baskin-Robbins*, 2019 WL 3207777, at *7, the court denied the plaintiff's request for over $43,307.09 in damages for breach of contract where the complaint only identified that the defendant would be responsible for "monetary damages in an amount that has yet to be determined," because the request exceeded the amount provided in the complaint or in the later Notice to Cure.

As the CFTC points out in the supplemental brief, its complaint explains that the website facilitates Ooki DAO's violations of the CEA, and the complaint clearly requests a permanent injunction precluding Ooki DAO from continuing to violate the CEA. *See* Compl. at 22(B)-(C). Because the complaint makes clear that the website is critical for operating the Protocol and making it available to the public, consequently it is clear that shutting down the website is critical to shutting down the Protocol and precluding access by the public. The request is therefore unlike those in *Alliant Credit* and *Baskin-Robbins* because the relief requested on default does not differ from that requested in the complaint—indeed, it may be the only way of ensuring the permanent

15

injunction has any effect. Accordingly, the complaint has the requisite particularity to put Ooki DAO on notice that the requested relief including shutting down the website. *See In re Ferrell*, 539 F.3d at 1192-93; *Baskin-Robbins*, 2019 WL 3207777, at *2. This request is GRANTED.

## CONCLUSION

For those reasons, the motion is GRANTED.

**IT IS SO ORDERED.**

Dated: June 8, 2023



William H. Orrick
United States District Judge